# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

VICTORIA STARK-ROMERO, Individually and as
Personal Representative of the Estate
Of FRED P. STARK,

       Plaintiff,

and

EMILIO J. ESQUIBEL and HELEN G. ESQUIBEL,
Individually and as Co-Personal Representatives of the Estate of
MICHAEL S. ESQUIBEL, deceased,

       Plaintiff-Intervenors,

vs.                                   No. CIV 10-0778 JB/RLP

THE NATIONAL RAILROAD PASSENGER
COMPANY (AMTRAK), BURLINGTON
NORTHERN SANTA FE RAILWAY
COMPANY (BNSF), CITY OF LAS VEGAS,
SAN MIGUEL COUNTY and NEW MEXICO
DEPARTMENT OF TRANSPORTATION, and
RIDE TO PRIDE AT THE BARN, L.L.C.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on: (i) the Plaintiffs' Motion to Remand and

Memorandum in Support Thereof, filed September 9, 2010 (Doc. 19)("Motion to Remand"); and

(ii) the Plaintiff and Plaintiff-Intervenors' Motion Requesting That this Matter Be Returned to the

Previously Assigned Judge, filed October 10, 2010 (Doc. 32)("Motion to Return"). The Court held

a hearing on November 18, 2010. The primary issues are: (i) whether the Court should transfer the

case to the Honorable Martha Vázquez, Chief United States District Judge, who decided the motion

to remand in <u>Victoria Stark-Romero v. The National Railroad Passenger Co. (Amtrak)</u>, No. CIV 09-

0295 MV/RLP (D.N.M.); and (ii) whether the Court should remand the case to the state court.  The Court will remand Stark-Romero's claims, because it finds that the Second Notice of Removal removed Stark-Romero's claims in addition to the Esquibels' claims, and because the Court is foreclosed from reconsidering a prior remand determination.  The Court finds that the Plaintiff-Intervenors Emilio J. Esquibel's and Helen G. Esquibel's claims are subject to independent removal as a separate civil action, because the Esquibels' claims involve issues that are separate and distinct from Stark-Romero's claims.  Because the Court has found that the Esquibels' claims are a separate civil action from Stark-Romero's claims, and because the Court has remanded Stark-Romero's claims, the Court will not reassign this matter to Judge Vázquez.  The Court will not remand the Esquibels' claims, because it finds that the Second Notice of Removal did not contain procedural deficiencies, and because it finds that it has federal-question jurisdiction over the Esquibels' claim against Defendant National Railroad Passenger Corporation ("Amtrak") and supplemental jurisdiction over the Esquibels' claims against Defendants BNSF Railway Company ("BNSF"); the County of San Miguel, New Mexico; the City of Las Vegas, New Mexico; and the New Mexico Department of Transportation ("NMDOT").

## FACTUAL BACKGROUND

The Esquibels' claims against the Defendants relate to a 2009 railroad crossing accident involving their son, Michael Esquibel.  See Complaint in Intervention for Wrongful Death and Negligence ¶¶ 8-9, at 3, filed August 19, 2010 (Doc. 1-2)("Complaint-in-Intervention").  The Esquibels allege that, on January 15, 2009, M. Esquibel approached a railroad crossing.  See Complaint-in-Intervention ¶¶ 8, 15, at 3.  The Esquibels allege that, because vegetation blocked M. Esquibel's line of sight, he began to cross the tracks without knowing an Amtrak train was approaching.  See id. ¶ 17, at 4.  The Esquibels allege that the Amtrak train collided with the vehicle

M. Esquibel was driving, killing M. Esquibel.  See id. ¶ 20, at 6.  The Complaint-in-Intervention alleges counts of negligence against Amtrak, BNSF, the City, the County, and the NMDOT. See Complaint Counts I, II, III, IV, V, at 4, 6, 8, 9, 10.

## PROCEDURAL BACKGROUND

On February 12, 2009, Stark-Romero filed a Complaint for Wrongful Death and Negligence against Amtrak, BNSF, City of Las Vegas, San Miguel County, the NMDOT, and Ride to Pride at the Barn, LLC, in the Fourth Judicial District Court in San Miguel County.  See Stark-Romero v. Nat'l R.R. Passenger Co., No. 09-cv-0295-MV-RLP, Complaint for Wrongful Death and Negligence, filed March 26, 2009 (Doc. 1-1).  On March 26, 2009, the Defendants removed the Stark-Romero case to the United States District Court for the District of New Mexico.  See Stark-Romero v. Nat'l R.R. Passenger Co., No. 09-cv-0295-MV-RLP, Notice of Removal, filed March 26, 2009 (Doc. 1)("First Notice of Removal").  The First Notice of Removal asserts that the Court has original jurisdiction over the matter, because jurisdiction exists in federal court under 28 U.S.C. § 1349 for lawsuits against Amtrak.  See First Notice of Removal at 2.  The First Notice of Removal also states that removal was proper pursuant to 28 U.S.C. § 1331 and potentially the federal officer removal statute, 28 U.S.C. § 1442(A)(1).  See First Notice of Removal at 3.  Counsel for Amtrak, BNSF, the NMDOT, and the City of Las Vegas signed the pleading; counsel for San Miguel County did not.  See First Notice of Removal at 5.  Stark-Romero filed a Motion to Remand on April 20, 2009, alleging that the First Notice of Removal was procedurally defective, because it did not establish that all Defendants served at the time of removal consented to the removal, given that San Miguel County did not sign the notice of removal or file an independent consent to removal. See Stark-Romero v. Nat'l R.R. Passenger Co., No. 09-cv-0295-MV-RLP, Motion to Remand and Memorandum in Support Thereof at 4-5, filed April 20, 2009 (Doc. 14)("Stark-Romero's Motion

to Remand").

On March 31, 2010, Chief Judge Martha Vázquez,[1] issued a Memorandum Opinion and Order, granting Stark-Romero's Motion to Remand.  See Stark-Romero v. Nat'l R.R. Passenger Co., No. 09-cv-0295-MV-RLP, Memorandum Opinion and Order Granting Motion to Remand, filed March 31, 2010 (Doc. 96)("Mar. 31, 2010 MOO").  Chief Judge Vázquez remanded the case because the First Notice of Removal was procedurally deficient.  See Mar. 31, 2010 MOO at 10. Chief Judge Vázquez found that the First Notice of Removal was procedurally deficient, because San Miguel County did not sign the First Notice of Removal or file its consent within the required thirty-day period.  See Mar. 31, 2010 MOO at 10.  Chief Judge Vázquez also stated that she was not convinced that Amtrak and BNSF were duly diligent in their attempts to join all the defendants in the First Notice of Removal.  See Mar. 31, 2010 MOO at 10.  Although Chief Judge Vázquez remanded the case because of the procedural errors in the Notice of Removal, she also stated that, "even if this Court was not persuaded to remand on the basis of this procedural error, removal is improper on the basis of several other substantive issues."  Mar. 31, 2010 MOO at 10.  Chief Judge Vázquez found that the case did not involve a substantial federal question and that, even if it did, "the exercise of jurisdiction by this Court would be optional," and she would not exercise jurisdiction given the presumption in favor of Stark-Romero's chosen forum and federal courts' limited jurisdiction.  Mar. 31, 2010 MOO at 23.  When Chief Judge Vázquez issued her opinion, she also ordered Stark-Romero to submit a motion and supporting documentation for reimbursement for fees and costs associated with removal of the case to federal court.  Stark-Romero submitted a motion, requesting attorneys' fees and costs from Amtrak and BNSF, see Plaintiff's Motion

_____

[1] The Honorable Bruce Black, Chief United States District Judge for the District of New Mexico, became Chief Judge on September 1, 2010.

Requesting Attorneys' Fees and Costs Related to her Motion to Remand, filed April 29, 2010 (Doc. 98), which Amtrak and BNSF opposed, see Defendant Amtrak's and BNSF's Response in Opposition to Plaintiff's Motion Requesting Attorneys' Fees and Costs Related to her Motion to Remand, filed May 17, 2010 (Doc. 99).  The issue of attorney's fees and costs is fully briefed and is currently pending before Judge Vázquez.  See Notice of Completion of Briefing, filed June 1, 2010 (Doc. 101).

On June 10, 2010, the Esquibels sent an expedited motion to intervene, pursuant to rule 1-024(B) NMRA, to all counsel of record in Stark-Romero's pending state lawsuit.  See Expedited Motion to Intervene, filed September 27, 2010 (Doc. 23-2).  As grounds for the motion to intervene, the Esquibels stated that their claim and Stark-Romero's claim have common questions of law and fact, and that their claim is "virtually identical" to Stark-Romero's claim.  Expedited Motion to Intervene at 1.  On July 13, 2010, the Honorable Abigail Aragon, New Mexico District Judge for the Fourth Judicial District, ordered that "Emilio J. Esquibel and Helen G. Esquibel, . . . are allowed to intervene in this case for purposes of discovery only and that the Complaint-in-Intervention may be filed in this action and a copy shall be served on each of the defendants as provided in Rule 1-004."  Order on Motion to Intervene at 1-2, filed September 27, 2010 (Doc. 23-3).  Judge Aragon further ordered

> that the claims of Emilio J. Esquibel and Helen G. Esquibel set forth in the Complaint-in-Intervention shall not be consolidated for trial with the claims of Victoria Stark-Romero set forth in the Complaint for Wrongful Death and Negligence filed February 12, 2009 in the above-captioned case absent further order by the Court.

Order on Motion to Intervene at 2.  Judge Aragon based her decision allowing limited intervention on rule 1-024B NMRA, which permits intervention even when the intervening party cannot demonstrate an interest relating to the property or transaction which is the subject of the ongoing

case.  Compare Rule 1-024A NMRA (stating an applicant shall be allowed to intervene "when the applicant claims an interest relating to the property or transaction which is the subject of the action and . . . disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties"), with Rule 1-024B NMRA (stating an applicant may intervene "when an applicant's claim or defense and the main action have a question of law or fact in common").

Amtrak and BNSF filed a Notice of Removal on August 19, 2010.  See Notice of Removal, filed August 19, 2010 (Doc. 1)("Second Notice of Removal").  Amtrak and BNSF attached the Esquibels' Complaint-in-Intervention to the Second Notice of Removal.  See Doc. 1-2.  Also attached to the Second Notice of Removal was the City of Las Vegas' Consent to Removal, San Miguel County's Consent of Removal, and the NNMDOT's Consent of Removal.  See Defendant City of Las Vegas' Consent to Removal, filed August 19, 2010 (Doc. 1-6); Defendant San Miguel County's Consent of Removal, filed August 19, 2010 (Doc. 1-6); Defendant the New Mexico Department of Transportation's Consent of Removal, filed August 19, 2010 (Doc. 1-6).  In the Second Notice of Removal, Amtrak and BNSF assert that the Court has original jurisdiction, because it has federal-question jurisdiction over the Esquibels' claims against Amtrak.  See Second Notice of Removal at 3.  Amtrak and BNSF state that they have expressly limited their removal to the Esquibels' claims, and have rejected any intention to assert federal jurisdiction over the claims that were part of the prior Stark-Romero case.  See Defendants Amtrak and BNSF's Response to Plaintiffs' Motion to Remand at 12, filed September 27, 2010 (Doc. 23)("Response").

On September 9, 2010, the Plaintiffs filed a Motion to Remand.  See Doc. 19.  The Plaintiffs argue that the Court should remand the case, because second removals are permitted under only limited circumstances, which do not apply in this case, because the Defendants waived their right

to remove, and because their removal is procedurally defective.  See Motion to Remand at 1.

       Amtrak and BNSF responded, asserting that the Esquibels' case was a separate legal action, which the Defendants could remove to federal court, and that the Court has jurisdiction over the Esquibels' claims.  See Response at 1-2.  Amtrak and BNSF also assert that the Second Notice of Removal was timely filed and that they did not manifest any intent to litigate the Esquibels' claims in state court, and therefore did not waive their right to remove.  See Response at 14-15.  The City of Las Vegas, San Miguel County, and the NMDOT adopted the arguments contained in Amtrak's and BNSF's Response.  See Defendant City of Las Vegas's Joinder in Response by Defendants Amtrak and BNSF to Plaintiffs' Motion to Remand, filed September 27, 2010 (Doc. 24); Defendant San Miguel County's Response to Plaintiffs' Motion to Remand and Memorandum in Support Thereof, filed September 27, 2010 (Doc. 26); Defendant New Mexico Department of Transportation's Response to Plaintiffs' Motion for Remand in Esquibel, filed September 27, 2010 (Doc. 27).[2]

       On October 10, 2010, the Plaintiffs filed their Motion to Return, asking the Court to reassign the matter to Judge Vázquez to make the most efficient use of scarce judicial resources, to discourage judge shopping, and to avoid re-litigation of issues previously decided.  See Motion to Return at 1-2.  Amtrak and BNSF responded, arguing that re-assignment of the case would be improper, because the only case removed is the separate and distinct civil action which the Esquibels brought.  See Response of Defendants Amtrak and BNSF to Motion Requesting that this Matter be Returned to the Previously Assigned Judge, filed October 21, 2010 (Doc. 36)("Response to Motion to Return").  The City of Las Vegas, San Miguel County, and the NMDOT joined in Amtrak and

---

     [2] The NMDOT's response to the Motion to Remand also included several paragraphs that reiterated the arguments made in Amtrak's and BNSF's Response.

BNSF's Response.  See Defendant City of Las Vegas's Joinder in Response by Defendants Amtrak and BNSF to Motion Requesting that this Matter be Returned to the Previously Assigned Judge, filed October 21, 2010 (Doc. 37); Defendant San Miguel County's Response to Plaintiffs' Motion Requesting that this Matter be Returned to the Previously Assigned Judge, filed October 21, 2010 (Doc. 38); Defendant New Mexico Department of Transportation's Joinder in Defendants Amtrak and BNF [Doc. 36] and Defendant San Miguel County's Response to Plaintiff's Motion Requesting that this Matter be Returned to the Previously Assigned Judge [Doc. 38], filed October 22, 2010 (Doc. 39).

At the hearing, Earl Debrine, BNSF's and Amtrak's counsel, asserted that BNSF and Amtrak never intended to bring Stark-Romero's claims to the federal court, and that if Stark-Romero's claims are indeed in federal court, the Court should remand her claims to state court.  See Transcript of Hearing at 29:22-30:14 (taken November 18, 2010)(DeBrine, Court)("Tr.").[3]  Jerry Walz, the NMDOT's counsel, Tony Ortiz, City of Las Vegas' counsel, and Joan Waters, San Miguel County's counsel, all agreed that they did not intend to bring Stark-Romero's claims to federal court, and that if her claims were in federal court, the Court should either remand her claims or enter an order that states her claims are not in federal court.  See Tr. at 58:5-13 (Walz), 58:15-59:2 (Ortiz), 59:3-5 (Court, Waters).  Maria Touchet, Stark-Romero's and the Esquibels' counsel, asserted that there were two procedural deficiencies with the Second Notice of Removal: (i) it was not timely filed; and (ii) the Defendants were aware that they were removing Stark-Romero's claims, but did nothing to ensure that her claims were not removed.  See Tr. at 54:15-17, 56:17-23 (Touchet).

On January 6, 2011, Amtrak and BNSF gave notice to the Court of a recent decision from

---

[3] The Court's citations to the transcript refer to the court reporter's original, unedited version. The final transcript may contain slightly different page and/or line numbers.

the United States Court of Appeals for the Tenth Circuit, <u>Henderson v. National Railroad Passenger</u> <u>Corp.</u>, No. 09-2173, 2011 WL 14458 (10th Cir. Jan. 5, 2011).  In <u>Henderson v. National Railroad</u> <u>Passenger Corp.</u>, the Tenth Circuit stated that the district court had federal-question jurisdiction over the plaintiffs' claims against Amtrak, and supplemental jurisdiction under 28 U.S.C. § 1367(a) over the plaintiffs' state-law claims against BNSF and San Miguel County.  <u>See</u> 2011 WL 14458, at *1.

## RELEVANT LAW REGARDING REMOVAL

Section 1441 of Title 28 of the United States Code states:

> [A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. § 1441(a).  A federal district court has original jurisdiction if Article III's justiciability requirements are met, <u>see</u> <u>Lee v. Am. Nat'l Ins. Co.</u>, 260 F.3d 997, 1002-05 (9th Cir. 2001), <u>cert.</u> <u>denied</u>, 535 U.S. 928 (2002), and the case involves a federal question or diversity of citizenship, <u>see</u> <u>Caterpillar, Inc. v. Williams</u>, 482 U.S. 386, 392 (1987).

The right to removal is a statutory right, and the removing defendant must carefully follow all statutory requirements.  <u>See</u> <u>Bonadeo v. Lujan</u>, No. CIV 08-0812, 2009 WL 1324119, at *4 (D.N.M. Apr. 30, 2009)(Browning, J.); <u>Chavez v. Kincaid</u>, 15 F. Supp. 2d 1118, 1119 (D.N.M. 1998)(Campos, J.)("The right to remove a case that was originally in state court to federal court is purely statutory, not constitutional.").  Section 1446 of Title 28 of the United States Code, which controls the procedure for removal of a state action to federal court, states:

> A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such

action.

28 U.S.C. § 1446(a).  The defendant must file the notice of removal within thirty days after being

served.  See 28 U.S.C. § 1446(b).  "[T]he statute, insofar as the time for removal is concerned, is

imperative and mandatory, must be strictly complied with, and is to be narrowly construed."  United

States ex rel. Walker v. Gunn, 511 F.2d 1024, 1026 (9th Cir. 1975).  See Fajen v. Found. Reserve

Ins. Co., 683 F.2d 331, 333 (10th Cir. 1982)("Removal statutes are to be strictly construed, and all

doubts are to be resolved against removal."  (internal citations omitted)).

The removing defendant bears the burden of establishing that removal is proper.  See

McPhail v. Deere & Co., 529 F.3d 947, 953 (10th Cir. 2008)("[A]ccording to this and most other

courts, the defendant is required to prove jurisdictional facts by a 'preponderance of the evidence'");

Bonadeo v. Lujan, 2009 WL 1324119, at *4 ("As the removing party, the defendant bears the burden

of proving 'all jurisdictional facts and of establishing a right to removal.'"  (quoting Chavez v.

Kincaid, 15 F. Supp. 2d at 1119)).  The Tenth Circuit has explained that, "[g]iven the limited scope

of federal jurisdiction, there is a presumption against removal, and courts must deny such

jurisdiction if not affirmatively apparent on the record."  Okla. Farm Bureau Mut. Ins. Co. v. JSSJ

Corp., 149 F. App'x 775, 778 (10th Cir. 2005).  See Bonadeo v. Lujan, 2009 WL 1324119, at *4

("Removal statutes are strictly construed, and ambiguities should be resolved in favor of remand.").

1.    **Removable Actions.**

Section 1441 of Title 28 of the United States Code states that "any civil action brought in

a State court of which the district courts of the United States have original jurisdiction, may be

removed by the defendant or the defendants, to the district court of the United States for the district

and division embracing the place where such action is pending."  28 U.S.C. § 1441(a).  "[T]he

statute does not define the term 'civil action' . . . [,]"  Levert-St. John, Inc. v. Hartford Steam Boiler

Inspection & Ins. Co., No. CIVA 06-1023, 2006 WL 1875494, at *1 (W.D. La. July 3, 2006), but federal courts have broadly construed the term, see 14B C. Wright, A. Miller, E. Cooper, R. Freer, J. Stainman, C. Struve, & V. Amark, Federal Practice & Procedure Jurisdiction § 3721, at 28 (4th ed. 2009 & Supp. 2010).

For example, federal courts have found that proceedings for garnishment and actions to compel arbitration or to confirm or vacate an arbitration award are considered civil actions within the meaning of the federal removal statute. In London & Lancashire Indemnity Co. of America v. Courtney, 106 F.2d 277 (10th Cir. 1939), the defendant filed a petition for removal of a garnishment proceeding, and the United States District Court denied the motion to remand. See 106 F.2d at 279. The district court later entered an order dismissing the action without prejudice. See 106 F.2d at 279. The Tenth Circuit remanded the case to the lower court, instructing the lower court to modify the order dismissing the action, and in its opinion, addressed whether the removal was proper. See 106 F.2d at 283-85. The Tenth Circuit stated:

> It has been held that where party is called by process of garnishment in attachment proceedings he is not entitled to remove the case. The reason therefor is that it not only becomes a part of the original proceeding, but that, in case of a judgment against the garnishee, it might be for a sum greater than the claim established against the principal debtor, and in such case the application of the fund would devolve upon the court where the judgment was rendered to make proper distribution of the surplus. In such case the proper parties would not be before the federal court in case of removal by the garnishee. This objection has no application here, as the proceeding for execution against the garnishee arises only after return of nulla bona on the execution against the defendant, and no matter what amount the garnishee might owe the defendant no more than would be sufficient to satisfy the execution, reflecting the prior adjudicated amount of the judgment, could be awarded against him.
>
> With diversity of citizenship and other jurisdictional facts existing, the right of the defendant to remove such suits into the federal court exists.
>
> . . . .

In Lackawanna Coal & Iron Co. v. Bates, [56 F. 737, 740 (C.C.W.D. Mo. 1893)], it is further said:

> "The defendant's controversy with the plaintiff is wholly separable from the issues involved in the judgment against the corporation. The only question he litigates here is his liability as a stockholder. The motion takes and occupies the character of a petition. The defendant is brought into court on process. There is a plaintiff and a defendant, and the object of the proceeding is to have the court adjudge whether or not the defendant's property shall be rendered liable to plaintiff in the sum of $26,250 or less. On this issue he is entitled to a trial in due form of law, with the right of appeal or writ of error. The defendant corporation is not a party to this proceeding, and is not before the court. If such a case does not present all the elements of a 'suit,' within the meaning of the judiciary acts of congress, it does seem to me that Chief Justice Marshall was in error when he said, in Weston v. Charleston, 2 Pet. (449), 464 (7 L.Ed. 481):
>
> > "The term ('suit') is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice on which an individual pursues that remedy which the law affords. The modes of proceeding may be various, but if a right is litigated in a court of justice the proceeding on which the decision of the court is sought is a suit."

See, also, Kansas City & T.R. Co. v. Interstate Lumber Co. (C.C.), 37 F. 3 [(C.C.W.D. Mo. 1888)].

> In the instant case the defendant garnishee's controversy with the plaintiff, Lucile A. Courtney, is wholly separable from the issues involved on which the judgment against R. G. Courtney in favor of Lucile A. Courtney is founded. The only question to be litigated in the civil action wherein the garnishee, London & Lancashire Indemnity Company of America, is defendant and Lucile A. Courtney, plaintiff, is as to whether said garnishee was indebted to said defendant, R. G. Courtney.

106 F.2d at 283-84 (internal citations omitted).

In Adriaenssens v. Allstate Ins. Co., 258 F.2d 888 (10th Cir. 1958), a father and daughter each instituted a personal injury action in state court against the defendant. See 258 F.2d at 889. Judgment for the plaintiff was entered in each case. See 258 F.2d at 889. Approximately five years

later, the plaintiffs instituted actions in state court against Allstate Insurance Company to recover

"upon a policy of liability insurance issued to [the defendant]."  258 F.2d at 889.  The actions were

removed to the United States District Court for the Northern District of Oklahoma upon diversity

grounds.  See 258 F.2d at 889.  In each case, judgment was entered denying recovery on the policy,

and each plaintiff appealed the case.  See 258 F.2d at 889.  The cases were submitted to the Tenth

Circuit on a "single record."  258 F.2d at 889.  The plaintiffs challenged the jurisdiction of the

district court to "entertain the actions on removal."  258 F.2d at 889.  The Tenth Circuit found the

district court had jurisdiction over the actions on removal, stating:

> Treating the actions as being merely supplemental proceedings in the nature of
> garnishment for the collection of the judgments  rendered in the state court, it is
> argued that they were not subject to removal.  A like contention was advanced in
> London & Lancashire Indemnity Co. of America, v. Courtney, 10 Cir., 106 F.2d 277.
> There the holder of an unpaid judgment rendered in a state court in Oklahoma caused
> to be issued and served a writ of garnishment against a foreign corporation for the
> purpose of subjecting to the payment of the judgment the obligation of the garnishee
> under its policy of indemnity protection.  The garnishee caused the proceeding to be
> removed upon the ground of diversity of citizenship with the requisite amount in
> controversy.  The removability of the proceeding was challenged by motion to
> remand.  It was held in terms too clear for misunderstanding that the proceeding was
> in effect an original and independent action; and that diversity of citizenship with the
> requisite sum in controversy being present, the proceeding was removable.  In like
> manner, these actions were original and independent actions between the holders of
> the judgments and the insurer.  The issue between the parties was whether the insurer
> was liable under its policy issued to one who made a false representation of a
> material nature in order to obtain the coverage.  And, being original and independent
> actions of that kind with diversity of citizenship and the requisite sum in controversy,
> they were open to removal.  London & Lancashire Indemnity Co. of America v.
> Courtney, supra.

258 F.2d at 889-90.  See Conn. Bank of Commerce v. Republic of Congo, 440 F. Supp. 2d 346, 351

(D. Del. 2006)(concluding that a garnishment action was a separate and independent civil action,

because Delaware courts had explained that a garnishment proceeding is a separate process and

because the facts in the case presented "several issues for resolution that are distinct from the

original state action"); Scanlin v. Utica First Ins. Co., 426 F. Supp. 2d 243, 250 (M.D. Pa. 2006)(finding that the garnishment proceeding was removable as a "distinct 'civil action'" where the issue sought to be resolved in the garnishment proceeding was separate from the issues presented in the prior state court action, where in the previous case the salient issue was liability and in the garnishment action the issue was whether the defendant acted in bad faith, and where the defendant in the garnishment proceeding was not a defendant in the prior state action);[4] Xactron Mgmt. Ltd. v. Kreepy Krauly U.S.A., Inc., 696 F. Supp. 1465, 1466 (S.D. Fla. 1988)(action became removable when the plaintiff filed a motion to compel arbitration "pursuant to the Convention on the Recognition of Foreign Arbitral Awards"); Local 435 of Retail Store Emp. Union v. Heinrich Motors, Inc., 521 F. Supp. 418, 422 (D.C.N.Y. 1981)(concluding that the case was improperly removed, because the motion to confirm arbitrator's supplemental award was part of the action begun to vacate the arbitrator's initial award, because the action to vacate the initial award was commenced more than thirty days before the petition for removal, and because the petition for removal was therefore untimely).

The Court has found several cases in which federal courts analogized to cases that discuss whether garnishment proceedings are separate civil actions to determine whether petitions-in-intervention or bad faith claims are removable separate civil actions.  In Davenport v. Hamilton, Brown, & Babst, LLC, 624 F. Supp. 2d 524 (M.D. La. 2008), the United States District Court for the Middle District of Louisiana denied the plaintiffs-in-intervention's motion to remand their

---

[4] Not all federal courts have found that garnishment proceedings are separate civil actions. In Overman v. Overman, 412 F. Supp. 411 (E.D. Tenn. 1976), the United States District Court for the Eastern District of Tennessee examined the Tennessee garnishment statute and found that a garnishment proceeding in Tennessee should not be treated as an independent action for purposes of 28 U.S.C. § 1441; instead, it is "an ancillary proceeding because it must be based upon a valid, unsatisfied judgment and execution."  412 F. Supp. at 412.

petition-in-intervention.  See 624 F. Supp. 2d at 543.  In Davenport v. Hamilton, Brown & Babst,

LLC, the plaintiffs filed a state-court class action, and a class action settlement was approved.

See 624 F. Supp. 2d at 543.  The state court issued a judgment, which included an award of

attorneys' fees to class counsel to be paid by the defendant.  See 624 F. Supp. 2d at 543.  "Because

the attorneys could not agree on the distribution of the attorneys' fees," the plaintiffs-in-intervention

filed a petition of intervention in the state-court class action, naming a law firm and two of its

attorneys as defendants, and seeking an allocation by the state court of the attorneys' fees awarded

in the judgment.  See 624 F. Supp. 2d at 543-44.  The defendants removed the case, and the

plaintiffs-in-intervention filed a motion to remand, arguing that their petition of intervention was

not a new suit.  See 624 F. Supp. 2d at 544.  The district court stated:

> Applying the reasoning from Johnson[v. Great American Ins. Co., 213 F.
> Supp. 2d 657 (S.D. Miss. 2001)] to this case, the Petition for Intervention filed in the
> state court is comparable to a garnishment action for the purposes of removal.  The
> lesson taught by Johnson is that the court should evaluate both the separate character
> of the sought-to-be-removed "civil action," as well as the other side of the coin-its
> connection to the overall litigation.
>
> The dispute to be resolved by the Petition of Intervention is the division of
> the attorneys' fees among the attorneys making a claim to them.  The state court
> judgment has already fixed the total amount of attorneys' fees.  The Petition of
> Intervention does not seek to increase or reduce the amount of attorneys' fees
> awarded in the judgment.  This dispute is separate and distinct from the issues in the
> underlying litigation; the outcome of it will not change the plaintiffs' recovery or the
> defendant's liability.
>
> . . . .
>
> It is true that neither the plaintiffs-in-intervention nor the
> defendants-in-intervention are similarly situated to either the typical judgment
> creditor or judgment debtor, inasmuch as their respective shares of the attorneys' fees
> have not yet been determined by a court judgment. But this difference is outweighed
> by the separate and distinct character of the claims asserted in the Petition of
> Intervention. Had the plaintiffs-in-intervention filed a new declaratory judgment
> action against the defendants-in-intervention to obtain a division of attorneys' fees,
> it appears that it would have been removable under § 1441(a).

-15-

> Defendants-in-intervention took this very action by filing a complaint, CV 07-928, in this court based on diversity jurisdiction. Their complaint seeks a declaratory judgment to resolve the same dispute that is the subject of the removed Petition of Intervention. That the plaintiffs-in-intervention chose to file in the underlying litigation, albeit improperly in the form of an intervention, what in substance is a declaratory judgment action between non-parties does not change the essential character of their pleading. In these circumstances, the Petition of Intervention is a new and separate civil action, and therefore the one-year time limit for filing a notice of removal under § 1446(b) does not bar the removal.

624 F. Supp. 2d at 546 (footnotes omitted). In Nungesser v. Bryant, No. 07-1285-WEB, 2007 WL 4374022 (D. Kan. Dec. 7, 2007), the United States District Court for the District of Kansas addressed whether a defendant's bad faith claim against his liability insurer part of the same civil action as the plaintiff's tort action against the defendant. See 2007 WL 4374022, at * 5. The district court analogized to cases that discussed whether garnishment proceedings were distinct civil actions, stating:

> Although the instant case stands on a different procedural footing than the above garnishment actions, the principles expressed in those cases and the Kansas Supreme Court's ruling requiring dismissal of Bryant's third-party petition lead this court to a similar conclusion-namely, that Bryant's claim against EMCASCO must be considered a distinct "civil action" for purposes of § 1441(a) and (b). The court recognizes that Bryant's bad faith claim is asserted by way of a third-party petition filed in the underlying tort action, rather than by way of a garnishment proceeding by Nungesser. And most federal courts have determined that third party defendants do not have the right to remove a case under § 1441. See Elkhart Co-Op Equity Exchange v. Day, 716 F.Supp. 1384 (1989); Right of Third Party Defendant to Removal of Action from State to Federal Court under 28 U.S.C. § 1441, 8 A.L.R. Fed. 708 (1971). But in determining whether removal jurisdiction is proper, this court is not bound by the labels attached by state practice. . . . .

> The court is not persuaded that the distinction between the instant case and the garnishment actions . . . is material insofar as removal is concerned. The Kansas Supreme Court in Nungesser[v. Bryant, 153 P.3d 1277 (Kan. 2007),] made clear that when the tort action against Bryant was filed, Bryant had no bad faith claim and could not implead or assert a third-party complaint against EMCASCO. It said Bryant could not sue EMCASCO on such claims "until the tort claim against him . . . has been reduced to judgment." Nungesser, 283 Kan. at 558. See also id. at 560 (stating the issue is whether it was "permissible for Bryant's third-party suit against EMCASCO to proceed before the underlying tort action brought by

Nungesser had concluded").  The Supreme Court found it was error to allow the insurer to be brought into the same proceeding.  Under these unique circumstances, the state Supreme Court has already determined that Bryant's bad faith claim could not be joined as a third-party complaint in the same action with Nungesser's tort claim.  Whatever case label one may attach to the current post-judgment petition, one thing is clear: the Supreme Court required the bad faith claim to be brought as a separate action.  It declared the joinder of the claims improper and effectively severed the bad faith claim from the tort action.  Under these circumstances, the court concludes EMCASCO has met its burden of showing there is no possibility that Bryant could establish a cause of action against it in the tort action.  Under the "egregious joinder" or "fraudulent misjoinder" doctrine, then, this court will disregard Bryant's purported joinder of the claims, and will treat the bad faith claim as a separate civil action.  See Central of Georgia Ry. Co. v. Riegel Textile Corp., 426 F.2d 935, 938 (5th Cir. 1970)(indemnity claim that was severed from main action "treat[ed] the case as two lawsuits" and was properly removed; federal court should recognize that a party in this position "is as much a 'defendant' as if an original action had been brought against him.").  Cf. Federal Ins. Co. v. Tyco Int'l. Ltd., 422 F. Supp. 2d 357, 378-88 (S.D.N.Y. 2006) (finding no fraudulent misjoinder where the state court had "explicitly invit[ed] the impleader of" the third-party defendant).

Just as in a garnishment situation, the bad faith claim did not exist until liability in the tort action had been reduced to final judgment.  And just as in a garnishment situation, Bryant's bad faith cause of action is "a suit involving a new party and litigating the existence of a new liability." Bridges[for Bridges v. Bentley by Bentley], 716 F. Supp. [1389,] 1392 [(D. Kan. 1989)].  The entry of judgment on Nungesser's claims shows the tort action was in fact concluded, and that the subsequently filed bad faith claim against EMCASCO was a separate civil action, notwithstanding the state district court's allowance of the third-party petition under the same case number.  In either event -- whether such a claim is asserted by garnishment or by a post-judgment third-party complaint -- it is separate from the tort action concerning the injuries suffered by the plaintiff.  Moreover, the fact that the instant claim was asserted by Bryant, the defendant in the tort action, rather by the judgment creditor Nungesser, does not materially distinguish this case from the garnishment cases.  Insofar as the claim of bad faith is concerned, the interests of Nungesser and Bryant are aligned, and the distinction between a claim by Bryant or, alternatively, by Nungesser via garnishment, is one of form but not substance insofar as removal is concerned.  The election of one or both of these parties to assert a bad faith claim does not alter the conclusion that the federal law considers the claim to be a separate civil action for purposes of § 1441(a) and (b).

2007 WL 4374022, at *6-7 (footnote omitted).

Professors Charles Wright and Arthur Miller have noted, however, that there are limitations

on what can be considered a civil action:

> There is, however, a sensible judge-made limitation -- stemming from the civil action requirement -- that proceedings that are ancillary to an action pending in state court cannot be removed separately from the main claim.  This restriction, which has been applied in numerous cases for over a century, is premised on the wastefulness of having a satellite element of a case pending in federal court when the principal claims are being litigated in state court.  A modern example is Ohio v. Doe, in which the Sixth Circuit vacated the judgment and remanded to state court, holding that a proceeding to enforce a subpoena against a public defender, ordering her testimony, was not a removable civil action under 28 U.S.C.A. § 1442 where the proceeding was ancillary to a state court contempt proceeding arising out of a previously issued subpoena for the same testimony, and the contemnor was barred by res judicata from raising federal defenses that she could have raised to the prior subpoenas, so that nothing remained but for the state court to enforce the subpoena.

C. Wright & A. Miller, supra § 3721, at 34-36 (footnotes omitted).  See Adriaenssens v. Allstate Ins. Co., 258 F.2d at 889-90 (addressing the argument that the garnishment action was merely a supplemental proceeding not subject to removal); Richmond v. Allstate Ins. Co., 624 F. Supp. 235, 236 (E.D. Pa. 1985)("A suit which is merely ancillary or supplemental to another action cannot be removed from a state court to a federal court."  (citing W. Med. Props. Corp. v. Denver Opportunity, Inc., 482 F. Supp. 1205, 1207 (D. Colo. 1980)(collecting cases)); W. Med. Props. Corp. v. Denver Opportunity, Inc., 482 F. Supp. at 1207 ("It is a well settled rule that a suit which is merely ancillary or supplemental to another action cannot be removed from a state court to a federal court."  (citing Fed. Sav. and Loan Ins. Corp. v. Quinn, 419 F.2d 1017 (7th Cir. 1969); Adriaenssens v. Allstate Ins. Co., 258 F.2d 888; Overman v. Overman, 412 F. Supp. 411).

> A few cases have drawn a distinction between supplemental proceedings that are a mere mode of execution or relief, inseparably connected with an original judgment or decree in a state court proceeding and therefore not removable, and supplemental proceedings that involve an independent controversy with a new and different party.  The latter are removable.

C. Wright & A. Miller, supra § 3721, at 36 (footnotes omitted).  As the Honorable J.M. Love, United States District Judge, stated in Buford v. Strother, 10 F. 406 (C.C.D. Iowa 1881):

-18-

> It seems to me that the true principle is this: Where the supplemental proceeding is in its character a mere mode of execution or of relief, inseparably connected with the original judgment or decree, it cannot be removed, notwithstanding the fact that some new controversy or issue between the plaintiff in the original action and a new party may arise out of the proceeding.  But where the supplemental proceeding is not merely a mode of execution or relief, but where it, in fact, involves an independent controversy with some new and different party, it may be removed into the federal court; always, of course, assuming that otherwise the proper jurisdictional facts exist.

10 F. at 407-08.

The Court has found a case that relies in part on Wright & Miller's discussion of this judge-made limitation to find that a defendant could not remove a third-party claim.  In <u>Levert-St. John, Inc. v. Hartford Steam Boiler Inspection & Insurance Co.</u>, the United States District Court for the Western District of Louisiana addressed whether it should remand the defendant's "purported removal of only a third party claim, rather than the entire action."  2006 WL 1875494, at * 1.  The district court relied on <u>Black's Law Dictionary</u>'s definition of "civil action," stating that it understood the term to refer to "the entirety of a litigation, in which any number of different claims may be asserted by the various parties thereto."  2006 WL 1875494, at * 1 (citing <u>Black's Law Dictionary</u> 31 (8th ed. 2004)(defining "action" as "a civil or criminal judicial proceeding").  The Western District of Louisiana also discussed Professors Wright and Miller's declaration that there is a judge-made limitation, under which judges will not remove that ancillary proceedings separately from the main claim.  <u>See</u> 2006 WL 1875494, at *1-2.  The district court stated: "Thus, this Court's independent research has reinforced the proposition that removal of only selected claims from a state court action is not permitted, and has yielded no support for the defendant's theory of partial removal."  2006 WL 1875494, at * 2.

> The partial-removal concept is in substantial conflict with many time-honored and well-settled judicial tenets of removal; it could not possibly be given effect without fleshing out those conflicts and reconciling them.  For instance, the defendant has not explained why it believes the term "civil action," as used in the

removal statute, has the same meaning as does the term "claim," (so as to permit the removal of a third party claim, without the rest of the action), nor why Congress used the former term if it intended the latter.  Additionally, the concept of partial removal would permit pick-and-choose removal of only certain parties' claims and, therefore, would have the effect of eliminating the longstanding statutory and jurisprudential requirement that diversity jurisdiction be premised upon complete diversity among the parties; the abrogation of this requirement certainly would have to be addressed directly.  As a third example, the removing party's theory of removal could not possibly be accepted without an explanation as to the source of, and justification for, the removal process granting to a defendant the authority to rearrange litigation to reflect its preferences by carving it up into howsoever many separate cases it prefers to have proceeding in different courts simultaneously.  This list of conflicts is not intended to be exhaustive, but merely illustrative of the monumental incompatibility between the partial-removal concept and the well-settled, longstanding judicial theory of removal.

No effort to reconcile the aforementioned conflicts has been made by Hartford in its Notice of Removal, and this Court's independent research has yielded no support for the partial-removal concept.  The statutory provisions which authorize removal -- which reflect Congress' intentions with regard to the proper scope of removal -- do not justify partial removal.  In light of the use of the term "civil action" in the removal statute, and of this Court's understanding of the term "action" as comprising the entirety of a case, and of the longstanding prohibition against removing only handpicked claims from state court to federal, and as the removing defendant has made no attempt to reconcile its theory of partial removal with the well-settled judicial tenets with which it is in conflict, this Court finds that the defendant's attempt at a partial removal is contrary to both the law and the theory of removal.  The legal effect of the removal herein was to remove the entirety of the <u>Tabor</u> action from state court.  Thus, the proper analysis of whether this Court has subject matter jurisdiction over this case must be made on the basis of the entirety of the action as it existed at the time the Notice of Removal was filed.

2006 WL 1875494, at *2.

Professors Wright and Miller also recognize that, recently, federal courts have stated that federal law governs the question whether a proceeding is removable, but that federal courts can consider the state's characterization of the proceeding.

Although earlier cases held that state law determined whether a proceeding was ancillary for removal purposes, more recent decisions show a distinct trend toward regarding this question as governed by federal law, with the state characterization regarded as weighty but not conclusive.  This utilization of federal standards informed by state law was first clearly applied by the Eighth Circuit in Stoll v.

Hawkeye Casualty Company of Des Moines, Iowa, a 1950 [sic] decision.

C. Wright & A. Miller, supra § 3721, at 36-37 (footnotes omitted).  In Stoll v. Hawkeye Cas. Co. of Des Moines, Iowa, 185 F.2d 96 (8th Cir. 1951), the United States Court of Appeals for the Eighth Circuit stated that "[t]he question whether a civil action is removable and has been properly removed is one for the consideration of the federal court and is not controlled by State law."  185 F.2d at 99 (citations omitted).  Four years later, the Supreme Court of the United States stated that a state statute's "procedural provisions cannot control the privilege o[f] removal granted by the federal statute."  Chicago, R.I. & P.R. Co. v. Stude, 346 U.S. 574, 580 (1954)(citation omitted).  More recently, the District Court for the District of Kansas has stated:

> But in determining whether removal jurisdiction is proper, this court is not bound by the labels attached by state practice.  Congress intended the removal statute to be uniform in its nationwide application, and the removal statute thus sets its own criteria, irrespective of local practice, for determining what suits may be removed.  See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941). At the same time, this does not mean the State's practice and procedure is irrelevant. The state court's characterization of the action is a factor this court can consider in determining whether a civil action is separate for purposes of removal.  See Scanlin v. Utica First Ins. Co., 426 F.Supp.2d 243, 248 (M.D.Pa.2006).

Nungesser v. Bryant, 2007 WL 4374022, at *6.

**2.    Time for Removal.**

Section 1446 of Title 28 of the United States Code governs the procedure for removal.  See 28 U.S.C. § 1446(b).  It states:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or

> otherwise, of a copy of an amended pleading, motion, order or other paper from
> which it may first be ascertained that the case is one which is or has become
> removable, except that a case may not be removed on the basis of jurisdiction
> conferred by section 1332 of this title more than 1 year after commencement of the
> action.

28 U.S.C. § 1446(b).  Section 1446(b) "allows for more than one petition to remove."  O'Bryan v.

Chandler, 496 F.2d 403, 408 (10th Cir. 1974).  "Generally, the second paragraph of § 1446(b) is

designed to allow a defendant to remove a state action when it was not originally removable as

stated by the plaintiff's initial complaint in the state court, but has become removable . . . .'"

O'Bryan v. Chandler, 496 F.2d at 408 (citations omitted).  The requirement that a defendant timely

file the notice of removal is mandatory, though it is not jurisdictional. See Bonadeo v. Lujan, 2009

WL 1324119, at *6 (citing McCain v. Cahoj, 794 F. Supp. 1061, 1062 (D. Kan. 1992)).

　　　　In Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999), the Supreme

Court held that informal service based on a "courtesy copy" of the file-stamped complaint did not

start the thirty-day period.  See 526 U.S. at 347-48.  Before this ruling, many federal courts had

ruled that the defendant's receipt of a courtesy copy of the complaint initiated the statutory thirty-

day period to remove.  See C. Wright & A. Miller, supra § 3731.  In Murphy Bros., Inc. v. Michetti

Pipe Stringing, Inc., the Supreme Court addressed whether a named defendant "must be officially

summoned to appear in the action before the time to remove begins to run[,] [o]r, may the 30-day

period start earlier, on the named defendant's receipt, before service of official process, of a

'courtesy copy' of the filed complaint faxed by counsel for the plaintiff."  526 U.S. at 347.  The

Supreme Court read the removal provisions in light "of a bedrock principle: An individual or entity

named as a defendant is not obliged to engage in litigation unless notified of the action, and brought

under a court's authority, by formal process."  526 U.S. at 347.  The Supreme Court held that "a

named defendant's time to remove is triggered by simultaneous service of the summons and

-22-

complaint, or receipt of the complaint, 'through service or otherwise,' after and apart from service

of the summons, but not mere receipt of the complaint unattended by any formal service." 526 U.S.

at 347-48.  The Supreme Court recognized that service of process is "fundamental to any procedural

imposition on a named defendant."  526 U.S. at 350.  Absent service of process, a court "ordinarily

may not exercise power over a party the complaint names as defendant." 526 U.S. at 350 (citations

omitted).  The Supreme Court found that, when Congress enacted 28 U.S.C. § 1446(b), it did not

"endeavor to break away from the traditional understanding."  526 U.S. at 352.

> Prior to 1948, a defendant could remove a case any time before the expiration of her time to respond to the complaint under state law.  See, e.g., 28 U.S.C. § 72 (1940 ed.).  Because the time limits for responding to the complaint varied from State to State, however, the period for removal correspondingly varied.  To reduce the disparity, Congress in 1948 enacted the original version of § 1446(b), which provided that "[t]he petition for removal of a civil action or proceeding may be filed within twenty days after commencement of the action or service of process, whichever is later."  Act of June 25, 1948, 62 Stat. 939, as amended, 28 U.S.C. § 1446(b).  According to the relevant House Report, this provision was intended to "give adequate time and operate uniformly throughout the Federal jurisdiction."  H.R. Rep. No. 308, 80th Cong., 1st Sess., A135 (1947).

> Congress soon recognized, however, that § 1446(b), as first framed, did not "give adequate time and operate uniformly" in all States.  In States such as New York, most notably, service of the summons commenced the action, and such service could precede the filing of the complaint.  Under § 1446(b) as originally enacted, the period for removal in such a State could have expired before the defendant obtained access to the complaint.

> To ensure that the defendant would have access to the complaint before commencement of the removal period, Congress in 1949 enacted the current version of § 1446(b): "The petition for removal of a civil action or proceeding shall be filed within twenty days [now thirty days] after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based."  Act of May 24, 1949, § 83(a), 63 Stat. 101.  The accompanying Senate Report explained:

>> "In some States suits are begun by the service of a summons or other process without the necessity of filing any pleading until later.  As the section now stands, this places the defendant in the position of having to take steps to remove a suit to Federal court before he

knows what the suit is about.  As said section is herein proposed to be rewritten, a defendant is not required to file his petition for removal until 20 days after he has received (or it has been made available to him) a copy of the initial pleading filed by the plaintiff setting forth the claim upon which the suit is based and the relief prayed for.  It is believed that this will meet the varying conditions of practice in all the States."  S. Rep. No. 303, 81st Cong., 1st Sess., 6 (1949).

See also H.R. Rep. No. 352, 81st Cong., 1st Sess., 14 (1949) ("The first paragraph of the amendment to subsection (b) corrects [the New York problem] by providing that the petition for removal need not be filed until 20 days after the defendant has received a copy of the plaintiff's initial pleading.").  Nothing in the legislative history of the amendment so much as hints that Congress, in making changes to accommodate atypical state commencement and complaint filing procedures, intended to dispense with the historic function of service of process as the official trigger for responsive action by an individual or entity named defendant.

526 U.S. at 352-53 (footnotes omitted).

### 3.   Waiver of Right to Remove.

The right to remove may be waived.  See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d 1072, 1077 (10th Cir. 1999)(noting that a defendant who does not act within the statutory removal deadlines waives its right to remove the action to federal court).  Cf. Akin v. Ashland Chem. Co., 156 F.3d 1030, 1036 & n.7 (10th Cir. 1998)(ruling, in response to assertion made in motion to remand that one of the defendants had waived its right to removal by moving for summary judgment in state court, "that a defendant who actively invokes the jurisdiction of the state court and interposes a defense in that forum is not barred from the right to removal in the absence of adequate notice of the right to remove," and applying the principle, after plaintiff amended her complaint in federal court, that "once [the] plaintiff decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there" (internal quotation marks omitted)).

Courts have held that, once a claim for enforcement of a federal right has been made in state

tribunals, a defendant waives its right to removal by "demonstrating a 'clear and unequivocal' intent to remain in state court."  Grubb v. Donegal Mut. Ins. Co., 935 F.2d 57, 59 (4th Cir. 1991)(citing Rothner v. City of Chicago, 879 F.2d 1402 (7th Cir. 1989)).  See Aqualon v. Mac Equip., Inc., 149 F.3d 262, 264 (4th Cir. 1998).  A clear intent to remain in state court may be shown by taking "substantial defensive action" before removal, Aqualon v. Mac Equip., Inc., 149 F.3d 262, 264 (4th Cir. 1998), or by seeking a final determination on the merits of the case before removal, see Wolfe v. Wal-Mart Corp., 133 F. Supp. 2d 889, 893 (N.D.W. Va. 2001)(holding that filing a motion for summary judgment in state court constituted waiver).  As the United States District Court for the Western District of Virginia stated in Sayre Enter., Inc. v. Allstate Insurance Co., 448 F. Supp. 2d 733 (W.D.W. Va. 2006):

> If a defendant could remove a case to federal court after a final and unfavorable determination had been made on the merits of the case in state court, he would be able to litigate the same case twice.  This situation is precisely what must be avoided in the interests of judicial economy, fairness, convenience, and comity.

448 F. Supp. 2d at 735.  See Haynes v. Gasoline Marketers, Inc., 184 F.R.D. 414, 416 (M.D. Ala. 1999)(finding the defendant did not waive its right to remove, because filing an answer in state court was not a manifestation of clear and unequivocal intent to litigate on the merits in state court); Chavez v. Kincaid, 15 F. Supp. 2d 1118, 1125 (D.N.M. 1998)(Campos, J.)(finding waiver of right to remove when defendant served discovery requests, made a motion to dismiss, and scheduled a hearing on the motion after it should have ascertained its removal right but before it filed its notice of removal).  As to the timing of waiver, a defendant can waive the right to remove only by litigating after the case actually becomes removable.  See 28 U.S.C. § 1446(b);  Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. at 347-48.

4.      **Removal of Remand Order**.

Section 1447(d) of Title 28 of the United States Code prohibits a court from reviewing a remand order "by appeal or otherwise." This prohibition extends to the court reviewing its own remand orders, as well as to appellate courts reviewing the orders of district courts. The United States Court of Appeals for the Tenth Circuit has not yet ruled whether 28 U.S.C. § 1447 forecloses a district court's reconsideration of its own remand order, but numerous other courts have ruled that it does. For instance, the United States Court of Appeals for the Eleventh Circuit has held that § 1447(d)'s provision of "nonreviewability extends to the power of a district court to reconsider its own remand order." First Union Nat'l Bank v. Hall, 123 F.3d 1374, 1377 (11th Cir. 1997)(citations omitted). The United States Court of Appeals for the Fourth Circuit remarked that "[i]ndisputably, 'otherwise' in § 1447(d) includes reconsideration by the district court." In re Lowe, 102 F.3d 731, 734 (4th Cir. 1996)(Motz, J.)(citations omitted). See Three J Farms v. Alton Box Bd. Co., 609 F.2d 112, 115 (4th Cir. 1979)("Unquestionably, [§ 1447(d) ] not only forecloses appellate review, but also bars reconsideration of such an order by the district court."). Similarly, the United States Court of Appeals for the First Circuit has ruled:

> [T]here is no more reason for a district court being able to review its own decision, and revoke the remand, than for an appellate court requiring it to do so. Both are foreclosed; nothing could be more inclusive than the phrase "on appeal or otherwise." The district court has one shot, right or wrong.

In re La Providencia Dev. Corp., 406 F.2d 251, 252-53 (1st Cir. 1969). The First Circuit explained the rationale behind this strict rule of nonreviewability:

> Removal . . . to the prejudice of state court jurisdiction, is a privilege to be strictly construed, and the state court proceedings are to be interfered with once, at most. This is not only in the interest of judicial economy, but out of respect for the state court and in recognition of principles of comity. The action must not ricochet back and forth depending upon the most recent determination of a federal court.

406 F.2d at 252.  Finally, two Districts in the Tenth Circuit -- the Districts of Kansas and Colorado -- have also found that they cannot review their own remand orders.  See Maggio Enters. v. Hartford Cas. Ins. Co., 132 F. Supp. 2d 930, 931 (D. Colo. 2001)("Because a remand order deprives the district court of jurisdiction, the district court may not vacate or reconsider its order of remand." (citations omitted)); Aetna U.S. Healthcare, Inc. v. Hoechst Aktiengesellschaft, 67 F. Supp. 2d 1242, 1245 (D. Kan. 1999)("The broad language of Section 1447(d) clearly prohibits review of remand orders under Section 1447(c), and a motion for reconsideration is a form of review."  (citations omitted)).  See also Consol. Doors, Inc. v. Mid-Am. Door Co., 120 F. Supp. 2d 759, 764 (E.D. Wis. 2000)(noting the defendant's inability to find cases wherein "a court has reconsidered its remand order pursuant to Rule 60(b) [is] not difficult to discern," because "[t]here is a statute that deals explicitly with post-removal procedure[;] Title 28 U.S.C. § 1447(d)"); Creekmore v. Food Lion, Inc., 797 F. Supp. 505, 510 (E.D. Va. 1992)("Unquestionably, [§ 1447(d) ] not only forecloses appellate review, but also bars reconsideration of such an order by the district court.  Both are foreclosed; nothing could be more inclusive than the phrase 'on appeal or otherwise.'"  (quoting Three J Farms, Inc. v. Alton Box Bd. Co., 609 F.2d at 115)); City of Valparaiso v. Iron Workers Local Union 395, 118 F.R.D. 466, 468 (N.D. Ind. 1987)("[I]t is universally held that once a federal district court remands a case and mails a certified copy of its order to the state court, the district court loses all jurisdiction, even if it later changes its mind."  (citing New Orleans Pub. Serv., Inc. v. Majoue, 802 F.2d 166, 167 (5th Cir. 1986); Boone Coal and Timber Co. v. Polan, 787 F.2d 1056, 1059-1061 (6th Cir. 1986); Pelleport Investors, Inc. v. Budco Quality Theatres, 741 F.2d 273, 279 n.3 (9th Cir. 1984); Three J. Farms, Inc. v. Alton Box Bd. Co., 609 F.2d at 115; Fed. Deposit Ins. Corp. v. Santiago Plaza, 598 F.2d 634, 636 (1st Cir.1969); 14A C. Wright & A. Miller, Fed. Prac. & Proc. § 3739 (1985 & Supp.1987); 1A J. Moore, J. Lucas & K. Sinclair, Jr., Moore's Federal

Practice ¶ 0.169 [2.-1] (2d ed. 1987)).  But see Long v. American Red Cross, No. C2-92-566, 1992 WL 566292, at *4 (S.D. Ohio Oct 8, 1992)(noting that it could review its own non-final remand ruling without running afoul of § 1447(d), because "[t]hat prohibition against review . . . is directed toward appellate review."  (citing Thermtron Prods. v. Hermansdorfer, 423 U.S. 336, 351-52 (1976)(holding that because the district court judge exceeded his statutorily defined power in remanding a properly removed case, § 1447(d) did not bar "issuance of the writ of mandamus," and clarifying that its holding did not disturb "the well-established general rule that s 1447(d) . . . [was] intended to forbid review by appeal or extraordinary writ of any order remanding a case on the grounds permitted by the statute"), abrogated by Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996)).

This Court has already held that § 1447(d) bars it from reviewing its remand orders.  In Schoen v. Presbyterian Health Plan, Inc., Nos. Civ. 08-0687 JB/WDS, 08-0970 JB/WDS, 2009 WL 2450227 (D.N.M. July 29, 2009)(Browning, J.), Presbyterian Health Plan, Inc. asked the Court to reconsider a prior order remanding a state administrative appeal to state court for lack of subject-matter jurisdiction.  The Court concluded "that, under § 1447(d), it does not have authority to reconsider its decision to remand for lack of subject-matter jurisdiction."  Schoen v. Presbyterian Health Plan, Inc., 2009 WL 2450227, at *2.  Earlier, in Chaara v. Intel Corp., No. CIV-05-278 JB/RLP, 2006 WL 4060670 (D.N.M. Nov. 21, 2006)(Browning, J.), Plaintiff Chaara sought reconsideration of an order of this Court remanding some claims back to state court.  Chaara v. Intel Corp., 2006 WL 4060670, at *1-2.  The Court denied the motion to reconsider, both "[b]ecause the Court [did] not believe that Chaara [had] satisfied the standard required for granting a rule 59(e) motion to reconsider . . . , and because it appears that the Court is foreclosed from reconsidering its remand determination."  2006 WL 4060670 at *6.

## RELEVANT LAW REGARDING FEDERAL-QUESTION JURISDICTION

Through several cases, the Supreme Court held that a lawsuit against a federally chartered, federally owned corporation arises under federal law.  In Osborn v. Bank of the United States, 22 U.S. 738 (1824), the Supreme Court, through Chief Justice John Marshall, held that every case in which the Bank of the United States, which an Act of Congress created, is a party arises under the laws of the United States.  See 22 U.S. at 807.  The Supreme Court stated:

> Congress had constitutional authority to confer this jurisdiction on the Circuit Courts.  It was 'a case arising under the constitution and laws of the United States.'  Every case, in which the Bank of the United States is a party, is, in the strictest literal interpretation of the clause, a case arising under a law and the constitution of the United States.  But for the law, the case would never have existed.  But for the continued existence of the law, it could not continue to exist. . . .  The establishment of a corporation is a legislative creation of a faculty, of a moral being, invisible and intangible, but with capacities, powers, and privileges, rights and duties.  The rights it may acquire, the wrongs it may suffer, the obligations it may incur, the injuries it may inflict, the acts it may do, its power to do, or to endure, are all derived from, and dependent upon, the charter.  To the charter it owes its being, its continued existence, its qualities and properties.  The charter defines its duties, and effords the only measure of its responsibilities.  Every act it performs, derives its validity from the charter only; and whenever it deals with another, it deals under and according to the charter.  In the same manner, whoever deals with it, deals under and according to the charter.  Its capacity to contract, and to sue and be sued, all are derived from that source.  It cannot come into Court, without bringing the law in its hand.  It is bound in every case to show, that it is acting within the limits of its corporate powers, as defined in that law.  There can be no case, where the Bank is a party, in which questions may not arise under the laws of the United States.  In every such case, it must appear, that it was duly created, continues to exist, has power to contract, and to bring the suit.  All these are matters arising under the laws of the United States, and under no other.  Suppose an officer created by act of Congress, could not Congress confer on him the privilege of suing and being sued, in his official capacity, in the Courts of the Union? Such an officer has two capacities, private and official, and may be subject to different jurisdictions, according as either is affected.  But a corporation has but one capacity, and its faculties cannot be divided.  Wherever an authority is given, all that is done by virtue of that authority, is done under it.  Every thing done by the Bank, is done under the charter.

22 U.S. at 806-07.

In Union Pacific Railway Co. v. Myers, 115 U.S. 1, superseded by 28 U.S.C. § 1349

("<u>Pacific Railroad Removal Cases</u>"), the Supreme Court expanded its holding in <u>Osborn v. Bank of the United States</u>, finding that "corporations of the United States, created by and organized under acts of congress, . . . are entitled . . . to remove . . . suits brought against them in state courts . . . on the ground that the suits" arise under the laws of the United States.  115 U.S. at 11.  In reaching this conclusion, the Supreme Court stated:

> We are of opinion that corporations of the United States, created by and organized under acts of congress, like the plaintiffs in error in these cases, are entitled as such to remove into the circuit courts of the United States suits brought against them in the state courts, under and by virtue of the act of March 3, 1875, on the ground that such suits are suits 'arising under the laws of the United States.'  We do not propose to go into a lengthy argument on the subject; we think that the question has been substantially decided long ago by this court.  The exhaustive argument of Chief Justice MARSHALL in the case of <u>Osborn v. Bank of U. S.</u> 9 Wheat. 817-828, delivered more than 60 years ago, and always acquiesced in, renders any further discussion unnecessary to show that a suit by or against a corporation of the United States is a suit arising under the laws of the United States.  That argument was the basis of the decision on the jurisdictional question in that case.  The precise question, it is true, was as to the power of congress to authorize the bank to sue and be sued in the United States courts.  The words of its charter were that the bank should be made able and capable in law to 'sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all state courts having competent jurisdiction, and in any circuit court of the United States.'  The power to create such a jurisdiction in the federal courts rested solely on the truth of the proposition that a suit by or against the bank would be a suit arising under the laws of the United States; for the constitution confined the judicial power of the United States to these four classes of cases, namely: <u>First</u>, to cases in law and equity, arising under the constitution, the laws of the United States, and treaties made under their authority; <u>secondly</u>, to cases affecting ambassadors, other public ministers, and consuls; <u>thirdly</u>, to cases of admiralty and maritime jurisdiction; <u>Fourthly</u>, to certain controversies depending on the character of the parties, such as controversies to which the United States are a party, those between two or more states, or a state and citizens of another state, or citizens of different states, or citizens of the same state claiming lands under grants of different states, or a state or its citizens and foreign states, citizens, or subjects.  Now, suits by or against the United States Bank could not possibly, as such, belong to any of these classes except the first, namely, cases in law and equity arising under the constitution, laws, or treaties of the United States; and the supreme court, as well as the distinguished counsel who argued the <u>Osborn Case</u>, so understood it.  Unless, therefore, a case in which the bank was a party was for that reason a case arising under the laws of the United States, congress would not have had the power to authorize it to sue and be sued in the circuit court of the

United States.  And to this question, to-wit, whether such a case was a suit arising under the laws of the United States, the court directed its principal attention.  But as it was objected that several questions of generallaw [sic] might arise in a case, besides that which depended upon an act of congress, the court first disposed of that objection, holding that, as scarcely any case occurs every part of which depends on the constitution, laws, or treaties of the United States, it is sufficient for the purposes of federal jurisdiction if the case necessarily involves a question depending on such constitution, laws, or treaties.  The chief justice then proceeds as follows:

'We think, then, that when a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or law may be involved in it.  The case of the bank is, we think, a very strong case of this discription [sic].  The charter of incorporation not only creates it, but gives it every faculty which it possesses.  The power to acquire rights of any description, to transact business of any description, to make contracts of any description, to sue on those contracts, is given and measured by its charter, and that charter is a law of the United States.  This being can acquire no right, make no contract, bring no suit, which is not authorized by a law of the United States.  It is not only itself the mere creature of a law, but all its actions and all its rights are dependent on the same law.  Can a being thus constituted, have a case which does not arise literally as well as substantially under the law? Take the case of a contract, which is put as the strongest against the bank.  When a bank sues, the first question which presents itself, and which lies at the foundation of the cause, is, has this legal entity a right to sue? Has it a right to come, not into this court particularly, but into any court? This depends upon a law of the United States.  The next question is, has this being a right to make this particular contract? If this question be decided in the negative, the cause is determined against the plaintiff; and this question, too, depends entirely on a law of the United States.  These are important questions, and they exist in every possible case. * * *  The question forms an original ingredient in every cause.  Whether it be in fact relied on or not in the defense, it is still a part of the cause, and may be relied upon.  The right of the plaintiff to sue cannot depend on the defense which the defendant may choose to set up.  His right to sue is anterior to that defense, and must depend on the state of things when the action was brought.  The questions which the case involves, then, must determine its character, whether those questions be made in the cause or not.' Pages 823, 824.

'It is said that a clear distinction exists between the <u>party</u> and the <u>cause</u>; that the party may originate undr [sic] a law with which the

> cause has no connection; and that congress may, with the same
> propriety, give a naturalized citizen, who is the mere creature of a
> law, a right to sue in the courts of the United States, as give that right
> to the bank.  This distinction is not denied; and if the act of congress
> was a simple act of incorporation, and contained nothing more, it
> might be entitled to great consideration.  But the act does not stop
> with incorporating the bank.  It proceeds to bestow upon the being it
> has made all the faculties and capacities which that being possesses.
> Every act of the bank grows out of this law, and is tested by it.  To
> use the language of the constitution, every act of the bank arises out
> of this law.' Page 827.
>
> If the case of Osborn v. Bank is to be adhered to as a sound exposition of the
> constitution, there is no escape from the conclusion that these suits against the
> plaintiffs in error, considering the said plaintiffs as corporations created by and
> organized under the acts of congress referred to in the several petitions for removal
> in these cases, were and are suits arising under the laws of the United States.  An
> examination of those acts of congress shows that the corporations now before us, not
> only derive their existence, but their powers, their functions, their duties, and a large
> portion of their resources, from those acts, and, by virtue thereof, sustain important
> relations to the government of the United States.

115 U.S. at 12-14.  After the Supreme Court decided the Pacific Railroad Removal Cases, Congress

enacted 28 U.S.C. § 1349, which limits federal courts' jurisdiction over corporations incorporated

by an Act of Congress.  Section 1349 states: "The district courts shall not have jurisdiction of any

civil action by or against any corporation upon the ground that it was incorporated by or under an

Act of Congress, unless the United States is the owner of more than one-half of its capital stock."

28 U.S.C. § 1349.

In 49 U.S.C. §§ 24301 to 24316, Congress created Amtrak.  The Amtrak Board of Directors

is composed of nine directors: (i) the Secretary of Transportation; (ii) the President of Amtrak; and

(iii) seven "individuals appointed by the President of the United States, by and with the advice and

consent of the Senate."  49 U.S.C. § 24302.  Federal courts have recognized that the United States

holds more than half of Amtrak's capital stock.  See Lebron v. Nat'l R.R. Passenger Corp., 513 U.S.

374, 385 (1995)("[T]he United States presently holds all of Amtrak's preferred stock, which it

received (and still receives) in exchange for its subsidization of Amtrak's perennial losses, see § 544(c), . . . ."); Adkins v. Ill. Cent. R.R. Co., 326 F.3d 828, 834 (7th Cir. 2003)("[Amtrak] is a federal entity in which the United States owns more than 50% of the outstanding stock."); Alfaro v. Nat'l R.R. Passenger Corp., No. Civ. 10-1912, 2010 WL 4669192 (E.D. La. Nov. 9, 2010)("Amtrak is federally chartered and the United States owns more than half of its capital stock.").

Numerous federal courts have found that they have federal-question jurisdiction over cases against Amtrak. See Henderson v. Nat'l R.R. Passenger Corp., 2011 WL 14458, at *1 (finding that "the district court had subject matter jurisdiction over Plaintiffs' claims against Amtrak under 28 U.S.C. § 1331 and 28 U.S.C. § 1349 because Congress created Amtrak and the United States owns over fifty percent of its stock," and stating that federal-question jurisdiction exists for "congressionally incorporated corporations under 28 U.S.C. § 1331" and that "[t]he limitation to this basis of jurisdiction" -- 28 U.S.C. § 1349 -- does not apply to Amtrak); Aliotta v. Nat'l R.R. Passenger Corp., 315 F.3d 756, 758 n.1 (7th Cir. 2003)("Through the interaction of these statutes and cases, federal courts have jurisdiction over all cases involving Amtrak, regardless of the cause of action."  (citation omitted)); Nat'l R.R. Passenger Corp. v. Rountree Transp. and Rigging, Inc., 286 F.3d 1233, 1259 n.25 (11th Cir. 2002)("It is true that, because Amtrak is a federally chartered corporation that meets the requirements of 28 U.S.C. § 1349, federal question jurisdiction is proper." (citations omitted)); Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Com'n, 159 F. Supp. 2d 28, 33-34 (E.D. Pa. 2001)("Amtrak's status under 28 U.S.C. § 1349 provides an independent basis for federal question jurisdiction under 28 U.S.C. § 1331[;] [i]ndeed, based upon the legislative history of Amtrak's enabling legislation, 45 U.S.C. § 541, a suit against Amtrak is a federal question irrespective of the underlying cause of action."  (quoting Boone v. Nat'l R.R. Passenger Corp., No.

CIV A. 93-0770, 1993 WL 9396 (E.D. Pa. Mar. 30 1993); citations omitted)); Jones v. Nat'l R.R.

Passenger Corp., No. 94-2332-JWL, 1994 WL 608597 (D. Kan. Oct. 21, 1994)("Amtrak avers, and

plaintiff does not dispute, that the United States owns more than 50 percent of the capital stock of

Amtrak.  As a result section 1349 does not limit the jurisdiction of this Court . . . .  Accordingly, the

court finds that this suit falls within this Court's original . . . jurisdiction.");  Marcus v. Ne.

Commuter Servs. Corp., Civ. No. 92-2296, 1992 WL 129637, at *1 (E.D. Pa. June 9,

1992)("Because Amtrak is a federally-chartered corporation whose stock is wholly owned by the

federal government, the present action falls within this court's federal question

jurisdiction.")(citations omitted).

In Hollus v. Amtrak Northeast Corridor, 937 F. Supp. 1110 (D.N.J. 1996), the United States

District Court for the District of New Jersey found that it had federal-question jurisdiction over the

"slip and fall" case against Amtrak.  937 F. Supp. at 1111, 1113.  In reaching this conclusion, the

district court stated:

> This case presents an unusual exercise of this court's federal question
> jurisdiction, that of jurisdiction over cases involving federally-chartered stock
> corporations in which the United States is the majority shareholder. See 28 U.S.C.
> §§ 1331, 1349.
>
> The question whether the "arising under" clause of Article III conferred
> jurisdiction on the federal courts solely by virtue of a corporate plaintiff's federal
> charter was resolved by Chief Justice Marshall in favor of federal jurisdiction in
> Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738 . . . (1824).
> Subsequently, the Supreme Court held that ordinary tort actions against
> federally-chartered railroads were automatically actions "arising under" the laws of
> the United States. The Pacific Railroad Removal Cases, 115 U.S. 1 . . . (1885). This
> holding is now generally thought to have been an excessively expansive reading of
> the congressional grant of "arising under" jurisdiction. See 13B Charles A. Wright,
> Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3562, at 23
> (2d ed. 1984).  Anticipating a flood of such federal incorporation suits, and
> perceiving a need to shield the federal courts from the burden of adjudicating such
> claims, Congress, in 1915, restricted jurisdiction over federally-chartered railroads,
> and, in 1925, enacted the predecessor of 28 U.S.C. § 1349.  See id. § 3571, at

177-78.

Section 1349 currently provides: "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half its capital stock."  Thus, Section 1349 has partially overruled <u>Osborn</u> and, particularly, <u>The Pacific Railroad Removal Cases</u>.

Congress incorporated the National Railroad Passenger Corporation ("Amtrak") in 1970.  Act of October 30, 1970, Pub.L. No. 91-518, 84 Stat. 1327 (codified as amended at 49 U.S.C. § 24101-24709).  Because a majority of the capital stock of Amtrak is owned by the United States, the federal courts have subject matter jurisdiction over any action involving Amtrak.  <u>See</u> <u>Jones v. National Railroad Passenger Corp.</u>, No. 94-2332, 1994 WL 608597 *2 (D. Kan. 1994); <u>Estate of Wright v. Illinois Central R. Co.</u>, 831 F.Supp. 574 (D. Miss. 1993).  <u>Cf.</u> <u>Hicks v. Amtrak Corp.</u>, CIV.A. No. 89-2429, 1989 WL 71274 (E.D. Pa. 1989) (Federal courts have jurisdiction over cases involving Amtrak, assuming all procedural requirements of § 1441(a) have been followed.).

937 F. Supp. 1113-114 (footnotes omitted).

The Court has found relevant two cases in the United States District Court for the District of New Mexico, one in which the Court found that it had federal question jurisdiction over claims against Amtrak, and one in which the Court stated that it would not exercise jurisdiction over a case that included claims against Amtrak.  In <u>Chiwewe v. Burlington Northern and Santa Fe Railway Co.</u>, No. 02-0397 JP/LFG-ACE, 2002 WL 31924776 (D.N.M. Aug. 21, 2002), the Honorable James A. Parker, Chief United States District Judge, denied the plaintiffs' motion to remand, finding that he had federal-question jurisdiction over the plaintiffs' claims against Amtrak and that it would retain supplemental jurisdiction over the claims against Amtrak employees, BNSF, and the John Does.  <u>See</u> 2002 WL 31924776, at *1-3.  In that case, the plaintiffs were relatives of a minor child who witnessed an Amtrak train hit and kill the minor child.  <u>See</u> <u>id.</u> at *1.  The plaintiffs sued Amtrak, Amtrak employees, BNSF, and John Does in state court, alleging wrongful death, negligent infliction of emotional distress, and loss of consortium of a child.  <u>See</u> <u>id.</u> at *1.  The defendants

removed the case, arguing that the federal court had federal-question jurisdiction over the claims against Amtrak and supplemental jurisdiction over the claims against the other defendants. See 2002 WL 31924776, at *1.   The plaintiffs moved for the district court to remand the case, asserting that there was no federal-question jurisdiction over the claims against Amtrak.   See 2002 WL 31924776, at *1.  Chief Judge Parker cited 28 U.S.C. § 1349 and stated that, because the United States owns a majority of the capital stock of Amtrak, "federal courts have subject matter jurisdiction over any action involving Amtrak."  2002 WL 31924776, at *2.

In Stark-Romero v. The National Railroad Passenger Co. (Amtrak), No. CIV 09-0295 MV/RLP, however, Chief Judge Vázquez stated that she was not required to exercise jurisdiction over the removed case, because, even if she accepted 28 U.S.C. § 1349 as a basis for federal subject-matter jurisdiction over Stark-Romero's claims against Amtrak, most of Stark-Romero's claims were based on common law issues, and the court could have, but was not required to, exercise jurisdiction over all the claims.  See Mar. 31, 2010 MOO at 12-14.  Chief Judge Vázquez stated:

> Defendants Amtrak and BNSF also argue that this Court has subject matter jurisdiction under 28 U.S.C. § 1349 because Defendant Amtrak was created by an act of Congress and because it is currently more than 50% owned by the United States.  Notice at ¶ 5.  This is a misreading of § 1349, which serves to limit and explain jurisdiction under § 1331.  28 U.S.C. § 1349 reads: "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the grounds that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock."  28 U.S.C. § 1349 (emphasis added).  In keeping with the plain language of this statute, federal courts have interpreted this provision as a limitation on jurisdiction rather than grant of jurisdiction.  See Central Nat'l Bank v. Reconstruction Finance Corp., 134 F. Supp. 873, 875 (D. Ill. 1955); citing Fields v. Community Federal Savings & Loan Asso., 37 F. Supp. 367 (D. Mo. 1941).

> Defendants Amtrak and BNSF have stated that they meet this threshold test, since more than 50% of their stock is owned by the U.S. Government.  However, meeting the threshold test does not necessarily mean that this Court should or must exercise subject matter jurisdiction.  As discussed below, even if we accept this as a basis for federal subject matter jurisdiction, most of the claims in Plaintiff's

complaint are based on common law issues; under 28 U.S.C. § 1441(c), where at least some of the claims presented fall under § 1331 or § 1332 and are substantial in nature, a federal court <u>may</u> (but is not required to) exercise jurisdiction over all claims.  As stated in <u>Grable[& Sons Metal Products, Inc. v. Darue Engineering & Mfg.</u>, 545 U.S. 308 (2005)], the raising of a 'federal issue' is not "a password opening federal courts to any state action embracing a point of federal law.  Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. 308, *313 . . . (2005).  It is only required that a federal court retain jurisdiction over both state and federal claims in a case where an area of federal law <u>completely preempts</u> state law. See discussion, below.

Further, courts in this district have previously ruled against Amtrak on this very issue.  In <u>Salem v. National R. Passenger Corp.</u>, [No. 88-1963-C, 1989 WL 18807 (D. Kan. Feb. 13, 1989)] the court found that Amtrak had not established that federal jurisdiction was proper over both defendants, even though it might have been exercised over the claim against Amtrak had it been presented individually.

Mar. 31, 2010 MOO at 13-14 (citations omitted).[5]

---

[5] In <u>Salem v. National Railroad Passenger Corp.</u>, the Honorable Sam A. Crow, United States District Judge remanded the case before him.  1989 WL 18807, at *3.  The district court stated:

Once a motion to remand is timely filed, the burden of persuasion rests with the removing party to show the cause was properly removed.  <u>Gorman v. Abbott Laboratories</u>, 629 F.Supp. 1196, 1203 (D.R.I.1986); <u>see</u> <u>Alfalfa Cubes, Inc. v. Dutton</u>, 618 F.Supp. 1425, 1427 (D.Kan.1985).  Contending the action was duly removed under 28 U.S.C. § 1441(a) and (b), defendants believe this court has original jurisdiction of this action pursuant to 28 U.S.C. § 1331, as it arises under the laws of the United States.  Federal jurisdiction exists in an action by or against a federally chartered corporation, like defendant Amtrak, in which more than half of its capital stock is owned by the United States.  <u>In re Rail Coll. Near Chase, Md. on Jan. 4, 1987</u>, 680 F.Supp. 728, 730 (D.Md.1987); 13B C. Wright, A. Miller & E. Cooper, <u>Federal Practice and Procedures</u>, § 3571 (1984).

As used in § 1441, "original jurisdiction" refers to the different jurisdictional bases-diversity of citizenship between the parties, 28 U.S.C. § 1331; a claim arising under federal law, 28 U.S.C. § 1331; or other explicit grant of jurisdiction.  <u>Powers v. So. Cent. Un Food & Comm. Workers Unions</u>, 719 F.2d 760, 763 (5th Cir. 1983).  In a multiple-defendant case, the petition for removal must show that each defendant has joined the petition and is eligible for removal.  <u>Grzetich v. VLI Corp.</u>, 670 F.Supp. 793, 794 (N.D. Ill. 1987); <u>see</u> <u>P.P. Farmers' Elevator Co. v. Farmers Elevator Mutual Insurance Co.</u>, 395 F.2d 546, 547-48 (7th Cir. 1968); <u>Aguiar v. Evans</u>, 607

## LAW REGARDING SUPPLEMENTAL JURISDICTION

Section 1367 of Title 28 of the United States Code states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

18 U.S.C. § 1367(a). A district court may decline to exercise supplemental jurisdiction over a claim that forms part of the same case or controversy if: (i) the claim raises a novel or complex issue of state law; (ii) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (iii) the district court has dismissed all claims over which it has original jurisdiction; or (iv) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. See 18 U.S.C. § 1367(c). A claim is part of the same case or controversy if it derives from a common nucleus of operative fact, such that the plaintiff would normally be expected to try the claims in one proceeding. See United Mine Workers of Am. v. Gibbs, 383 U.S.

---

F.Supp. 1418, 1420 (D. Va. 1985).

More a matter of semantics instead of legal substance, defendants argue the plaintiff's petition only states a "single claim based on a single wrong asserted by the plaintiff against both defendants, a claim which arises under the laws of the United States." (Dk. # 19 at p. 3). Defendants do not rely on § 1441(c) insisting the plaintiff's petition is removable under § 1441(a) and (b). The court has trouble understanding this position, when plaintiff clearly states negligence claims against two separate and distinct corporate defendants for their individual acts of negligence. No legal or factual basis exists for treating the two defendant corporations as one and the same legal entity. Defendants have not offered any authority either for interpreting plaintiff's complaint as alleging a single claim or for viewing a state law claim against a corporation which is not federally chartered as also invoking federal jurisdiction.

1998 WL 18807, at *1-2.

715, 725-26 (1966); Price v. Wolford, 608 F.3d 698, 702-03 (10th Cir. 2010)(citation omitted).

## ANALYSIS

The Court will remand Stark-Romero's claims, because it finds that the Second Notice of Removal removed Stark-Romero's claims in addition to the Esquibels' claims, and because the Court is foreclosed from reconsidering a prior remand determination.  The Court finds that the Esquibels' case is subject to independent removal as a separate civil action, because the Esquibels' claims involve issues that are separate and distinct from Stark-Romero's claims.  Because the Court has found that the Esquibels' claims are a separate civil action from Stark-Romero's claims, and because the Court has remanded Stark-Romero's claims, the Court finds that there is no sound reason to reassign this matter to Judge Vázquez and will not do so.  The Court will not remand the Esquibels' claims, because the Second Notice of Removal does not contain procedural deficiencies, and because it has federal-question jurisdiction over the Esquibels' claims against Amtrak, and supplemental jurisdiction over the Esquibels' claims against BNSF, the County of San Miguel, the City of Las Vegas, and the NMDOT.

## I.      THE COURT WILL REMAND STARK-ROMERO'S CLAIMS TO STATE COURT.

At the hearing, the Defendants stated that they did not intend to remove Stark-Romero's claims to federal court, and that, if Stark-Romero's claims are indeed in federal court, the Court should either remand her claims or enter an order stating her claims are not in federal court.  See Tr. at 30:12-16 (DeBrine); id. at 57:23-58:13 (Walz), id. at 58:15-16 (Ortiz), id. at 59:3-5 (Court, Waters).  To determine whether the Defendants removed Stark-Romero's claims, the Court must consider the language in the Second Notice of Removal.  The Second Notice of Removal gave "notice of the removal . . . of the above-captioned action, formerly pending in the District Court for the Fourth Judicial District, County of Santa Fe, State of New Mexico as No. D-412-CV-2009-70."

Second Notice of Removal at 1.  Because the captioned action in the Second Notice of Removal is Stark-Romero's action, with the Esquibels listed as Plaintiff-Intervenors, the Court believes that the Second Notice of Removal removed Stark-Romero's claims in addition to the Esquibels' claims. Chief Judge Vázquez previously remanded Stark-Romero's claims to state court.  The Court is "foreclosed from reconsidering its remand determination."  Chaara v. Intel Corp., 2006 WL 4060670, at *6.  See Schoen v. Presbyterian Health Plan, Inc., 2009 WL 2450227, at *2 (concluding "that, under § 1447(d), [the Court] does not have authority to reconsider its decision to remand for lack of subject-matter jurisdiction, and that jurisdiction over the appeal lies in state court").  Because the Court cannot reconsider Chief Judge Vázquez' remand order, the Court will remand Stark-Romero's claims.

## II.    THE ESQUIBELS' CLAIMS ARE SUBJECT TO INDEPENDENT REMOVAL AS A SEPARATE CIVIL ACTION.

The Plaintiffs assert that the Defendants have removed the same case a second time. See Motion to Remand at 2.  The Plaintiffs contend that "a second removal based on the same ground as the first . . . does not reinvest the court with jurisdiction," and that the second removal is no more than an attempt to have the Court reconsider the prior remand order, which it cannot do. Motion to Remand at 8-9.

The Defendants argue that their removal of the Esquibels' case was proper.  See Response at 8.  The Defendants contend that the Esquibels' Complaint-in-Intervention is the sole basis for removal and is independently subject to removal, because the Esquibels' claims are entirely separate and independent from Stark-Romero's claims.  See Response at 11.  The Defendants contend that the Esquibels' Complaint-in-Intervention is a separate civil action, because it is brought by different plaintiffs involving a different accident, and because the Esquibels' claims involve different facts

-40-

and circumstances, and therefore distinct issues of liability and defenses. See Response at 11.

In their Reply, the Plaintiffs argue that the Esquibels' claims are not independently subject to removal. See Plaintiffs' Reply to Motion to Remand and Memorandum in Support Thereof at 8, filed October 13, 2010 (Doc. 33)("Reply"). They assert that the cases on which the Defendants rely are distinguishable. See Reply at 8. The Plaintiffs also contend that, to keep the Esquibels' claims in federal court, the Court would have to decide the state-court judge was wrong in allowing intervention, which would be contrary to the Rooker-Feldman[6] doctrine, which precludes federal district courts from exercising appellate jurisdiction over "matters that state courts decide." Reply at 2.

The Court has previously recognized that it is "foreclosed from reconsidering its remand determination." Chaara v. Intel Corp., 2006 WL 4060670, at *5-6 (recognizing that the Tenth Circuit has not yet "ruled on whether 28 U.S.C. § 1447 forecloses a district court's reconsideration of its own remand order," but that "other courts have ruled that it does"). The Defendants contend, however, that the Court is not reconsidering the prior order remanding Stark-Romero's claims, because the Defendants removed only the Esquibels' action, which they assert is a separate civil action under 28 U.S.C. § 1441(a). Section 1441 of Title 28 of the United States Code states: "[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C.

---

[6] The Rooker-Feldman doctrine derives from two Supreme Court cases, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The Tenth Circuit has recognized that the "Rooker-Feldman doctrine prohibits federal suits that amount to appeals of state-court judgments." Bolden v. City of Topeka, Kan., 441 F.3d 1129, 1139, 1142-43 (10th Cir. 2006)(citations omitted).

§ 1441(a).

The Tenth Circuit appears to have broadly defined the term "civil action."  Although not all courts recognize that proceedings for garnishment are removable civil actions, see Overman v. Overman, 412 F. Supp. at 412 (finding that a garnishment proceeding should not be treated as an independent action for purposes of 28 U.S.C. § 1441; instead, it is "an ancillary proceeding because it must be based upon a valid, unsatisfied judgment and execution"), the Tenth Circuit does.  In London & Lancashire Indemnity Co. of America v. Courtney, the defendant filed a petition for removal of a garnishment proceeding, and the United States District Court denied the motion to remand.  See 106 F.2d at 279.  The district court later entered an order dismissing the action without prejudice.  See 106 F.2d at 279.  The Tenth Circuit remanded the case to the lower court, instructing the lower court to modify the order dismissing the action, and in its opinion, addressed whether the removal was proper.  See 106 F.2d at 283-85.  The Tenth Circuit stated:

> It has been held that where party is called by process of garnishment in attachment proceedings he is not entitled to remove the case.  The reason therefor is that it not only becomes a part of the original proceeding, but that, in case of a judgment against the garnishee, it might be for a sum greater than the claim established against the principal debtor, and in such case the application of the fund would devolve upon the court where the judgment was rendered to make proper distribution of the surplus.  In such case the proper parties would not be before the federal court in case of removal by the garnishee.  This objection has no application here, as the proceeding for execution against the garnishee arises only after return of nulla bona on the execution against the defendant, and no matter what amount the garnishee might owe the defendant no more than would be sufficient to satisfy the execution, reflecting the prior adjudicated amount of the judgment, could be awarded against him.
>
> With diversity of citizenship and other jurisdictional facts existing, the right of the defendant to remove such suits into the federal court exists.
>
> . . . .
>
> In Lackawanna Coal & Iron Co. v. Bates, [56 F. 737, 740 (C.C.W.D. Mo. 1893)], it is further said:

"The defendant's controversy with the plaintiff is wholly separable from the issues involved in the judgment against the corporation. The only question he litigates here is his liability as a stockholder. The motion takes and occupies the character of a petition.  The defendant is brought into court on process.  There is a plaintiff and a defendant, and the object of the proceeding is to have the court adjudge whether or not the defendant's property shall be rendered liable to plaintiff in the sum of $26,250 or less.  On this issue he is entitled to a trial in due form of law, with the right of appeal or writ of error.  The defendant corporation is not a party to this proceeding, and is not before the court.  If such a case does not present all the elements of a 'suit,' within the meaning of the judiciary acts of congress, it does seem to me that Chief Justice Marshall was in error when he said, in <u>Weston v. Charleston, 2 Pet. (449), 464 (7 L.Ed. 481)</u>:

'The term ('suit') is certainly a very comprehensive one, and is understood to apply to any proceeding in a court of justice on which an individual pursues that remedy which the law affords.  The modes of proceeding may be various, but if a right is litigated in a court of justice the proceeding on which the decision of the court is sought is a suit.' '

See, also, <u>Kansas City & T.R. Co. v. Interstate Lumber Co. (C.C.), 37 F. 3</u> [(C.C.W.D. Mo. 1888)].

In the instant case the defendant garnishee's controversy with the plaintiff, Lucile A. Courtney, is wholly separable from the issues involved on which the judgment against R. G. Courtney in favor of Lucile A. Courtney is founded.  The only question to be litigated in the civil action wherein the garnishee, London & Lancashire Indemnity Company of America, is defendant and Lucile A. Courtney, plaintiff, is as to whether said garnishee was indebted to said defendant, R. G. Courtney.

106 F.2d at 283-84 (internal citations omitted).

In <u>Adriaenssens v. Allstate Ins. Co.</u>, a father and daughter each instituted a personal injury action in state court against the defendant.  <u>See</u> 258 F.2d at 889.  Judgments for the plaintiff was entered in each case.  <u>See</u> 258 F.2d at 889.  Approximately five years later, the father and daughter instituted actions in state court against Allstate Insurance Company to recover "upon a policy of

liability insurance issued to [the defendant]." 258 F.2d at 889. The actions were removed to the

Northern District of Oklahoma upon diversity grounds. See id. at 889. In each case, judgment was

entered denying recovery on the policy, and each plaintiff appealed the case. See 258 F.2d at 889.

The cases were submitted to the Tenth Circuit on a "single record." 258 F.2d at 889. The plaintiffs

challenged the jurisdiction of the district court to "entertain the actions on removal." Id. at 889. The

Tenth Circuit found the court had jurisdiction over the actions, stating:

> Treating the actions as being merely supplemental proceedings in the nature of
> garnishment for the collection of the judgments  rendered in the state court, it is
> argued that they were not subject to removal.  A like contention was advanced in
> London & Lancashire Indemnity Co. of America, v. Courtney, 10 Cir., 106 F.2d 277.
> There the holder of an unpaid judgment rendered in a state court in Oklahoma caused
> to be issued and served a writ of garnishment against a foreign corporation for the
> purpose of subjecting to the payment of the judgment the obligation of the garnishee
> under its policy of indemnity protection.  The garnishee caused the proceeding to be
> removed upon the ground of diversity of citizenship with the requisite amount in
> controversy.  The removability of the proceeding was challenged by motion to
> remand.  It was held in terms too clear for misunderstanding that the proceeding was
> in effect an original and independent action; and that diversity of citizenship with the
> requisite sum in controversy being present, the proceeding was removable.  In like
> manner, these actions were original and independent actions between the holders of
> the judgments and the insurer.  The issue between the parties was whether the insurer
> was liable under its policy issued to one who made a false representation of a
> material nature in order to obtain the coverage.  And, being original and independent
> actions of that kind with diversity of citizenship and the requisite sum in controversy,
> they were open to removal.  London & Lancashire Indemnity Co. of America v.
> Courtney, supra.

258 F.2d at 889-90.

The courts that have held that garnishment proceedings are removable have done so because

the proceedings presented issues that were separate or distinct from the issues in the prior action in

state court.  See Adriaenssens v. Allstate Ins. Co., 258 F.2d at 890 ("And, being original and

independent actions of that kind with diversity of citizenship and the requisite sum in controversy,

they were open to removal."); Connecticut Bank of Commerce v. Republic of Congo, 440 F. Supp.

2d at 351 (concluding that a garnishment action was a separate and independent civil action, because Delaware courts had explained that a garnishment proceeding is a separate process and because the facts in the case presented "several issues for resolution that are distinct from the original state action").  Several courts have analogized to cases that discuss whether garnishment proceedings are separate civil actions to determine whether petitions-in-intervention or bad faith claims are removable separate civil actions.  In Davenport v. Hamilton, Brown, & Babst, LLC, the Middle District of Louisiana denied the plaintiffs-in-intervention's motion to remand.  See 624 F. Supp. 2d at 543.  The plaintiffs had filed a state-court class action, and the state court approved a class action settlement.  See 624 F. Supp. 2d at 543.  The state court issued a judgment, which included an award of attorneys' fees to class counsel to be paid by the defendant.  See 624 F. Supp. 2d at 543. "Because the attorneys could not agree on the distribution of the attorneys' fees," the plaintiffs-in-intervention filed a petition of intervention in the state court class action, naming a law firm and two of its attorneys as defendants, and seeking an allocation by the state court of the attorneys' fees awarded in the judgment.  See 624 F. Supp. 2d at 543-44.  The defendants removed the case, and the plaintiffs-in-intervention filed a motion to remand, arguing that their petition of intervention was not a new suit.  See 624 F. Supp. 2d at 544.

> Applying the reasoning from Johnson[v. Great American Ins. Co., 213 F. Supp. 2d 657 (S.D. Miss. 2001)] to this case, the Petition for Intervention filed in the state court is comparable to a garnishment action for the purposes of removal.  The lesson taught by Johnson is that the court should evaluate both the separate character of the sought-to-be-removed "civil action," as well as the other side of the coin-its connection to the overall litigation.
>
> The dispute to be resolved by the Petition of Intervention is the division of the attorneys' fees among the attorneys making a claim to them.  The state court judgment has already fixed the total amount of attorneys' fees.  The Petition of Intervention does not seek to increase or reduce the amount of attorneys' fees awarded in the judgment.  This dispute is separate and distinct from the issues in the underlying litigation; the outcome of it will not change the plaintiffs' recovery or the

defendant's liability.

. . . .

It is true that neither the plaintiffs-in-intervention nor the defendants-in-intervention are similarly situated to either the typical judgment creditor or judgment debtor, inasmuch as their respective shares of the attorneys' fees have not yet been determined by a court judgment. But this difference is outweighed by the separate and distinct character of the claims asserted in the Petition of Intervention. Had the plaintiffs-in-intervention filed a new declaratory judgment action against the defendants-in-intervention to obtain a division of attorneys' fees, it appears that it would have been removable under § 1441(a). Defendants-in-intervention took this very action by filing a complaint, CV 07-928, in this court based on diversity jurisdiction. Their complaint seeks a declaratory judgment to resolve the same dispute that is the subject of the removed Petition of Intervention. That the plaintiffs-in-intervention chose to file in the underlying litigation, albeit improperly in the form of an intervention, what in substance is a declaratory judgment action between non-parties does not change the essential character of their pleading. In these circumstances, the Petition of Intervention is a new and separate civil action, and therefore the one-year time limit for filing a notice of removal under § 1446(b) does not bar the removal.

624 F. Supp. 2d at 546 (footnotes omitted). In Nungesser v. Bryant, the District Court for the

District of Kansas addressed whether a defendant's bad faith claim against his liability insurer was

part of the same civil action as the plaintiff's tort action against the defendant. See 2007 WL

4374022, at * 5. The district court analogized to cases that discussed whether garnishment

proceedings were distinct civil actions, stating:

Although the instant case stands on a different procedural footing than the above garnishment actions, the principles expressed in those cases and the Kansas Supreme Court's ruling requiring dismissal of Bryant's third-party petition lead this court to a similar conclusion-namely, that Bryant's claim against EMCASCO must be considered a distinct "civil action" for purposes of § 1441(a) and (b). The court recognizes that Bryant's bad faith claim is asserted by way of a third-party petition filed in the underlying tort action, rather than by way of a garnishment proceeding by Nungesser. And most federal courts have determined that third party defendants do not have the right to remove a case under § 1441. See Elkhart Co-Op Equity Exchange v. Day, 716 F.Supp. 1384 (1989); Right of Third Party Defendant to Removal of Action from State to Federal Court under 28 U.S.C. § 1441, 8 A.L.R. Fed. 708 (1971). But in determining whether removal jurisdiction is proper, this court is not bound by the labels attached by state practice. Congress intended the

-46-

removal statute to be uniform in its nationwide application, and the removal statute thus sets its own criteria, irrespective of local practice, for determining what suits may be removed.  See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941). At the same time, this does not mean the State's practice and procedure is irrelevant. The state court's characterization of the action is a factor this court can consider in determining whether a civil action is separate for purposes of removal.  See Scanlin v. Utica First Ins. Co., 426 F.Supp.2d 243, 248 (M.D. Pa. 2006).

The court is not persuaded that the distinction between the instant case and the garnishment actions . . . is material insofar as removal is concerned.  The Kansas Supreme Court in Nungesser[v. Bryant, 153 P.3d 1277 (Kan. 2007),] made clear that when the tort action against Bryant was filed, Bryant had no bad faith claim and could not implead or assert a third-party complaint against EMCASCO.  It said Bryant could not sue EMCASCO on such claims "until the tort claim against him . . . has been reduced to judgment."  Nungesser, 283 Kan. at 558. See also id. at 560 (stating the issue is whether it was "permissible for Bryant's third-party suit against EMCASCO to proceed before the underlying tort action brought by Nungesser had concluded").  The Supreme Court found it was error to allow the insurer to be brought into the same proceeding.  Under these unique circumstances, the state Supreme Court has already determined that Bryant's bad faith claim could not be joined as a third-party complaint in the same action with Nungesser's tort claim.  Whatever case label one may attach to the current post-judgment petition, one thing is clear: the Supreme Court required the bad faith claim to be brought as a separate action.  It declared the joinder of the claims improper and effectively severed the bad faith claim from the tort action.  Under these circumstances, the court concludes EMCASCO has met its burden of showing there is no possibility that Bryant could establish a cause of action against it in the tort action.  Under the "egregious joinder" or "fraudulent misjoinder" doctrine, then, this court will disregard Bryant's purported joinder of the claims, and will treat the bad faith claim as a separate civil action.  See Central of Georgia Ry. Co. v. Riegel Textile Corp., 426 F.2d 935, 938 (5th Cir. 1970)(indemnity claim that was severed from main action "treat[ed] the case as two lawsuits" and was properly removed; federal court should recognize that a party in this position "is as much a 'defendant' as if an original action had been brought against him.").  Cf. Federal Ins. Co. v. Tyco Int'l. Ltd., 422 F. Supp. 2d 357, 378-88 (S.D.N.Y. 2006) (finding no fraudulent misjoinder where the state court had "explicitly invit[ed] the impleader of" the third-party defendant).

Just as in a garnishment situation, the bad faith claim did not exist until liability in the tort action had been reduced to final judgment.  And just as in a garnishment situation, Bryant's bad faith cause of action is "a suit involving a new party and litigating the existence of a new liability."  Bridges[for Bridges v. Bentley by Bentley], 716 F. Supp. [1389,] 1392 [(D. Kan. 1989)].  The entry of judgment on Nungesser's claims shows the tort action was in fact concluded, and that the subsequently filed bad faith claim against EMCASCO was a separate civil action,

notwithstanding the state district court's allowance of the third-party petition under the same case number.   In either event -- whether such a claim is asserted by garnishment or by a post-judgment third-party complaint -- it is separate from the tort action concerning the injuries suffered by the plaintiff.   Moreover, the fact that the instant claim was asserted by Bryant, the defendant in the tort action, rather by the judgment creditor Nungesser, does not materially distinguish this case from the garnishment cases.   Insofar as the claim of bad faith is concerned, the interests of Nungesser and Bryant are aligned, and the distinction between a claim by Bryant or, alternatively, by Nungesser via garnishment, is one of form but not substance insofar as removal is concerned.   The election of one or both of these parties to assert a bad faith claim does not alter the conclusion that the federal law considers the claim to be a separate civil action for purposes of § 1441(a) and (b).

2007 WL 4374022, at *6-7 (footnote omitted).[7]

---

[7] As the District Court for the District of Kansas recognized in <u>Nungesser v. Bryant</u>, "most federal courts have determined that third party defendants do not have the right to remove a case under § 1441."  2007 WL 4374022, at *6 (citations omitted).  As the Court has previously stated:

> With respect to third-party defendants, courts take various views on whether they may remove cases. <u>See</u> <u>NCO Fin. Sys., Inc. v. Yari</u>, 422 F. Supp. 2d 1237, 1239 (D. Col. 2006)(citing <u>Monmouth-Ocean Collection Serv., Inc. v. Klor</u>, 46 F. Supp. 2d 385 (D.N.J. 1999)). 28 U.S.C. § 1441(a) permits the removal of a civil action of which the district courts of the United States have original jurisdiction "by the defendant or the defendants."  The majority view is that third-party defendants are not "defendants" within the meaning of § 1441(a).  <u>See</u> <u>First Nat. Bank of Pulaski v. Curry</u>, 301 F.3d 456, 461-62 (6th Cir. 2002); J. Moore, <u>supra</u>, § 107.11[1][b][iv], at 107-34-35 ("[T]hird-party defendants are not defendants within the meaning of the removal statute.")(emphasis in original).   Other justifications for opposing third-party defendant removal are that it would force a plaintiff to litigate in a federal court that he did not choose and to which his adversary originally could not have removed, and that allowing removal would expand jurisdiction of federal courts in contravention of the strictly construed statutory limits on the right to removal.  <u>See</u> <u>NCO Fin. Sys., Inc. v. Yari</u>, 422 F. Supp. 2d at 1239.  Proponents of third-party removal, however, assert that the term "defendant" under § 1441(a) does not necessarily exclude third-party defendants, who, like other defendants, have been brought into court involuntarily and may have an interest in having a federal forum. <u>See</u> <u>id.</u>

> Removal by third-party defendants is often attempted under 28 U.S.C. § 1441(c). <u>See, e.g.</u>, <u>NCO Fin. Sys., Inc. v. Yari</u>, 422 F. Supp. 2d at 1239-40; <u>Radio Shack Franchise Dep't v. Williams</u>, 804 F.Supp. 151, 152-53 (D. Kan. 1992). 28 U.S.C. § 1441(c) currently provides:

—————————————

> Whenever a separate and independent claim or cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates.

28 U.S.C. § 1441(c).  In 1990, Congress amended this statute to substitute the phrase "within the jurisdiction conferred by section 1331 of this title" for "which would be removable if sued upon alone." 28 U.S.C. § 1441, 1990 Amendments. 28 U.S.C. § 1331 provides federal question jurisdiction.  Section 1441(c) in its current form, therefore, applies only to situations in which a federal law claim is joined to one or more non-removable claims; it does not apply to cases in which removal is based solely on diversity jurisdiction.  See First Nat. Bank of Pulaski v. Curry, 301 F.3d at 467.

Sister districts within the United States Court of Appeals for the Tenth Circuit have routinely held that third-party defendants that a defendant/third-party plaintiff impleads may not remove cases.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1239-40; Menninger Clinic Inc. v. Schilly, No. 92-4104, 1992 WL 373927, at *1-2 (D. Kan. November 23, 1992); Radio Shack Franchise Dep't v. Williams, 804 F. Supp. at 152-53; Elkhart Co-op Equity Exch. v. Day, 716 F. Supp. 1384, 1385, 1387 (D. Kan. 1989)(cross-claim).  These cases, however, involved the application of 28 U.S.C. § 1441(c) and not a plaintiff/counter-defendant impleading the third-party defendant under Rule 14(b).  Arguably, some of the rationales for opposing third-party defendant removal may not apply where the plaintiff impleads a third-party defendant, because the plaintiff is the party permissively joining the third-party defendant, and in this scenario, the third-party defendant is more like a traditional defendant-a party antagonistic to the plaintiff.  See J. Moore, supra, § 107.11 [1][b][iv], at 107-34-35 ("The better view . . . is that third-party claims are not removable, because only a party defending against claims asserted by a plaintiff ought to be able to remove.").  At least one court, however, has held that a third-party defendant a plaintiff/counter-defendant impleads cannot remove, because the third-party defendant is not a defendant within the meaning of § 1441.  See Garnas v. American Farm Equip. Co., 502 F. Supp. 349, 351 n.7 (D.N.D. 1980)(based on pre-1990 amendment to section 1441(c)).

The Tenth Circuit has not spoken definitively on the propriety of third-party removal.  See NCO Fin. Sys., Inc. v. Yari, 422 F. Supp. 2d at 1240.  It is therefore an open question in this circuit whether a third-party defendant, who the plaintiff impleaded, may remove a case.

Wiatt v. State Farm Ins. Companies, 560 F. Supp. 2d 1068, 1076-77 (D.N.M. 2007)(Browning, J.).

After careful consideration of the analysis set forth in cases addressing whether garnishment proceedings, petitions-in-intervention, and bad faith claims are removable civil actions, the Court believes that the Esquibels' Complaint-in-Intervention is a separate civil action. The Esquibels' Complaint-in-Intervention is based on a different accident than the accident at issue in Stark-Romero's complaint.  The two accidents occurred on different days, at different times of the day, and involved trains traveling at different speeds and operated by different crews.  Compare Complaint-in-Intervention ¶¶ 8-21, at 5-6 (alleging that the accident occurred on January 15, 2009 at approximately 3:51 p.m.), with Stark-Romero's Complaint for Wrongful Death and Negligence, filed March 26, 2009 (Doc. 1-1)(alleging that the accident occurred September 11, 2008, at approximately 1:00 p.m.).  The train at issue in the Esquibels' claims was traveling in a different direction from the train at issue in Stark-Romero's claims.  See Response at 11. Furthermore, the facts relating to M. Esquibel and Fred Stark, who was driving the vehicle involved in the accident at issues in Stark-Romero's claims, are different.  The facts involving the two drivers present

---

In Wiatt v. State Farm Ins. Companies, the Court did not resolve the issue whether a third-party defendant that the plaintiff/counter-defendant impleads may remove an action, "because assuming, without deciding that a third-party defendant impleaded under rule 14(b) may attempt removal, [the third-party defendant] has not met the burden to establish the Court's diversity jurisdiction over the claims against it."  560 F. Supp. 2d at 1078.  In Nungesser v. Bryant, the District Court for the District of Kansas did not decide whether a third-party defendant has the right to remove a case; instead, the district court found that the bad-faith claim was a separate civil action, because the Supreme Court of Kansas had required the defendant to bring the bad-faith claim as a separate action and had severed the bad-faith claim from the tort action, and because "the bad faith claim did not exist until liability in the tort action had been reduced to final judgment," making "a suit involving a new party and litigating the existence of new liability."  2007 WL 4374022, at *7.  The district court thus found that, regardless whether the claim was asserted as a post-judgment third-party complaint, it was separate from the tort action concerning the plaintiff's injuries.  See 2007 WL 4374022, at *7.  The Court therefore believes that the district court's holding in Nungesser v. Bryant did not rest on an interpretation of whether a third-party defendant may remove an action, and the Court need not opine on that issue at this time.

-50-

separate issues of fact and defenses.  Stark's Office of the Medical Investigator ("OMI") report reveals that the driver had a blood alcohol content of .138 gm/100ml, which is almost twice the legal limit.  See Response at 11.  M. Esquibels' OMI report reveals the presence of both alcohol and marijuana.  See Response at 11.  Issues regarding comparative negligence will therefore be different in the two matters.  Furthermore, while Stark-Romero's Complaint alleges that timely notice was provided to the governmental defendants under the New Mexico Tort Claims Act, NMSA 1978, §§ 41-4-1 to 41-4-30 ("NMTCA"), the Esquibels' Complaint-in-Intervention fails to allege compliance with the NMTCA.  The Court believes that, because the Esquibels' claims rely upon facts that are distinct from the facts upon which Stark-Romero's claims are based, the issues presented in the Esquibels' claims are distinct from the issues presented in Stark-Romero's claims.  See Adriaenssens v. Allstate Ins. Co., 258 F.2d at 890 ("And, being original and independent actions of that kind with diversity of citizenship and the requisite sum in controversy, they were open to removal."); Connecticut Bank of Commerce v. Dem. Rep. Congo, 440 F. Supp. 2d 346, 351 (D. Del. 2006)(concluding that a garnishment action was a separate and independent civil action, because Delaware courts had explained that a garnishment proceeding is a separate process and because the facts in the case presented "several issues for resolution that are distinct from the original state action").  Moreover, it is unlikely that determinations on the Esquibels' claims will affect determinations in Stark-Romero's case -- for example, a ruling on M. Esquibels' comparative negligence will not affect Stark-Romero's claims, because the cases involve different accidents and circumstances surrounding the accidents.  See Davenport v. Hamilton, Brown, & Babst, LLC, 624 F. Supp. 2d at 526 ("This dispute is separate and distinct from the issues in the underlying litigation; the outcome of it will not change the plaintiffs' recovery or the defendant's liability.").  Furthermore, the Court believes that Judge Aragon's Order reflects its finding that the issues presented in the

Esquibels' claims are distinct from those presented in Stark-Romero's claims.  Judge Aragon allowed the Esquibels to intervene, but limited the intervention to "purposes of discovery only," stating that the Esquibels' claims "shall not be consolidated for trial" with Stark-Romero's claims. Order on Motion to Intervene at 1-2.  She also required service by the Esquibels on the Defendants, even though they sued the same Defendants that Stark-Romero sued.[8]  The Court believes that this Order recognizes that the cases should not be tried together, because of the differences in the claims and defenses in each case.

The Plaintiffs argue that the cases upon which the Defendants rely are distinguishable and inapplicable in this matter, because "[t]he present case is not one in which the underlying action has been fully litigated to a judgment and a separate independent action, i.e. for garnishment or bad faith, has been filed afterwards."  Reply at 8, 10.  The Court believes that the cases which address whether garnishment proceedings, petitions-in-intervention, or bad faith claims are removable civil actions reflect the principle which Professors Wright and Miller that ancillary proceedings cannot be removed separately from the main proceeding.  Wright and Miller noted that there are limitations on what can be considered a civil action:

> There is, however, a sensible judge-made limitation -- stemming from the civil action requirement -- that proceedings that are ancillary to an action pending in state court cannot be removed separately from the main claim.  This restriction, which has been applied in numerous cases for over a century, is premised on the wastefulness of having a satellite element of a case pending in federal court when the principal claims are being litigated in state court.  A modern example is Ohio v. Doe, in which the Sixth Circuit vacated the judgment and remanded to state court, holding that a proceeding to enforce a subpoena against a public defender, ordering her testimony, was not a removable civil action under 28 U.S.C.A. § 1442 where the proceeding was ancillary to a state court contempt proceeding arising out of a

---

[8] The Esquibels and Stark-Romero sued the same Defendants: Amtrak, BNSF, City of Las Vegas, San Miguel County, NMDOT, and Ride to Pride at the Barn, LLC.  The state court dismissed Ride to Pride at the Barn, LLC from the case in September 2010.

> previously issued subpoena for the same testimony, and the contemnor was barred by res judicata from raising federal defenses that she could have raised to the prior subpoenas, so that nothing remained but for the state court to enforce the subpoena.
>
> A few cases have drawn a distinction between supplemental proceedings that are a mere mode of execution or relief, inseparably connected with an original judgment or decree in a state court proceeding and therefore not removable, and supplemental proceedings that involve an independent controversy with a new and different party.  The latter are removable.

C. Wright & A. Miller, supra § 3721, 34-36 (footnotes omitted).

The cases that have determined whether garnishment proceedings, petitions-in-intervention, and bad faith claims are removable civil actions have, in effect, reflected these principles by analyzing whether the proceeding is connected with the original judgment or case, or whether the proceeding involves an independent controversy, with distinct and separate issues.  The Court therefore believes that the reasoning in the cases is analogous and informative in this matter, although none of the cases address precisely the same issues that this matter raises.  See Davenport v. Hamilton, Brown, & Babst, LLC, 624 F. Supp. 2d at 546 ("Applying the reasoning from Johnson[v. Great American Ins. Co., 213 F. Supp. 2d 657 (S.D. Miss. 2001),] to this case, the Petition for Intervention filed in the state court is comparable to a garnishment action for the purposes of removal.").

The Court is not bound by New Mexico law in determining whether removal jurisdiction is proper, but it will consider New Mexico law in determining whether the Esquibels' case is a separate civil action.

> Although earlier cases held that state law determined whether a proceeding was ancillary for removal purposes, more recent decisions show a distinct trend toward regarding this question as governed by federal law, with the state characterization regarded as weighty but not conclusive.  This utilization of federal standards informed by state law was first clearly applied by the Eighth Circuit in Stoll v. Hawkeye Casualty Company of Des Moines, Iowa, a 1950 [sic] decision.

C. Wright & A. Miller, supra § 3721, at 36-37 (footnotes omitted).  In Stoll v. Hawkeye Casualty Co. of Des Moines, Iowa, the Eighth Circuit stated that "[t]he question whether a civil action is removable and has been properly removed in one for the consideration of the federal court and is not controlled by State law."  185 F.2d at 99 (citations omitted).  Four years later, the Supreme Court stated that a state statute's "procedural provisions cannot control the privilege or removal granted by the federal statute."  Chicago, R.I. & P.R. Co. v. Stude, 346 U.S. at 580 (citation omitted).  More recently, the District Court for the District of Kansas stated:

> But in determining whether removal jurisdiction is proper, this court is not bound by the labels attached by state practice. Congress intended the removal statute to be uniform in its nationwide application, and the removal statute thus sets its own criteria, irrespective of local practice, for determining what suits may be removed. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100 (1941).  At the same time, this does not mean the State's practice and procedure is irrelevant.  The state court's characterization of the action is a factor this court can consider in determining whether a civil action is separate for purposes of removal.  See Scanlin v. Utica First Ins. Co., 426 F. Supp. 2d 243, 248 (M.D. Pa. 2006).

Nungesser v. Bryant, 2007 WL 4374022, at *6.

Under New Mexico law, "intervention . . . is an act or proceeding whereby a person is permitted to become a party in an action between other persons, after which the litigation proceeds with the original and intervening parties."  State ex rel. Attorney Gen. v. Reese, 78 N.M. 241, 242, 430 P.2d 399, 400 (1967).  The Plaintiffs argue that, because Judge Aragon ordered intervention pursuant to rule 1-024 NMRA, the Esquibels' action and Stark-Romero's action became one case. See Reply at 2-3.  The Court will consider the state court's characterization of the action as a factor in determining whether the Esquibels' action is a separate civil action.  Judge Aragon permitted the Esquibels to intervene in Stark-Romero's action pursuant to rule 1-024B NMRA, but only for purposes of discovery, and explicitly stated that the Esquibels' claims were not consolidated for trial with Stark-Romero's claims.  Judge Aragon did not merge the cases, but allowed intervention for

a limited purpose.  Judge Aragon could have required the Esquibels to file a separate lawsuit, and then consolidated the two separate cases for limited purposes; the limited intervention appears to function similarly, especially given that she required separate personal service and separate trials. See Aragon v. Kasulka, 68 N.M. 310, 312, 361 P.2d 719, 720 (1961)("In the trial of consolidated cases, absent error in the pleading, proof, or submission of the action, 'each case retains its distinctive characteristics and remains separate in respect of . . . verdicts, findings, judgments, and all other matters except the one of joint trial.'"  (citations omitted)). See also Chaara v. Intel Corp., 410 F. Supp. 2d 1080 (D.N.M. 2005)(Browning, J.)(recognizing that federal courts have stated that "[c]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties or make those who are parties in one suit parties in another" (quoting Stacey v. Charles J. Rogers, Inc., 756 F.2d 440, 442 (6th Cir. 1985)).  The Court finds that this characterization, allowing intervention solely for purposes of discovery, shows that, although the two claims might be similar, they involve separate and distinct issues of fact, such that a consolidated trial would not prove wise.  Although New Mexico law indicates that the Esquibels became a party in Stark-Romero's actions, Judge Aragon's order does not appear to create only one case, because she limited the Esquibels' intervention to discovery only.  The Court is not bound by New Mexico law, but the Court believes that Judge Aragon's interpretation of New Mexico law regarding intervention supports the Court's finding that the Esquibels' claims involve separate and distinct issues from Stark-Romero's claims.

The Plaintiffs contend that, "[f]or the Court to even consider keeping the Esquibels' claims in federal court, it must by necessity make a ruling that the state judge erred in allowing intervention. . . .  The Rooker-Feldman doctrine precludes federal district courts from exercising appellate jurisdiction over matters that state courts decide."  Reply at 2.  The Tenth Circuit has

recognized that the

> Rooker-Feldman doctrine prohibits federal suits that amount to appeals of state-court judgments. . . . [T]he . . . doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  [Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).]  Appellate review -- the type of judicial action barred by Rooker-Feldman -- consists of a review of the proceedings already conducted by the "lower" tribunal to determine whether it reached its result in accordance with law. When, in contrast, the second court tries a matter anew and reaches a conclusion contrary to a judgment by the first court, without concerning itself with the bona fides of the prior judgment (which may or may not have been a lawful judgment under the evidence and argument presented to the first court), it is not conducting appellate review, regardless of whether compliance with the second judgment would make it impossible to comply with the first judgment.  In this latter situation the conflict between the two judgments is to be resolved under preclusion doctrine, not Rooker-Feldman.

Bolden v. City of Topeka, Kan., 441 F.3d at 1139, 1142-43.  The Court is not exercising appellate jurisdiction over Judge Aragon's decision.  The Defendants are not inviting the Court to review and reject Judge Aragon's decision allowing the Esquibels to intervene for purposes of discovery in Stark-Romero's case.  Instead, the Court is analyzing federal law to determine whether, under 28 U.S.C. § 1441, the Esquibels' complaint in intervention is a separate action that is removable.  The Court considered New Mexico law regarding intervention, and Judge Aragon's characterization of the matter, but its determination that the Esquibels' claims are a separate civil action is based upon federal law.  The Court does not reject or disagree with Judge Aragon's order; instead, the Court believes that its opinion is consistent with Judge Aragon's order.  The Court therefore finds that the Rooker-Feldman doctrine does not prevent it from finding that the Esquibels' claims are a separate civil action.

Although the Court has found a case from the Western District of Louisiana that construed the term "civil action" as comprising the entirety of a case, the Court does not find the analysis in

that case persuasive.  In <u>Levert-St. John, Inc. v. Hartford Steam Boiler Inspection & Insurance Co.</u>, the District of Louisiana stated that it understood the term "civil action" to refer to "the entirety of a litigation, in which any number of different claims may be asserted by the various parties thereto." 2006 WL 1875494, at * 1 (citing <u>Black's Law Dictionary</u> 31 (8th ed. 2004)(defining "action" as "a civil or criminal judicial proceeding").  The Court believes that the Tenth Circuit's construction, and other federal courts' construction, of the term "civil action" in the context of removed actions is more applicable and persuasive than <u>Black's Law Dictionary</u>'s general definition of the term.  The Western District of Louisiana also cited Wright and Miller's declaration that  ancillary proceedings cannot be removed separately from the main claim.  <u>See</u>  2006 WL 1875494, at *1-2.  As the Court has noted, it believes that the cases that have found that garnishment proceedings, petitions-in-intervention, and bad faith claims are removable civil actions reflect the principle Wright and Miller set forth, because these cases consider whether the proceedings are an independent controversies or proceedings that are an integrated part of the main action.  The Western District of Louisiana also stated:

> The partial-removal concept is in substantial conflict with many time-honored and well-settled judicial tenets of removal; it could not possibly be given effect without fleshing out those conflicts and reconciling them.  For instance, the defendant has not explained why it believes the term "civil action," as used in the removal statute, has the same meaning as does the term "claim," (so as to permit the removal of a third party claim, without the rest of the action), nor why Congress used the former term if it intended the latter.  Additionally, the concept of partial removal would permit pick-and-choose removal of only certain parties' claims and, therefore, would have the effect of eliminating the longstanding statutory and jurisprudential requirement that diversity jurisdiction be premised upon complete diversity among the parties; the abrogation of this requirement certainly would have to be addressed directly.  As a third example, the removing party's theory of removal could not possibly be accepted without an explanation as to the source of, and justification for, the removal process granting to a defendant the authority to rearrange litigation to reflect its preferences by carving it up into howsoever many separate cases it prefers to have proceeding in different courts simultaneously.  This list of conflicts is not intended to be exhaustive, but merely illustrative of the monumental incompatibility

between the partial-removal concept and the well-settled, longstanding judicial theory of removal.

. . . .

In light of the use of the term "civil action" in the removal statute, and of this Court's understanding of the term "action" as comprising the entirety of a case, and of the longstanding prohibition against removing only handpicked claims from state court to federal, and as the removing defendant has made no attempt to reconcile its theory of partial removal with the well-settled judicial tenets with which it is in conflict, this Court finds that the defendant's attempt at a partial removal is contrary to both the law and the theory of removal.

2006 WL 1875494, at *2.

If Congress wanted to require that the entire case be removed, Congress could have used the word "case." Congress used the word "case" elsewhere. See, e.g., 28 U.S.C. § 1447 ("In any case removed from a State court, the district court may issue all necessary orders and process to bring before it all proper parties whether served by process issued by the State court or otherwise."); 28 U.S.C. § 1448 ("In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process . . . such process or service may be completed . . . ."). While the Court does not believe that the term "civil action" as used in the removal statute has the same meaning as does the term "claim" so as to permit the removal of a single claim without the rest of the action, the Court also does not believe that the term "civil action" should necessarily be equated with the word "case."

The Court also believes that the removal process does not grant to a defendant the authority to rearrange litigation to reflect its preferences by carving the litigation up into howsoever many separate cases it prefers to have proceeding in different courts simultaneously. The term action comprises the entirety of an action, but not necessarily the entirety of the case. The defendant cannot handpick claims from state court to federal. The defendant cannot carve out of the state court

litigation a claim which fits the definition of diversity found in the jurisdictional statutes and remove only that claim, because the term civil action will not permit removal of a single claim without the rest of the action.  For these reasons, the Court is not persuaded by the concerns that swayed the district court's analysis in Levert-St. John, Inc. v. Hartford Steam Boiler Inspection & Insurance Co., especially given the Tenth Circuit's apparently broad construction of the term "civil action."  A more nuance analysis and definition of the term "civil action" is preferable.  Because the Tenth Circuit has apparently broadly defined the term "civil action," and because the Court finds that the Esquibels' claims involve issues that are separate and distinct from Stark-Romero's claims, the Court finds that the Esquibels' claims are a separate civil action.

## III.   THE COURT WILL NOT TRANSFER THIS MATTER TO JUDGE VÁZQUEZ, BECAUSE IT FINDS THAT THE DEFENDANTS REMOVED A SEPARATE CIVIL ACTION.

The Plaintiffs assert that the Defendants removed a case that was previously removed to the Court as CV No. 09-295 WV/RLP.  See Motion to Return at 1.  The Plaintiffs contend that, because the Defendants removed the same case, and because Judge Vázquez has retained jurisdiction over the matter, the Court should transfer the case to Judge Vázquez.  See Motion to Remand at 2; Motion to Return at 1-2.  The Plaintiffs contend that returning the matter to Judge Vázquez would "be the most efficient use of scarce judicial resources, would discourage judge shopping, avoid re-litigation of issues previously decided and would be most consistent with stated principles of judicial deference."  Id. at 2.

The Defendants argue that reassignment of this matter would be improper, because "the only case removed is the separate and distinct civil action brought by [the Esquibels'] and there is no basis for seeking reassignment of cases among the various judges in the District."  Response to Motion to Return at 1-2.  The Defendants also contend that "[t]here is no basis for assigning the

Esquibels' case on the basis of a particular judge's familiarity with some of the issues raised by the Motion to Remand."  Response to Motion to Return at 6.

In the District of New Mexico, a judge will, at times, transfer a case to another judge if the other judge has conducted a large amount of work on the case or on a related case.  Judges are careful, however, to ensure that they do not transfer cases that the other judge has not spent a large amount of time reviewing, out of concerns about increasing another judge's workload.  Judge Vázquez has graciously stated she does not have any problem taking this case, and while the Court is generally receptive to ideas how to reduce its considerable case load, the Court must be vigilant to carry its load and to not unnecessarily pass on cases to its colleagues for which there is not a compelling reason to do so.  The Court finds no compelling reason here, particularly when some of the parties vigorously oppose transfer and transfer could decide the issue of removal.  The Court finds that the Defendants removed the Esquibels' claims as a separate civil action.  Judge Vázquez has not addressed the Esquibels' action, and the Court therefore will not transfer this case to Judge Vázquez, which would result in an increase in her workload.  The Court recognizes that Judge Vázquez spent a good deal of time on her remand opinion.  Familiarity with legal issues, however, is not a basis upon which the Court will transfer a case.  Each judge in the district handles removal motions, and even when similar, the judges do not transfer such cases to other judges.  At the hearing, Mr. Gaddy conceded that, if the Esquibels had filed a separate complaint, and the Defendants removed the separate case, he would not seek reassignment on the basis that Chief Judge Vázquez had previously decided the Motion to Remand in the <u>Stark-Romero</u> case.  <u>See</u> Tr. at 11:6-19 (Court, Gaddy).  The Court therefore denies the Plaintiffs' request that it reassign the Esquibels' claims to Judge Vázquez, because the Esquibels' claims are a separate civil action, and because Judge Vázquez' familiarity with the issues raised in Stark-Romero's Motion to Remand does not

dictate that it transfer a separate civil action to her.

## IV.    THE COURT FINDS THAT THE SECOND NOTICE OF REMOVAL IS NOT PROCEDURALLY DEFECTIVE.

The Plaintiffs argue that the Second Notice of Removal is procedurally defective. See Motion to Remand at 11.  The Plaintiffs contend that the Second Notice of Removal was untimely filed, because the Defendants did not remove the proceeding until more than thirty days after the Plaintiffs filed and served their motion to intervene and proposed Complaint-in-Intervention.  See Motion to Remand at 12.  The Plaintiffs contend that the Esquibels' motion to intervene informed the Defendants of the alleged basis for federal subject-matter jurisdiction.  See Motion to Remand at 16.  The Plaintiffs also assert that the Second Notice of Removal is procedurally deficient, because the "Defendants improperly removed the entire case, including impermissible re-removal of the Stark claims, wrongly seeking a different outcome."  Motion to Remand at 17.  The Plaintiffs expounded on this asserted second procedural defect at the hearing, contending that the Defendants had notice that Stark-Romero's claims were brought back to federal court as a result of their Second Notice of Removal, and they did not attempt to correct it.  See Tr. at 57:10-22 (Touchet).

The Defendants contend that the Esquibels' Complaint-in-Intervention, "filed after the Order [allowing intervention] was entered, constituted the initial pleading giving rise to federal jurisdiction on the basis of [the] Esquibels' claims against Amtrak."  Response at 15.  The Defendants assert that, because the filing of the Complaint-in-Intervention constituted the "initiation of the Esquibels' action against [the] Defendants, [the] Defendants' time to remove was triggered by simultaneous service of the summons and the complaint."  Response at 15 (internal quotation marks and citation omitted).  The Defendants contend that they timely filed the Second Notice of Removal within thirty

days of the date of service of the complaint and summons.  See Response at 15.

Section 1446 of Title 28 of the United States Code governs the procedure for removal. See

28 U.S.C. § 1446(b). It states:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

In Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., the Supreme Court held that "a named

defendant's time to remove is triggered by simultaneous service of the summons and complaint, or

receipt of the complaint, 'through service or otherwise,' after and apart from service of the

summons, but not mere receipt of the complaint unattended by any formal service."  526 U.S. at

347-48.  In Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., the plaintiff filed a complaint on

January 26, 1996, in state court, but did not serve the defendant at that time.  See 526 U.S. at 348.

Three days later, the plaintiff sent by facsimile transmission a courtesy copy of the file stamped

complaint to one of the defendant's vice presidents.  See 526 U.S. at 348.  "The parties then engaged

in settlement discussions until February 12, 1996, when [the plaintiff] officially served [the

defendant] under local law by certified mail."  526 U.S. at 348.  "On March 13, 1996 (30 days after

service but 44 days after receiving the faxed copy of the complaint), Murphy removed the case

under 28 U.S.C. § 1441 to the United States District Court for the Northern District of Alabama."

526 U.S. at 348.  The Supreme Court recognized that service of process is "fundamental to any

procedural imposition on a named defendant."  526 U.S. at 350.  Absent service of process, a court

"ordinarily may not exercise power over a party the complaint names as defendant." 526 U.S. at 350

(citations omitted).  The Supreme Court found that, when Congress enacted 28 U.S.C. § 1446(b),

it did not "endeavor to break away from the traditional understanding." 526 U.S. at 352.

> Prior to 1948, a defendant could remove a case any time before the expiration of her time to respond to the complaint under state law. See, e.g., 28 U.S.C. § 72 (1940 ed.). Because the time limits for responding to the complaint varied from State to State, however, the period for removal correspondingly varied. To reduce the disparity, Congress in 1948 enacted the original version of § 1446(b), which provided that "[t]he petition for removal of a civil action or proceeding may be filed within twenty days after commencement of the action or service of process, whichever is later." Act of June 25, 1948, 62 Stat. 939, as amended, 28 U.S.C. § 1446(b). According to the relevant House Report, this provision was intended to "give adequate time and operate uniformly throughout the Federal jurisdiction." H.R.Rep. No. 308, 80th Cong., 1st Sess., A135 (1947).

> Congress soon recognized, however, that § 1446(b), as first framed, did not "give adequate time and operate uniformly" in all States. In States such as New York, most notably, service of the summons commenced the action, and such service could precede the filing of the complaint. Under § 1446(b) as originally enacted, the period for removal in such a State could have expired before the defendant obtained access to the complaint.

> To ensure that the defendant would have access to the complaint before commencement of the removal period, Congress in 1949 enacted the current version of § 1446(b): "The petition for removal of a civil action or proceeding shall be filed within twenty days [now thirty days] after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." Act of May 24, 1949, § 83(a), 63 Stat. 101. The accompanying Senate Report explained:

>> "In some States suits are begun by the service of a summons or other process without the necessity of filing any pleading until later. As the section now stands, this places the defendant in the position of having to take steps to remove a suit to Federal court before he knows what the suit is about. As said section is herein proposed to be rewritten, a defendant is not required to file his petition for removal until 20

> days after he has received (or it has been made available to him) a copy of the initial pleading filed by the plaintiff setting forth the claim upon which the suit is based and the relief prayed for. It is believed that this will meet the varying conditions of practice in all the States." S.Rep. No. 303, 81st Cong., 1st Sess., 6 (1949).

> See also H.R.Rep. No. 352, 81st Cong., 1st Sess., 14 (1949) ("The first paragraph of the amendment to subsection (b) corrects [the New York problem] by providing that the petition for removal need not be filed until 20 days after the defendant has received a copy of the plaintiff's initial pleading."). Nothing in the legislative history of the amendment so much as hints that Congress, in making changes to accommodate atypical state commencement and complaint filing procedures, intended to dispense with the historic function of service of process as the official trigger for responsive action by an individual or entity named defendant.

526 U.S. at 352-53 (footnotes omitted).

The Court finds that the thirty-day period began to run on August 4, 2010, the date the Esquibels served the Defendants with a copy of their Complaint-in-Intervention and a summons. See Summons, filed September 27, 2010 (Doc. 23-4); Return of Service, filed September 27, 2010 (Doc. 23-4). The recent Supreme Court opinion in Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc. commands that the "simultaneous service of the summons and complaint," not the mere receipt of the Esquibels' motion and proposed complaint, triggered the Defendants' time to remove. 526 U.S. at 347-48. The Plaintiffs cite DeBry v. Transamerica Corp., 601 F.2d 480 (10th Cir. 1979), in which the Tenth Circuit stated:

> The plain purpose of the rule is, then, to permit the removal period to start only after the defendant is able to ascertain intelligently that the requisites of removability are present. Therefore, a voluntary motion on the part of the plaintiffs and the trial court's order granting the motion ought to be sufficient notice within the statute.

601 F.2d at 489 (citations omitted). This case does not go so far to say that a motion is sufficient notice, and the Court is not willing to reach that conclusion. Because the state court could have denied the Plaintiffs' motion to intervene, the Court does not believe the service of the motion started the removal period. Cf. Chavez v. Kincaid, 15 F. Supp. 2d at 1123 ("Notwithstanding the

-64-

broad meaning of the term 'other paper,' under the plain language of § 1446(b), pre-Complaint documents do not constitute 'other paper' because they were issued before the Complaint was filed." (citing 28 U.S.C. § 1446(b); Chapman v. Powermatic, Inc., 969 F.2d 160, 164 (5th Cir.1992)). Furthermore, when Judge Aragon granted the Esquibels' motion to intervene, she required them to serve a copy of the Complaint-in-Intervention on each of the Defendants as provided in rule 1-004 NMRA. See Order on Motion to Intervene at 2. Because the Supreme Court in Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., held that the time to remove is triggered by "simultaneous service of the summons and complaint," not by mere receipt of a courtesy copy of the complaint "unattended by any formal service," the Court finds that service of the motion to intervene and proposed Complaint-in-Intervention, which were unattended by formal service -- given that the state court had not yet granted the motion -- did not trigger the time to remove.  Instead, the Court holds that when the Esquibels' service of the summons and Complaint-in-Intervention on the Defendants triggered the time to remove.[9]  The Esquibels served all the Defendants with a summons and

_____

[9] As the Court has recently recognized, there is a split amongst courts whether this thirty-day removal window runs from the date the first defendant is served -- the "first-served" rule -- or the date the last-served defendant is served -- the "last-served" rule.

> Neither the Supreme Court nor the United States Court of Appeals for the Tenth Circuit . . . has spoken on whether, in a case of more than one defendant, the thirty-day clock for removal begins to run when the first defendant is served or when the last defendant is served. There appears . . . to be a split among the other federal courts on this issue . . . .

> A majority of judges in the District of New Mexico support the traditional view that the thirty-day removal period begins to run when service of process is accomplished on the first-served defendant. This rule is referred to as the "first-served rule." This Court, however, has concluded that the more modern, "last-served" rule is more in harmony with the language of the removal statute, and is a more fair and workable rule. Under that rule, the clock begins running on each defendant to either remove a case or join a removal petition when that defendant receives formal service of process.

Complaint-in-Intervention on August 4, 2010.  See Case Detail, <u>Victoria Stark-Romero v. National</u>

<u>Railroad Passenger, et. al.</u>, filed September 9, 2010 (Doc. 19-1).  Amtrak and BNSF filed the Second

Notice of Removal on August 19, 2010.  Amtrak and BNSF attached the written consent of the other

Defendants to the Second Notice of Removal.  Because the Defendants removed the case within

thirty days of the date they were served with summons and the Esquibels' Complaint-in-

Intervention, the Court therefore finds that the Second Notice of Removal was timely filed.

The Plaintiffs argue that the Second Notice of Removal is procedurally defective because

the Defendants had notice that Stark-Romero's claims were brought back to federal court as a result

of their Second Notice of Removal, and they did not attempt to correct it.  The Court has found that

the Defendants incorrectly removed Stark-Romero's claims, because of the broad language in the

Second Notice of Removal, which states that the Defendants "give notice of the removal . . . of the

above-captioned action, formerly pending in the District Court for the Fourth Judicial District,

County of Santa Fe, State of New Mexico as No. D-412-CV-2009-70."  Second Notice of Removal

at 1.  The Court has not found, however, any cases in which a court has remanded a case for

procedural deficiencies based on allegedly wrongful conduct in removing a case.  The Court

therefore declines to find that the Second Notice of Removal is procedurally defective based on the

Defendants' alleged wrongful conduct in removing Esquibels' claims.  Furthermore, the Defendants

dispute the Plaintiffs' allegations that they wrongfully removed Stark-Romero's claims, asserting

that they did not intend to remove Stark-Romero's claims.  See Response at 12.  The Defendants

contend that they did not and do not object to continued litigation of Stark-Romero's claims in state

<u>McEntire v. Kmart Corp.</u>, No. CIV 09-0567 JB/LAM, 2010 WL 553443, at *4 (D.N.M. Feb. 9, 2010) (Browning, J.)(internal citations and quotes omitted). The Court thus follows the last-served rule. In this case, however, all Defendants were served on the same day.

court.  Because the Court has not found law that would support remanding the matter for procedural deficiencies based on allegedly wrongful conduct in removing the case, and because the Defendants dispute that they intended to remove Stark-Romero's claims, the Court will not remand the Esquibels' claims on these grounds.

## V.    THE COURT FINDS THAT THE DEFENDANTS HAVE NOT WAIVED THEIR RIGHT TO REMOVE.

The Plaintiffs contend that the Defendants have waived their right to remove.  See Motion to Remand at 11.  They assert that the Defendants' actions in state court indicate their acceptance of the state court's jurisdiction.  See id.  The Plaintiffs assert that all the Defendants sought discretionary acts by Judge Aragon in the Fourth Judicial District, which manifested an intent to litigate on the merits in state court.  See id.

The Defendants contend that they did not manifest any intent to litigate the Esquibels' claims in state court, and thus have not waived their right to removal.  See Response at 15.  The Defendants allege that the only relevant actions for purposes of determining any purported waiver are their actions in relation to Esquibels' claims.  See Response at 15.  The Defendants assert that the only action they took in state court was to oppose the Esquibels' request for intervention.  See Response at 15.  They assert they did not "request any relief from the court, did not seek a determination on the merits, and otherwise simply attempted to maintain the status quo of the case."  Id.

The right to removal may be waived.  See Huffman v. Saul Holdings Ltd. P'ship, 194 F.3d at 1077 (noting that a defendant who does not act within the statutory removal deadlines waives its right to remove the action to federal court).  Cf. Akin v. Ashland Chem. Co., 156 F.3d at 1036 & n. 7 (ruling, in response to assertion made in motion to remand that one of the defendants had waived its right to removal by moving for summary judgment in state court, "that a defendant who

actively invokes the jurisdiction of the state court and interposes a defense in that forum is not barred from the right to removal in the absence of adequate notice of the right to remove," and applying the principle, after plaintiff amended her complaint in federal court, that "once [the] plaintiff decided to take advantage of his involuntary presence in federal court to add a federal claim to his complaint he was bound to remain there")(internal quotation marks omitted)).

Federal courts have held that, once a claim for enforcement of a federal right has been made in state tribunals, a defendant waives its right to remove by "demonstrating a 'clear and unequivocal' intent to remain in state court."  Grubb v. Donegal Mut. Ins. Co., 935 F.2d at 59 (citation omitted). See Aqualon v. Mac Equip., Inc., 149 F.3d at 264.  A clear intent to remain in state court may be shown by taking "substantial defensive action" before removal, Aqualon v. Mac Equip., Inc., 149 F.3d at 264; or by seeking a final determination on the merits of the case before removal, see Wolfe v. Wal-Mart Corp., 133 F. Supp. 2d at 893 (holding that filing a motion for summary judgment in state court constituted waiver). As the Western District of Virginia stated in Sayre Enter., Inc. v. Allstate Ins. Co.:

> If a defendant could remove a case to federal court after a final and unfavorable determination had been made on the merits of the case in state court, he would be able to litigate the same case twice. This situation is precisely what must be avoided in the interests of judicial economy, fairness, convenience, and comity.

448 F. Supp. 2d at 735.  See Haynes v. Gasoline Marketers, Inc., 184 F.R.D. at 416 (finding the defendant did not waive its right to remove, because filing an answer in state court was not a manifestation of clear and unequivocal intent to litigate on the merits in state court); Chavez v. Kincaid, 15 F. Supp. 2d at 1125 (finding waiver of right to remove when defendant served discovery requests, made a motion to dismiss, and scheduled a hearing on the motion after it should have ascertained its removal right but before it filed its notice of removal).  As to the timing of waiver,

a defendant can waive the right to remove only by litigating after the case actually becomes removable.  See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. at 347-48; 28 U.S.C. § 1446(b).

The Defendants could have waived their right to remove only by litigating after the Plaintiffs served upon them the Complaint-in-Intervention and summons, which is when the case became removable and the time for removal began to run.  See Schoen v. Presbyterian Health Plan, Inc., Nos. CIV 08-0687 JOB/WDS, 08-0970 JOB/WDS, 2009 WL 1299680 (D.N.M. Feb. 19, 2009)(citing Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. at 347-48).  Upon the Court's careful perusal of the Case Detail of Stark-Romero v. National Railroad Passenger, et. al., D-412-CV-200900070, the only entries in the case after August 4, 2010 -- the date that the Plaintiffs served BNSF, Amtrak, San Miguel County, City of Las Vegas and NMDOT with a copy of the Complaint-in-Intervention and summons -- are entries for an exhibit list and for notice of filing notice of removal to federal court.  It is not clear which party filed the exhibit list.  Even if one of the Defendants filed the exhibit list, however, neither the filing of an exhibit list nor the filing of a notice of removal is a "substantial defensive action," Aqualon v. Mac Equip., Inc., 149 F.3d at 264, such as filing a motion to dismiss or a motion for summary judgment, see Chavez v. Kincaid, 15 F. Supp. 2d at 1125; Wolfe v. Wal-Mart Corp., 133 F. Supp. 2d at 893, which would demonstrate "a clear and unequivocal intent to remain in state court,"  Grubb v. Donegal Mut. Ins. Co., 935 F.2d at 59.  The Court therefore finds that the Defendants have not waived their right to remove Esquibels' claims.

VI.    **THE COURT FINDS THAT IT HAS FEDERAL-QUESTION JURISDICTION OVER THE ESQUIBELS' CLAIMS AGAINST AMTRAK AND SUPPLEMENTAL JURISDICTION OVER THE ESQUIBELS' CLAIMS AGAINST THE OTHER DEFENDANTS**.

The Defendants assert that federal jurisdiction exists for the Esquibels' claims against the Defendants, because the Court has federal-question jurisdiction over any claims asserted against Amtrak and supplemental jurisdiction over the claims against the other Defendants, because the Esquibels' claims against all Defendants arise from the same accident, and therefore from a common nucleus of operative fact.  See Response at 5, 7.  In response, the Plaintiffs state only that they "hereby adopt the previously entered Order of Judge Vázquez and the law in support contained therein."  Reply at 11.  At the hearing, the Plaintiffs argued that there was no black-letter rule that if a plaintiff sues Amtrak, Amtrak can remove the plaintiff's claims to federal court.  See Tr. at 53:25-54:3 (Touchet).  The Plaintiffs argued that the Court must determine whether the claims implicate federal law to determine whether they should be in federal court.  See Tr. at 54:3-7 (Touchet).

Through several cases, the Supreme Court developed the principle that a lawsuit against a federally, chartered, federally owned corporation arises under federal law.  In Osborn v. Bank of the United States, the Supreme Court held that every case in which the Bank of the United States, which was created by an Act of Congress, is a party arises under the laws of the United States.  See 22 U.S. at 807.  The Supreme Court stated:

> Congress had constitutional authority to confer this jurisdiction on the Circuit Courts.  It was 'a case arising under the constitution and laws of the United States.'  Every case, in which the Bank of the United States is a party, is, in the strictest literal interpretation of the clause, a case arising under a law and the constitution of the United States.  But for the law, the case would never have existed.  But for the continued existence of the law, it could not continue to exist. . . . The establishment of a corporation is a legislative creation of a faculty, of a moral being, invisible and intangible, but with capacities, powers, and privileges, rights and duties. The rights

it may acquire, the wrongs it may suffer, the obligations it may incur, the injuries it may inflict, the acts it may do, its power to do, or to endure, are all derived from, and dependent upon, the charter. To the charter it owes its being, its continued existence, its qualities and properties. The charter defines its duties, and effords the only measure of its responsibilities. Every act it performs, derives its validity from the charter only; and whenever it deals with another, it deals under and according to the charter. In the same manner, whoever deals with it, deals under and according to the charter.  Its capacity to contract, and to sue and be sued, all are derived from that source. It cannot come into Court, without bringing the law in its hand. It is bound in every case to show, that it is acting within the limits of its corporate powers, as defined in that law. There can be no case, where the Bank is a party, in which questions may not arise under the laws of the United States. In every such case, it must appear, that it was duly created, continues to exist, has power to contract, and to bring the suit. All these are matters arising under the laws of the United States, and under no other. Suppose an officer created by act of Congress, could not Congress confer on him the privilege of suing and being sued, in his official capacity, in the Courts of the Union? Such an officer has two capacities, private and official, and may be subject to different jurisdictions, according as either is affected. But a corporation has but one capacity, and its faculties cannot be divided. Wherever an authority is given, all that is done by virtue of that authority, is done under it. Every thing done by the Bank, is done under the charter.

22 U.S. at 806-07.

In the Pacific Railroad Removal Cases, the Supreme Court expanded its holding in Osborn

v. Bank of the United States, finding that "corporations of the United States, created by and

organized under acts of congress, . . . are entitled . . . to remove . . . suits brought against them in

state courts . . . on the ground that the suits" arise under the laws of the United States.  115 U.S. at

11.  In reaching this conclusion, the Supreme Court stated:

We are of opinion that corporations of the United States, created by and organized under acts of congress, like the plaintiffs in error in these cases, are entitled as such to remove into the circuit courts of the United States suits brought against them in the state courts, under and by virtue of the act of March 3, 1875, on the ground that such suits are suits 'arising under the laws of the United States.' We do not propose to go into a lengthy argument on the subject; we think that the question has been substantially decided long ago by this court. The exhaustive argument of Chief Justice MARSHALL in the case of Osborn v. Bank of U. S. 9 Wheat. 817-828, delivered more than 60 years ago, and always acquiesced in, renders any further discussion unnecessary to show that a suit by or against a corporation of the United States is a suit arising under the laws of the United States.

-71-

That argument was the basis of the decision on the jurisdictional question in that case. The precise question, it is true, was as to the power of congress to authorize the bank to sue and be sued in the United States courts. The words of its charter were that the bank should be made able and capable in law to 'sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all state courts having competent jurisdiction, and in any circuit court of the United States.' The power to create such a jurisdiction in the federal courts rested solely on the truth of the proposition that a suit by or against the bank would be a suit arising under the laws of the United States; for the constitution confined the judicial power of the United States to these four classes of cases, namely: <u>First</u>, to cases in law and equity, arising under the constitution, the laws of the United States, and treaties made under their authority; <u>secondly</u>, to cases affecting ambassadors, other public ministers, and consuls; <u>thirdly</u>, to cases of admiralty and maritime jurisdiction; <u>Fourthly</u>, to certain controversies depending on the character of the parties, such as controversies to which the United States are a party, those between two or more states, or a state and citizens of another state, or citizens of different states, or citizens of the same state claiming lands under grants of different states, or a state or its citizens and foreign states, citizens, or subjects. Now, suits by or against the United States Bank could not possibly, as such, belong to any of these classes except the first, namely, cases in law and equity arising under the constitution, laws, or treaties of the United States; and the supreme court, as well as the distinguished counsel who argued the <u>Osborn Case</u>, so understood it. Unless, therefore, a case in which the bank was a party was for that reason a case arising under the laws of the United States, congress would not have had the power to authorize it to sue and be sued in the circuit court of the United States. And to this question, to-wit, whether such a case was a suit arising under the laws of the United States, the court directed its principal attention. But as it was objected that several questions of generallaw [sic] might arise in a case, besides that which depended upon an act of congress, the court first disposed of that objection, holding that, as scarcely any case occurs every part of which depends on the constitution, laws, or treaties of the United States, it is sufficient for the purposes of federal jurisdiction if the case necessarily involves a question depending on such constitution, laws, or treaties. The chief justice then proceeds as follows:

> 'We think, then, that when a question to which the judicial power of the Union is extended by the constitution, forms an ingredient of the original cause, it is in the power of congress to give the circuit courts jurisdiction of that cause, although other questions of fact or law may be involved in it. The case of the bank is, we think, a very strong case of this discription [sic]. The charter of incorporation not only creates it, but gives it every faculty which it possesses. The power to acquire rights of any description, to transact business of any description, to make contracts of any description, to sue on those contracts, is given and measured by its charter, and that charter is a law of the United States. This being can acquire no right, make no contract, bring no suit, which is not authorized by a law of the United States. It is not

only itself the mere creature of a law, but all its actions and all its rights are dependent on the same law. Can a being thus constituted, have a case which does not arise literally as well as substantially under the law? Take the case of a contract, which is put as the strongest against the bank. When a bank sues, the first question which presents itself, and which lies at the foundation of the cause, is, has this legal entity a right to sue? Has it a right to come, not into this court particularly, but into any court? This depends upon a law of the United States. The next question is, has this being a right to make this particular contract? If this question be decided in the negative, the cause is determined against the plaintiff; and this question, too, depends entirely on a law of the United States. These are important questions, and they exist in every possible case. * * * The question forms an original ingredient in every cause. Whether it be in fact relied on or not in the defense, it is still a part of the cause, and may be relied upon. The right of the plaintiff to sue cannot depend on the defense which the defendant may choose to set up. His right to sue is anterior to that defense, and must depend on the state of things when the action was brought. The questions which the case involves, then, must determine its character, whether those questions be made in the cause or not.' Pages 823, 824.

'It is said that a clear distinction exists between the <u>party</u> and the <u>cause</u>; that the party may originate undr [sic] a law with which the cause has no connection; and that congress may, with the same propriety, give a naturalized citizen, who is the mere creature of a law, a right to sue in the courts of the United States, as give that right to the bank. *14 This distinction is not denied; and if the act of congress was a simple act of incorporation, and contained nothing more, it might be entitled to great consideration. But the act does not stop with incorporating the bank. It proceeds to bestow upon the being it has made all the faculties and capacities which that being possesses. Every act of the bank grows out of this law, and is tested by it. To use the language of the constitution, every act of the bank arises out of this law.' Page 827.

If the case of <u>Osborn v. Bank</u> is to be adhered to as a sound exposition of the constitution, there is no escape from the conclusion that these suits against the plaintiffs in error, considering the said plaintiffs as corporations created by and organized under the acts of congress referred to in the several petitions for removal in these cases, were and are suits arising under the laws of the United States. An examination of those acts of congress shows that the corporations now before us, not only derive their existence, but their powers, their functions, their duties, and a large portion of their resources, from those acts, and, by virtue thereof, sustain important relations to the government of the United States.

115 U.S. at 12-14.  After the Supreme Court decided <u>Pacific Railroad Removal Cases</u>, Congress enacted 28 U.S.C. § 1349, which limits federal courts' jurisdiction over corporations incorporated by an Act of Congress.  Section 1349 states: "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock." 28 U.S.C. § 1349.

In 49 U.S.C. §§ 24301 to 24316, Congress created Amtrak.  The Amtrak Board of Directors is composed of nine directors: (i) the Secretary of Transportation; (ii) the President of Amtrak; and (iii) seven "individuals appointed by the President of the United States, by and with the advice and consent of the Senate."  49 U.S.C. § 24302.  Federal courts have recognized that the United States holds more than half of Amtrak's capital stock.  <u>See Lebron v. Nat'l R.R. Passenger Corp.</u>, 513 U.S. at 385 ("Since the United States presently holds all of Amtrak's preferred stock, which it received (and still receives) in exchange for its subsidization of Amtrak's perennial losses, see § 544(c), . . . ."); <u>Adkins v. Illinois Cent. R.R. Co.</u>, 326 F.3d at 834 ("[Amtrak] is a federal entity in which the United States owns more than 50% of the outstanding stock."); <u>Alfaro v. Nat'l R.R. Passenger Corp.</u>, 2010 WL 4669192, at *1 ("Amtrak is federally chartered and the United States owns more than half of its capital stock.").

Numerous federal courts, including the Tenth Circuit, have stated that federal courts have federal-question jurisdiction over cases against Amtrak.  <u>See Henderson v. Nat'l R.R. Passenger Corp.</u>, 2011 WL 14458, at *1 (finding that "the district court had subject matter jurisdiction over Plaintiffs' claims against Amtrak under 28 U.S.C. § 1331 and 28 U.S.C. § 1349 because Congress created Amtrak and the United States owns over fifty percent of its stock," and stating that federal-question jurisdiction exists for "congressionally incorporated corporations under 28 U.S.C. § 1331"

-74-

and that "[t]he limitation to this basis of jurisdiction" -- 28 U.S.C. § 1349 -- does not apply to Amtrak); <u>Aliotta v. Nat'l R.R. Passenger Corp.</u>, 315 F.3d at 758 n.1 ("Through the interaction of these statutes and cases, federal courts have jurisdiction over all cases involving Amtrak, regardless of the cause of action." (citation omitted)); <u>Nat'l R.R. Passenger Corp. v. Rountree Transport and Rigging, Inc.</u>, 286 F.3d at 1259 n.25 ("It is true that, because Amtrak is a federally chartered corporation that meets the requirements of 28 U.S.C. § 1349, federal question jurisdiction is proper." (citations omitted)); <u>Marcus v. Ne. Commuter Servs. Corp.</u>, 1992 WL 129637, at *1 ("Because Amtrak is a federally-chartered corporation whose stock is wholly owned by the federal government, the present action falls within this court's federal question jurisdiction.")(citations omitted); <u>Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Utility Com'n</u>, 159 F. Supp. 2d at 33-34 ("Amtrak's status under 28 U.S.C. § 1349 provides an independent basis for federal question jurisdiction under 28 U.S.C. § 1331[;] [i]ndeed, based upon the legislative history of Amtrak's enabling legislation, 45 U.S.C. § 541, a suit against Amtrak is a federal question irrespective of the underlying cause of action" (quotations omitted)).

In <u>Jones v. National Railroad Passenger Corp.</u>, No. 94-2332-JWL, 1994 WL 608597 (D. Kan. Oct. 21, 1994), the District Court for the District of Kansas denied the plaintiff's motion to remand, finding that removal was permissible, because the lawsuit fell within its original subject-matter jurisdiction. <u>See</u> 1994 WL 608597, at *1-2. In explanation, the district court stated:

> Amtrak asserts that 28 U.S.C §§ 1331, 1349, and 1441 support removal. Plaintiff contends, however, that removal is improper because neither 28 U.S.C. § 1331 nor 28 U.S.C. § 1441 confers on this Court original jurisdiction over this action. Plaintiff further contends that 28 U.S.C. § 1349 does not provide an independent ground for removal in this case. The court finds that plaintiff's first contention is without merit and that plaintiff's second contention, although correct, does not supply a basis for remand.
>
> Under 28 U.S.C. § 1331, this Court has original, subject matter jurisdiction

over "all civil actions arising under the Constitution, laws, or treaties of the United States." Similarly, 28 U.S.C. § 1441(b), permits removal in "any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States . . . ." Thus, this Court's subject matter jurisdiction, and therefore the appropriateness of removal, depends on whether this action arises under the laws of the United States.

In <u>Osborn v. Bank of the United States</u>, 22 U.S. (9 Wheat.) 738 (1824), the Supreme Court held that because the Bank of the United States was created by Act of Congress, any suit to which the bank was a party arose under the laws of the United States. The Court extended Osborn in the <u>Pacific Railroad Removal Cases</u>, 115 U.S. 1 (1885), by holding that suits involving any federally chartered corporation arise under the laws of the United States. In response to this broad interpretation, Congress enacted the predecessor of 28 U.S.C. § 1349.

Section 1349 provides that "[t]he district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock." Section 1349 does not independently confer jurisdiction on the federal courts; the provision restricts jurisdiction that would otherwise exist under section 1331. <u>Estate of Wright v. Illinois Central R.R.</u>, 831 F.Supp. 574, 574 (S.D.Miss.1993); <u>In re Rail Collision Near Chase, Maryland</u>, 680 F.Supp. 728, 730 (D.Md.1987). Application of these principles indicates that Amtrak's removal of this action is appropriate.

Congress incorporated Amtrack [sic] in 45 U.S.C. § 501 et seq. As a federal chartered entity, any suit involving Amtrak arises under the laws of the United States. Therefore, unless section 1349 applies, section 1331 confers subject matter jurisdiction to the federal courts over this action. Amtrak avers, and plaintiff does not dispute, that the United States owns more than 50 percent of the capital stock of Amtrak. As a result section 1349 does not limit the jurisdiction of this Court over actions involving Amtrak. Accordingly, the court finds that this suit falls within this Court's original subject matter jurisdiction. Removal is therefore permissible.

1994 WL 608597, at *1-2.

In <u>Hollus v. Amtrak Northeast Corridor</u>, the District Court for the District of New Jersey found that it had subject matter jurisdiction over the "slip and fall" case against Amtrak, because it had federal-question jurisdiction.  <u>See</u> 937 F. Supp. at 1111, 1113.  In reaching this conclusion, the district court stated:

This case presents an unusual exercise of this court's federal question

jurisdiction, that of jurisdiction over cases involving federally-chartered stock corporations in which the United States is the majority shareholder. See 28 U.S.C. §§ 1331, 1349.

The question whether the "arising under" clause of Article III conferred jurisdiction on the federal courts solely by virtue of a corporate plaintiff's federal charter was resolved by Chief Justice Marshall in favor of federal jurisdiction in Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738 . . . (1824). Subsequently, the Supreme Court held that ordinary tort actions against federally-chartered railroads were automatically actions "arising under" the laws of the United States. The Pacific Railroad Removal Cases, 115 U.S. 1 . . . (1885). This holding is now generally thought to have been an excessively expansive reading of the congressional grant of "arising under" jurisdiction. See 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3562, at 23 (2d ed. 1984). Anticipating a flood of such federal incorporation suits, and perceiving a need to shield the federal courts from the burden of adjudicating such claims, Congress, in 1915, restricted jurisdiction over federally-chartered railroads, and, in 1925, enacted the predecessor of 28 U.S.C. § 1349. See id. § 3571, at 177-78.

Section 1349 currently provides: "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half its capital stock." Thus, Section 1349 has partially overruled Osborn and, particularly, The Pacific Railroad Removal Cases.

Congress incorporated the National Railroad Passenger Corporation ("Amtrak") in 1970. Act of October 30, 1970, Pub.L. No. 91-518, 84 Stat. 1327 (codified as amended at 49 U.S.C. § 24101-24709). Because a majority of the capital stock of Amtrak is owned by the United States, the federal courts have subject matter jurisdiction over any action involving Amtrak. See Jones v. National Railroad Passenger Corp., No. 94-2332, 1994 WL 608597 *2 (D.Kan.1994); Estate of Wright v. Illinois Central R. Co., 831 F.Supp. 574 (D.Miss.1993). Cf. Hicks v. Amtrak Corp., CIV.A. No. 89-2429, 1989 WL 71274 (E.D.Pa.1989) (Federal courts have jurisdiction over cases involving Amtrak, assuming all procedural requirements of § 1441(a) have been followed.).

937 F. Supp. 1113-114 (footnotes omitted).

The Court has found two cases in the District of New Mexico, one in which the Court found

that it had federal-question jurisdiction over claims against Amtrak, and one in which the Court

stated that it would not exercise jurisdiction over a case that included claims against Amtrak. In

Chiwewe v. Burlington Northern and Santa Fe Railway Co., Chief Judge Parker denied the

plaintiffs' motion to remand, finding that he had federal-question jurisdiction over the plaintiffs' claims against Amtrak and that it would retain supplemental jurisdiction over the claims against Amtrak employees, BNSF, and the John Does.  See 2002 WL 31924776, at *1-3.  In that case, the plaintiffs were relatives of a minor child who witnessed an Amtrak train hit and kill the minor child. See 2002 WL 31924776, at *1.  The plaintiffs sued Amtrak, Amtrak employees, BNSF, and John Does, in state court, alleging wrongful death, negligent infliction of emotional distress, and loss of consortium of a child.  See 2002 WL 31924776, at *1.  The defendants removed the case, arguing that the federal court had federal-question jurisdiction over the claims against Amtrak, and supplemental jurisdiction over the claims against the other defendants.  See 2002 WL 31924776, at *1.  The plaintiffs moved for the district court to remand the case, asserting that there was no federal-question jurisdiction over the claims against Amtrak.  See 2002 WL 31924776, at *1.  Chief Judge Parker cited 28 U.S.C. § 1349, and stated that, because the United States owns a majority of the capital stock of Amtrak, "federal courts have subject matter jurisdiction over any action involving Amtrak."  2002 WL 31924776, at *2.

In Stark-Romero v. The National Railroad Passenger Co. (Amtrak), however, Chief Judge Vázquez stated that she was not required to exercise jurisdiction over the removed case, because even if she accepted 28 U.S.C. § 1349 as a basis for federal subject-matter jurisdiction over the plaintiffs' claims against Amtrak, most of the plaintiff's claims were based on common-law issues, and the court could have, but was not required to, exercise jurisdiction over all the claims.  See Mar. 31, 2010 MOO at 12-14.  Chief Judge Vázquez stated:

> Defendants Amtrak and BNSF also argue that this Court has subject matter jurisdiction under 28 U.S.C. § 1349 because Defendant Amtrak was created by an act of Congress and because it is currently more than 50% owned by the United States.  Notice at ¶ 5.  This is a misreading of § 1349, which serves to limit and explain jurisdiction under § 1331.  28 U.S.C. § 1349 reads: "The district courts shall

not have jurisdiction of any civil action by or against any corporation upon the grounds that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half of its capital stock." 28 U.S.C. § 1349 (emphasis added). In keeping with the plain language of this statute, federal courts have interpreted this provision as a limitation on jurisdiction rather than grant of jurisdiction. See Central Nat'l Bank v. Reconstruction Finance Corp., 134 F. Supp. 873, 875 (D. Ill. 1955); citing Fields v. Community Federal Savings & Loan Asso., 37 F. Supp. 367 (D. Mo. 1941).

Defendants Amtrak and BNSF have stated that they meet this threshold test, since more than 50% of their stock is owned by the U.S. Government. However, meeting the threshold test does not necessarily mean that this Court should or must exercise subject matter jurisdiction. As discussed below, even if we accept this as a basis for federal subject matter jurisdiction, most of the claims in Plaintiff's complaint are based on common law issues; under 28 U.S.C. § 1441(c), where at least some of the claims presented fall under § 1331 or § 1332 and are substantial in nature, a federal court may (but is not required to) exercise jurisdiction over all claims. As stated in Grable[& Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308 (2005)], the raising of a 'federal issue' is not "a password opening federal courts to any state action embracing a point of federal law. Instead, the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." 545 U.S. 308, *313 . . . (2005). It is only required that a federal court retain jurisdiction over both state and federal claims in a case where an area of federal law completely preempts state law. See discussion, below.

Further, courts in this district have previously ruled against Amtrak on this very issue. In Salem v. National R. Passenger Corp., [No. 88-1963-C, 1989 WL 18807 (D. Kan. Feb. 13, 1989)] the court found that Amtrak had not established that federal jurisdiction was proper over both defendants, even though it might have been exercised over the claim against Amtrak had it been presented individually.

Mar. 31, 2010 MOO at 13-14 (citations omitted).[10]

_____

[10] In Salem v. National Railroad Passenger Corp., the Honorable Sam A. Crow, United States District Judge for the District of Kansas remanded the case before him. See 1989 WL 18807, at *3. Judge Crow stated:

Once a motion to remand is timely filed, the burden of persuasion rests with the removing party to show the cause was properly removed. Gorman v. Abbott Laboratories, 629 F.Supp. 1196, 1203 (D.R.I.1986); see Alfalfa Cubes, Inc. v. Dutton, 618 F.Supp. 1425, 1427 (D.Kan.1985). Contending the action was duly removed under 28 U.S.C. § 1441(a) and (b), defendants believe this court has

The Court respectfully disagrees with at least some of Chief Judge Vázquez' opinion.  Chief Judge Vázquez remanded Stark-Romero's claims based on procedural deficiencies in the First Notice of Removal; therefore, her analysis of the substantive issues is dicta.  The Court believes that some of Chief Judge Vázquez' analysis of the substantive issues, even though dicta, is incorrect. The Court therefore declines to follow some of Chief Judge Vázquez' analysis of the substantive

---

original jurisdiction of this action pursuant to 28 U.S.C. § 1331, as it arises under the laws of the United States.  Federal jurisdiction exists in an action by or against a federally chartered corporation, like defendant Amtrak, in which more than half of its capital stock is owned by the United States.  In re Rail Coll. Near Chase, Md. on Jan. 4, 1987, 680 F.Supp. 728, 730 (D.Md.1987); 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedures, § 3571 (1984).

As used in § 1441, "original jurisdiction" refers to the different jurisdictional bases-diversity of citizenship between the parties, 28 U.S.C. § 1331; a claim arising under federal law, 28 U.S.C. § 1331; or other explicit grant of jurisdiction.  Powers v. So. Cent. Un Food & Comm. Workers Unions, 719 F.2d 760, 763 (5th Cir. 1983). In a multiple-defendant case, the petition for removal must show that each defendant has joined the petition and is eligible for removal.  Grzetich v. VLI Corp., 670 F.Supp. 793, 794 (N.D. Ill. 1987); see P.P. Farmers' Elevator Co. v. Farmers Elevator Mutual Insurance Co., 395 F.2d 546, 547-48 (7th Cir. 1968); Aguiar v. Evans, 607 F.Supp. 1418, 1420 (D. Va. 1985).

More a matter of semantics instead of legal substance, defendants argue the plaintiff's petition only states a "single claim based on a single wrong asserted by the plaintiff against both defendants, a claim which arises under the laws of the United States."  (Dk. # 19 at p. 3).  Defendants do not rely on § 1441(c) insisting the plaintiff's petition is removable under § 1441(a) and (b).  The court has trouble understanding this position, when plaintiff clearly states negligence claims against two separate and distinct corporate defendants for their individual acts of negligence. No legal or factual basis exists for treating the two defendant corporations as one and the same legal entity.  Defendants have not offered any authority either for interpreting plaintiff's complaint as alleging a single claim or for viewing a state law claim against a corporation which is not federally chartered as also invoking federal jurisdiction.

1998 WL 18807, at *1-2.  The district court in Salem v. National Railroad Passenger Corp. found that it did not have original jurisdiction over negligence claims against a corporation that was not federally chartered and therefore remanded the plaintiff's claims.  As the Court will discuss, it does not believe it should exercise its discretion to remand the Esquibels' claim against Amtrak.

issues in her Mar. 31, 2010 MOO.

Chief Judge Vázquez expressed reluctance to find federal subject-matter jurisdiction, stating that 28 U.S.C. § 1349 is a limitation on jurisdiction rather than a grant of jurisdiction.  The Court agrees with the statement that 28 U.S.C. § 1349 is a limitation on jurisdiction rather than a grant of jurisdiction; however, the Court has jurisdiction under 28 U.S.C. § 1331, Osborn v. Bank of the United States, and the Pacific Railroad Removal Cases, and 28 U.S.C. § 1349 does not limit its jurisdiction, because the United States owns more than half of Amtrak's capital stock.  28 U.S.C. § 1331 states that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  In Osborn v. Bank of the United States and the Pacific Railroad Removal Cases, the Supreme Court held that suits involving federally chartered corporations arise under the laws of the United States.  Congress limited this broad statement of law in 28 U.S.C. § 1349. Section 1349 currently provides: "The district courts shall not have jurisdiction of any civil action by or against any corporation upon the ground that it was incorporated by or under an Act of Congress, unless the United States is the owner of more than one-half its capital stock."  Although 28 U.S.C. § 1349 limits federal courts' jurisdiction over corporations incorporated by or under an act of Congress, this statute does not deprive the Court of jurisdiction over the Esquibels' claims against Amtrak.  The Plaintiffs do not contest that the United States owns one-hundred percent of Amtrak's preferred capital stock, see Response at 5, and numerous federal cases have recognized that the United States owns more than half of Amtrak's capital stock, see Lebron v. Nat'l R.R. Passenger Corp., 513 U.S. at 385 ("Since the United States presently holds all of Amtrak's preferred stock, which it received (and still receives) in exchange for its subsidization of Amtrak's perennial losses, see § 544(c), . . . ."); Pa. Fed'n of Broth. of Maint. of Way Employees by Dodd v. Nat'l R.R. Passenger Corp, 989 F.2d 112,

113 n.2 (3d Cir. 1993)("AMTRAK was created by an Act of Congress, and the United States

government owns more than 50% of AMTRAK's capital stock.").  The Court therefore has federal-

question jurisdiction over the Esquibels' claim against Amtrak under 28 U.S.C. § 1331, Osborn v.

Bank of the United States, and the Pacific Railroad Removal Cases.

 The Court declines to follow Chief Judge Vázquez' analysis and the Plaintiffs' argument that

Chief Judge Vázquez should not have exercised jurisdiction over Stark-Romero's claims against

Amtrak.  In her Mar. 31 MOO, Judge Vázquez stated:

> Defendants Amtrak and BNSF have stated that they meet th[e] threshold test [set
> forth in 28 U.S.C. § 1349,] since more than 50% of their stock is owned by the U.S.
> Government.  However, meeting this threshold test does not necessarily mean that
> this Court should or must exercise subject matter jurisdiction. . . . [U]nder 28 U.S.C.
> § 1441(c), where at least some of the claims presented fall under § 1331 . . . and are
> substantial in nature, a federal court may (but is not required to) exercise jurisdiction
> over all claims.

Mar. 31, 2010 MOO at 13 (internal citations omitted).  While the Court agrees that a federal court

is not required to exercise jurisdiction over state-law claims for which it has no original jurisdiction,

it declines to follow Chief Judge Vázquez' analysis and the Plaintiffs' argument that the court

should not have exercised jurisdiction over Stark-Romero's claim against Amtrak, which fell within

the court's original jurisdiction under 28 U.S.C. § 1331, Osborn v. Bank of the United States, and

the Pacific Railroad Removal Cases.  As a general rule, federal courts have a "strict duty to exercise

the jurisdiction that is conferred upon them."  Quackenbush v. Allstate Ins. Co., 517 U.S. at 716

(citations omitted).  See Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817

(1976)(recognizing a "virtually unflagging obligation of the federal courts to exercise the

jurisdiction given them." (citations omitted)).  "The duty is not, however, absolute."  Quackenbush

v. Allstate Ins. Co., 517 U.S. at 716 (citation omitted).  Federal courts "may decline to exercise their

jurisdiction in otherwise exceptional circumstances, where denying a federal forum would clearly

serve an important countervailing interest, for example, where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." Quackenbush v. Allstate Ins. Co., 517 U.S. at 716 (internal quotation marks and citations omitted).

The Court recognizes that Congress may have changed federal district courts' ability to remand through the 1990 amendments to 28 U.S.C. § 1441(c). The Honorable Bruce Black, now Chief United States District Judge for the District of New Mexico, has recognized that, following the 1990 amendment to 28 U.S.C. § 1441(c), several district courts assumed that Congress intended to give the federal courts greater control over their dockets by expanding their authority to remand federal question claims when state law claims clearly predominate. See Lujan v. Earthgrains Baking Companies, Inc., 42 F. Supp. 2d 1219, 1221 (D.N.M. 1999)(Black, J.). Judge Black has also stated, however, that the Tenth Circuit would likely reject the argument that the amended removal statute allows for remand of federal claims. See Lujan v. Earthgrains Baking Companies, Inc., 42 F. Supp. 2d at 1221 (stating that, recently, district courts and circuit courts have rejected the notion that 28 U.S.C. § 1441(c) authorizes remand of the federal-question claims even when state claims predominate). Professors Wright and Miller have similarly recognized that there are two interpretations of the effect of the 1990 amendment to 28 U.S.C. § 1441(c). See 14B C. Wright & A. Miller, supra § 3722.3, at 630. Wright and Miller state:

> [T]he first interpretation . . . narrows district court discretion: a district judge can remand only those otherwise nonremovable claims that are made up predominately of state law issues, whereas the second interpretation of the change in the statute's language expands the discretion to remand in that it asserts that a district court now has discretion to remand the whole set of removed claims to state court, rather than only those matters otherwise outside the federal court's jurisdiction. Thus, two areas of ambiguity exist in the two interpretations: the extent to which the ability to remand individual claims was limited by the 1990 amendment and whether a district court has the ability to remand all matters, both the federal question claim

that provided the basis for the removal and the otherwise nonremovable claims.

> The first position -- that otherwise non-removable claims may not be remanded unless state law predominates in them -- could be inconsistent with the policies that underlie the prohibition on removal of some federal claims. . . . A requirement that state law predominate in the unrelated claims therefore could lead to a situation in which the federal court lacks statutory authority to remand some claims removed pursuant to Section 1441(c), but lacks constitutional authority to retain and adjudicate those claims. The second position -- that even federal question claims under Section 1331 can be remanded under Section 1441(c) -- seems to be inconsistent with the purpose of the provision to prevent plaintiffs from blocking defendants' access to federal court for the adjudication of federal question claims and with federal courts' general obligation to adjudicate claims as to which there is an independent basis of subject-matter jurisdiction. Thus, the wisdom of each of these interpretations can be questioned. It should be noted, however, that retention of the federal question claims despite the predominance of state law in an action as a whole compels a plaintiff to bear the diseconomies of two separate lawsuits or to forego one or the other of the claims, and it may be that Congress intended to avoid putting plaintiffs to this choice when it authorized the federal court to "remand all matters in which state law predominates."

C. Wright & A. Miller, supra § 3722.3, at 632-34 (footnotes omitted). Section 1441(c) states: "Whenever a separate and independent claim . . . is joined with one or more otherwise non-removable claims . . . , the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters in which State law predominates." 28 U.S.C. § 1441(c)(emphasis added). Congress chose to use the word "matters" when discussing what a district court may remand instead of the word "claim." The Court believes that, as a result of Congress' choice of words, the best reading of 28 U.S.C. § 1441(c) is that the statute allows federal courts to remand even federal-question claims. See 28 U.S.C. § 1441(c) commentary on 1988 and 1990 revisions ("[T]he word used by the statute is still 'matters'. . . . If matters is construed to include all 'claims', then a combination of claims in which a federal claim is [but one claim and] . . . state law is found to 'predominate' may justify a remand of the whole case, [including the] federal claim . . . ."). Although the Court believes that the best reading of the statute is that federal

courts have discretion to remand even federal-question claims, the Court believes that the discretion given the district court under this construction of the statute should be exercised rarely to remand the federal claim before it is decided. Even though the Court believes that Congress has given district courts discretion to remand federal-question claims in 28 U.S.C. § 1441(c), if federal courts exercise this power broadly, it will gut the history and tradition regarding the federal courts' obligation to exercise jurisdiction over federal questions. For example, if this discretionary power is broadly exercised, it could gut the long-standing law set forth in Osborn v. Bank of the United States and the Pacific Railroad Removal Cases. Because the Court believes that this power to remand federal questions should be rarely exercised, the Court believes that it should not remand the Esquibels' claims against Amtrak unless there is some compelling reason. The Court does not believe that the state-law claims extraordinarily predominate over the Esquibels' claims against Amtrak such that the Court should remand the claims against Amtrak. The Court believes that the Supreme Court's discussion of the exceptional circumstances in which federal courts may decline to exercise their jurisdiction may be helpful in the Court's analysis whether it should exercise its discretion to remand the Esquibels' claims against Amtrak. Federal courts "may decline to exercise their jurisdiction in otherwise exceptional circumstances, where denying a federal forum would clearly serve an important countervailing interest, for example, where abstention is warranted by considerations of proper constitutional adjudication, regard for federal-state relations, or wise judicial administration." Quackenbush v. Allstate Ins. Co., 517 U.S. at 716 (internal quotation marks and citations omitted). The Court does not believe an exceptional circumstance exists that calls for abstention. The Court does not see a countervailing interest which counsels that the Court should decline to exercise jurisdiction. There are no apparent state or federal constitutional issues, and the Court handles similar state issues routinely in diversity cases. There is no compelling reason

that the state court should handle the case rather than the federal court.  Because federal courts have original jurisdiction over claims against Amtrak, the Court believes that federal courts should exercise jurisdiction over removed claims against Amtrak unless there are exceptional or compelling circumstances that warrant abstention.  Because the Court believes that exceptional or compelling circumstances do not exist at this time in this matter, the Court therefore declines to follow Chief Judge Vázquez' analysis and the Plaintiffs' argument that she should not have exercised jurisdiction over Stark-Romero's claims against Amtrak.

The Court also disagrees with Chief Judge Vázquez' conclusion and the Plaintiffs' argument that she should not exercise jurisdiction over Stark-Romero's claims against Amtrak because the controversy did not raise a substantial question of federal law.  Chief Judge Vázquez stated that, even assuming she had jurisdiction over Stark-Romero's claims against Amtrak, "jurisdiction still fails because . . . Amtrak has failed to successfully argue that the controversy at hand deals with a substantial question of federal law."  Mar. 31, 2010 MOO at 15.  In her Mar. 31, 2010 MOO, Chief Judge Vázquez relied on <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>.  In <u>Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing</u>, the issue was "whether want of a federal cause of action to try claims of title to land obtained at a federal tax sale precludes removal to federal court of a state action with nondiverse parties raising a disputed issue of federal title law."  545 U.S. at 310.  The Supreme Court stated that there was federal-question jurisdiction "over state-law claims that implicate significant federal issues."  545 U.S. at 312.  The Supreme Court stated: "[T]he question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  545 U.S. at 314.  As the Supreme Court recognized, state-law claims that raise substantial federal issues

-86-

is a "variety of federal 'arising under' jurisdiction." Id. at 312. The Supreme Court held that, "[g]iven the absence of threatening structural consequences and the clear interest the Government, its buyers, and its delinquents have in the availability of a federal forum, there is no . . . reason to shirk from federal jurisdiction over the dispositive and contested federal issue at the heart of the state-law . . . claim." Id. at 319-20. Chief Judge Vázquez did not have to consider whether she had federal-question jurisdiction under this variety of federal-question jurisdiction, because she had jurisdiction over Stark-Romero's claims against Amtrak under 28 U.S.C. § 1331, Osborn v. Bank of the United States, and the Pacific Railroad Removal Cases. Because the Court has found that it has federal-question jurisdiction under 28 U.S.C. § 1331, Osborn v. Bank of the United States, and the Pacific Railroad Removal Cases, the Court does not need to analyze whether it has federal-question jurisdiction; therefore, Chief Judge Vázquez' analysis regarding Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing is inapplicable. Although the Esquibels' claims against Amtrak are for negligence and loss of consortium, Osborn v. Bank of the United States and the Pacific Railroad Removal Cases dictate that the Court has jurisdiction, regardless of whether the claims raise substantial federal issues. The Court need not and should not add this additional step to its judicial analysis if Congress has already bestowed jurisdiction on the Court.[11]

_____

[11] The commentary on the 1990 revisions to 28 U.S.C. § 1441(c), written by David D. Siegel, Professor of Law Emeritus at Albany Law School, states:

> The old language with which subdivision (c) ended allowed the federal court after removal to "remand all matters not otherwise within its original jurisdiction". The new language is that the court may "remand all matters in which State law predominates". The new language recognizes that the only basis now allowable for a subdivision (c) removal in the first place is the federal nature of the claim being removed. The manifest purpose is to get into a federal court only a substantial federal claim, and to give a free ride only to state claims related to it. If the federal court finds that the federal claim, while plausible, is not really the plaintiff's main mission, that it is only an incident or adjunct of the state claim, and that the state

The Court also disagrees with Chief Judge Vázquez' conclusion and the Plaintiffs' argument that she was not required to exercise jurisdiction over Stark-Romero's claims because federal courts are required to retain jurisdiction over both state and federal claims when federal law completely preempts state law.  See Mar. 31, 2010 MOO at 14.  "Under the 'complete preemption doctrine,' federal courts may exercise federal question jurisdiction over complaints that, although not presenting federal questions on their face, nonetheless present state law claims that are preempted by federal law."  Garley v. Sandia Corp., 236 F.3d 1200, 1207 (10th Cir. 2001).  It is unnecessary for a court to discuss whether it has jurisdiction under the complete-preemption doctrine when it has already determined it has federal-question jurisdiction.  The Court has already determined that it has federal-question jurisdiction under 28 U.S.C. § 1331, Osborn v. Bank of the United States, and the Pacific Railroad Removal Cases.  Chief Judge Vázquez and the Plaintiffs' analysis whether Stark-Romero's claims were completely preempted by federal law is therefore inapplicable and not persuasive.

The Court recognizes that, although it has federal-question jurisdiction, it is not required to

---

claim is the crux of the action, the federal court can remand all claims in which it finds that state law "predominates".

28 U.S.C. § 1441(c) commentary on 1988 and 1990 revisions (emphasis added).  This commentary states that the only basis for a removal under 1441(c) is the federal nature of the claim and that the purpose of the amended language of 28 U.S.C. § 1441(c) was to get substantial federal claims to federal court.  The Court does not believe, however, that analysis whether a federal claim is substantial is necessary once the Court has jurisdiction under Osborn v. Bank of the United States and the Pacific Railroad Removal Cases.  In these cases, the Supreme Court laid out a per se rule that suits involving federally chartered corporations arise under the laws of the United States.  The Court believes that, if it has jurisdiction over a claim under Osborn v. Bank of the United States and the Pacific Railroad Removal Cases, the Supreme Court has in effect stated that the claim is a substantial federal claim; while it may now be permissible to compare the claim against Amtrak to the state claims against the non-Amtrak Defendants, and analyze the weight of the claims against Amtrak, such an analysis is not mandated.

exercise its jurisdiction over the state-law claims, because the Esquibels also make claims against

the other Defendants that, by themselves, are not removable.  28 U.S.C. § 1441(c) states:

> Whenever a separate and independent claim or cause of action within the jurisdiction
> conferred by section 1331 of this title is joined with one or more otherwise
> non-removable claims or causes of action, the entire case may be removed and the
> district court may determine all issues therein, or, in its discretion, may remand all
> matters in which State law predominates.

28 U.S.C. § 1441(c) (emphasis added).  David D. Siegel's commentary discussing the 1990

amendments to 28 U.S.C. § 1441(c) provides helpful guidance.  The commentary states:

> The old language with which subdivision (c) ended allowed the federal court
> after removal to "remand all matters not otherwise within its original jurisdiction".
> The new language is that the court may "remand all matters in which State law
> predominates".  The new language recognizes that the only basis now allowable for
> a subdivision (c) removal in the first place is the federal nature of the claim being
> removed.  The manifest purpose is to get into a federal court only a substantial
> federal claim, and to give a free ride only to state claims related to it. If the federal
> court finds that the federal claim, while plausible, is not really the plaintiff's main
> mission, that it is only an incident or adjunct of the state claim, and that the state
> claim is the crux of the action, the federal court can remand all claims in which it
> finds that state law "predominates".
>
> If state law "predominates" in the whole case, however, where does that leave
> the federal claim?  If the federal claim is so weak in its context that state law
> "predominates", the defendants might consider a two-part motion seeking (1)
> summary judgment disposing of the federal claim on the merits and (2) a remand of
> the non-federal claims.
>
> Note that the word used by the statute is still "matters".  The federal court can
> remand all "matters" in which state law predominates.  If matters is construed to
> include all "claims", then a combination of claims in which a federal claim is one but
> in which state law is found to "predominate" may justify a remand of the whole case,
> with the federal claim included.

28 U.S.C. § 1441 commentary on 1988 and 1990 revisions.  The language of the statute appears to

contemplate remand of separate and independent claims in which state law predominates.  The

Esquibels' claims, however, arise out of the same occurrence.  As the Court has discussed, it

declines to exercise its discretion to remand the Esquibels' claim against Amtrak.  The Court also

declines to exercise its discretion to remand the Esquibels' claims against the non-Amtrak Defendants.   There may come a time to send the state-law claims against the non-Amtrak Defendants back to state court, but at the present time, it makes sense to treat the case as a whole, and not force the parties to litigate a relatively straightforward case in two courts.  For the present time, it makes sense to have all the Esquibels' claims together in federal court.  The Court regularly determines matters involving New Mexico law, and there is no suggestion that there are any unique questions of New Mexico state law.  If, at a later time, the Esquibels' claim against Amtrak is disposed on the merits, the Court will consider remand of the Esquibels' claims against the other Defendants.  It seems that the better approach is not to remand claims against Amtrak now, but wait for a summary judgement motion on the Amtrak claims, see if there are any remaining federal-question claims, and, if there are no remaining federal-question claims, remand the remaining state claims.  The Court does not believe, however, that it should exercise its discretion at this point to remand any of the Esquibels' claims to state court.

The Court will exercise supplemental jurisdiction over all of the Esquibels' claims against the other Defendants.  The Esquibels' claims against the other Defendants arise out of the same common nucleus of operative facts, because they arise out of the same accident.  Section 1367 of Title 28 of the United States Code states:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

18 U.S.C. § 1367(a).  A claim is part of the same case or controversy if it derives from a common nucleus of operative fact, such that the plaintiff would normally be expected to try the claims in one

proceeding. See United Mine Workers of Am. v. Gibbs, 383 U.S. at 725-26; Price v. Wolford, 608 F.3d at 702-03 (citation omitted).  The Court finds that the Esquibels' claims derive from a common nucleus of operative fact, because the claims arise out of the same accident, which involved a collision with a train.  The Court will not decline to exercise supplemental jurisdiction at the time. Perhaps the Court can reassess if it disposes of the claims that give the Court original jurisdiction. Moreover, the Esquibels' assert claims for negligence and loss of consortium, which do not raise novel or complex issues of New Mexico law.  The Plaintiffs' claims against BNSF, the City of Las Vegas, San Miguel County, and the NMDOT do not substantially predominate over the claims against Amtrak, because the factual allegations against Amtrak do not appear to be minor. Furthermore, the parties have not alleged that there are other compelling reasons for declining jurisdiction, and the Court has not found other compelling reasons.  The Court will therefore exercise supplemental jurisdiction over the Esquibels' claims against BNSF, the City of Las Vegas, San Miguel County, and the NMDOT.

**IT IS ORDERED** that: (i) the Plaintiffs' Motion to Remand and Memorandum in Support Thereof, filed September 9, 2010 (Doc. 19), is granted in part and denied in part as set forth in this Memorandum Opinion and Order; and (ii) the Plaintiff and Plaintiff-Intervenors' Motion Requesting That this Matter Be Returned to the Previously Assigned Judge, filed October 10, 2010 (Doc. 32), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Philip C. Gaddy
Maria E. Touchet
Gaddy Jaramillo
Albuquerque, New Mexico

> *Attorneys for the Plaintiff Victoria Stark-Romero and Plaintiff-Intervenors Emilio J.
> Esquibel and Helen G. Esquibel*

James F. Scherr
Scherr & Legate, PLLC
El Paso, Texas

-- and --

Dave E. Romero, Jr.
Romero Law Firm, P.A.
Las Vegas, New Mexico

> *Attorneys for Plaintiff Victoria Stark-Romero*

Tony F. Ortiz
Christopher M. Grimmer
Scheuer, Yost & Patterson, P.C.
Santa Fe, New Mexico 87504

> *Attorneys for Defendant City of Las Vegas*

James P. Sullivan
Christina L. Brennan
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

-- and --

Joan M. Waters
Brennan & Sullivan, P.A.
Albuquerque, New Mexico

> *Attorneys for Defendant San Miguel County*

Jerry A. Walz
Alfred D. Creecy
Walz and Associates
Albuquerque, New Mexico

*Attorneys for Defendant New Mexico Department of Transportation*

Tim L. Fields
Alex Cameron Walker
Greg L. Gambill
Earl E. DeBrine, Jr.
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

*Attorneys for Defendant National Railroad Passenger Company*