IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICTORIA STARK-ROMERO, Individually and as
Personal Representative of the Estate
Of FRED P. STARK,

       Plaintiff,

and

EMILIO J. ESQUIBEL and HELEN G. ESQUIBEL,
Individually and as Co-Personal Representatives of the Estate of
MICHAEL S. ESQUIBEL, deceased,

       Plaintiff-Intervenors,

vs.                                                                                                   No. CIV 10-0778 JB/RLP

THE NATIONAL RAILROAD PASSENGER
COMPANY (AMTRAK), BURLINGTON
NORTHERN SANTA FE RAILWAY
COMPANY (BNSF), CITY OF LAS VEGAS,
SAN MIGUEL COUNTY and NEW MEXICO
DEPARTMENT OF TRANSPORTATION, and
RIDE TO PRIDE AT THE BARN, L.L.C.,

       Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiffs' Motion to Extend Deadlines and Request for Expedited Briefing, filed June 9, 2011 (Doc. 90). The Court held a hearing on July 6, 2011. The primary issues are: (i) whether the Court should order expedited briefing on Plaintiff Emilio J. Esquibel's and Helen G. Esquibel's motion; and (ii) whether the Court should extend the pretrial deadlines by sixty days. The Court need not order expedited briefing, because the parties have already completed briefing the Esquibels' motion. See Notice of Completion of Briefing, filed June 28, 2011 (Doc. 103). The Court will extend all the deadlines in this matter, because the

Esquibels have shown excusable neglect in failing to meet the expert disclosure deadline, and because the Esquibels have shown good cause to extend the deadlines.

## PROCEDURAL BACKGROUND

On February 7, 2011, the Joint Status Report/Provisional Discovery Plan was filed. See Doc. 56. The Esquibels and Defendants proposed the following deadlines for any expert reports required under rule 26(a)(2) of the Federal Rules of Civil Procedure or the Local Rules for the United States District Court for the District of New Mexico: June 3, 2011 for the Plaintiffs and July 18, 2011 for the Defendants. The parties proposed that the discovery deadline be August 31, 2011.

On February 25, 2011, the Court entered a Scheduling Order. See Doc. 61. The order set the termination date for discovery on August 31, 2011. It stated that the Esquibels shall identify to all parties in writing any expert witnesses they intend to use at trial and provide expert reports no later than June 3, 2011. It stated that all other parties shall identify in writing any expert witness they intend to use at trial and provide expert reports no later than July 18, 2011. The order set the deadline for pretrial motions on September 30, 2011, and set the matter for trial on a trailing docket beginning on December 12, 2011.

On February 25, 2011, the Court entered an Order Adopting Joint Status Report and Provisional Discovery Plan, which adopted the joint status report and provisional discovery plan except as modified by the Court's scheduling order. See Doc. 62.

The Esquibels' counsel, Philip Gaddy, states that he realized he missed the June 3, 2011 deadline to identify the Esquibels' experts on June 8, 2011. He wrote the Court a letter detailing the reasons he missed the deadline. See Letter from Philip Gaddy to the Court (dated June 9, 2011), filed June 9, 2011 (Doc. 90-1)("Letter"). In his letter, Gaddy stated:

> I write to you to alert you as early as possible about a missed deadline.

Plaintiffs missed the deadline to disclose experts last Friday. There is a reason it was missed, the details of which will be provided in a motion, but since that must await all counsel's input, I would like to give you the highlights. This has been a roller-coaster year for me. It began with two family tragedies, one involving the only son of my nearest brother and the other involving my mother. These were without a doubt the low points of my life. These were then followed with the highlight of my life, my son's wedding in New York over Memorial Weekend. Much of May and especially the last two weeks of May were spent preparing for and then anticipating in this great event. For those who have not yet had the pleasure of a child's marriage, it is indescribable but also very hectic and stressful. I was completely unfocused at work. Fortunately, the wedding and all the surrounding events went off without a hitch and it was just awesome. Unfortunately, that was followed almost immediately by yet another family tragedy. My father in law on his return to El Paso went to his local 'doc-in-the-box' with severe chest pain. Tests proved that his heart is fine, but a chest x-ray lead to the discovery of a large tumor in his right chest. My wife and I literally went from New York to El Paso. I had to return from El Paso on Sunday to prepare witnesses for depositions on Monday. Other than the time in depositions, all day Monday, Tuesday and most of Wednesday, were spent by my wife, brother-in-law, and myself trying to get additional chest X-rays, then a CAT scan, someone to release the scan to us since my father in law does not have a primary care physician, then getting someone to interpret films, consulting with friends and relatives in the medical fields for what it all means, and now scheduling and following up with a PET scan, biopsy or excision, and surgical and oncology appointments and consults. Again, I was less than focused on work. Late yesterday afternoon knowing that we have done all that we can for now, I finally had a chance to catch my breath and review those work matters that required attention which is when I noticed that last Friday's deadline had been missed.

In May and before leaving for my son's wedding in New York, I had concluded that the case is not sufficiently developed to meet the expert deadline. That was because the parties had just recently completed an inspection of the crossing with all counsel and Plaintiffs' liability experts present. Defense counsel are, thus, aware of who Plaintiffs' liability experts will be; however, no deposition other than one Plaintiff has taken place. Further, defense counsel were aware of the continuing discussions regarding deposition scheduling and discovery disputes. Thus, I had intended to approach all parties to extend it and other deadlines. While I believe it had been touched upon with some of the other lawyers, that was as far as I had taken it. No unopposed motion and order was circulated for approval to counsel. I had fully intended to get this addressed and submitted to your Honor within the deadline, but I just spaced it and dropped the ball. In the days after the wedding, it was the furthest thing from my mind. I alerted all counsel late last night that I would be sending you this letter. Since I have heard no objections, I am submitting. I have asked counsel for their positions but have not yet heard back from everyone. Once I do, I will be submitting a Motion noting either counsel's consent or objections.

Letter at 1-2.

The Esquibels filed their Motion to Extend Deadlines and Request for Expedited Briefing on June 9, 2011.  See Doc. 90.  The Esquibels represent that counsel for Defendant New Mexico Department of Transportation ("NMDOT") stated he does not oppose their motion and that the other Defendants, at the time of filing, had not responded with their objection or concurrence.  The Esquibels state that the deadline to disclose their experts was Friday, June 3, 2011.  The Esquibels state that they missed the deadline and request that the Court extend this deadline, as well as other deadlines.  The Esquibels argue that there is good cause to extend the deadlines and that there is no danger of prejudice to the opposing parties, because the length of delay is short and the discovery is in its early stages.

On June 23, 2011, Defendant National Railroad Passenger Company d/b/a Amtrak and BNSF Railway filed their Response to Plaintiffs' Motion to Extend Deadlines.  See Doc. 95.  Amtrak and BNSF Railway argue that they are faced with a situation where the Esquibels' expert deadline has passed, and where they will be forced to disclose their own experts before the Court rules on the Esquibels' motion and before the Esquibels have disclosed their expert reports.  Amtrak and BNSF Railway argue that the Esquibels' motion fails to establish good cause for the extension of pretrial deadlines.  They argue that a sixty-day extension would prejudice the current trial setting.

On June 23, 2011, Defendant City of Las Vegas filed the Defendant City of Las Vegas's Joinder in Response by Defendants Amtrak and BNSF to Plaintiffs' Motion to Extend Deadlines.  See Doc. 97.  On June 24, 2011, Defendant San Miguel County filed Defendant Board of County Commissioners of the County of San Miguel's Response to Plaintiffs' Motion to Extend Deadlines and Request for Expedited Briefing.  See Doc. 101.  San Miguel County represented that it did not object to the Esquibels' Motion.

On June 28, 2011, the Esquibels filed their Reply to Motion to Extend Deadlines. See Doc. 102. The Esquibels state that the only prejudice the Defendants identify is that they will have to disclose experts before the Esquibels have disclosed their experts and that they want to make clear that they in no way intend for the Defendants to have to disclose experts first. They argue that they have requested a sixty-day extension on all pre-trial deadlines for all parties and that each party will thus be in the same position as they were before the requested extension. The Esquibels also argue that they have not delayed conducting discovery, and that they have demonstrated good cause and excusable neglect for the delay in requesting a sixty-day extension.

At the hearing, Amtrak and BNSF Railway argued that the Esquibels have not presented sufficient evidence why they could not comply with the deadline. They argued that they were entitled to see what the Esquibels' experts are going to say before they make Amtrak and BNSF Railway representatives available for depositions, and before they submit their expert reports. NMDOT stated that it "favor[ed] the Court's inclinations [to] give additional time as [the Esquibels] requested and then give the defendants a sufficient time to then get their experts the appropriate discovery." Transcript of Hearing at 71:18-22 (taken July 6, 2011)(Walz)("Tr.").[1] NMDOT stated that it appeared that "there is no way this case is going to be tried in December," that it "accept[ed] what Mr. Gad[dy] says for good cause," and that it "think[s] there was good cause for the Court to extend these deadlines." Tr. at 71:22-72:3 (Walz). The other Defendants stated that they had nothing to add to the record.

## RELEVANT LAW REGARDING EXTENSIONS OF TIME

Rule 6(b) of the Federal Rules of Civil Procedure states:

---

[1] The Court's citations to the transcript of the hearing refers to the court reporter's original, unedited version. Any final transcript may have slightly different page and/or line numbers.

**(b) Extending Time.**

> **(1)** *In General.* When an act may or must be done within a specified time, the court may, for good cause, extend the time:
>
>> **(A)** with or without motion or notice if the court acts, or if a request is made, before the original time or its extension expires; or
>>
>> **(B)** on motion made after the time has expired if the party failed to act because of excusable neglect.
>
> **(2)** *Exceptions*. A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b).

Fed. R. Civ. P. 6(b). Showing good cause is not a particularly demanding requirement. See United States v. Portillo-Quezada, Nos. 03-20051, 08-2295, 2010 WL 396309, at *1 (D. Kan. Jan. 27, 2010)(finding good cause where attorney argued only that he "needs additional time to contact a witness for the Government at the trial of this case who may recant or change her testimony in material respects. Completion of research and drafting of the memorandum in support is also needed."); Weingarten v. Optima Commc'n Sys., Inc., 544 F. Supp. 2d 193, 196 n.1 (S.D.N.Y. 2008)("Under Rule 6(b)(1)(A) . . . the court may, for good cause, extend the time to move if a request is made before the original time period expires.").

On the other hand, "a finding of excusable neglect under Rule 6(b)[(1)(B)] requires both a demonstration of good faith by the parties seeking the enlargement and also it must appear that there was a reasonable basis for not complying within the specified period." In re Four Seasons Sec. Law Litig., 493 F.2d 1288, 1290 (10th Cir.1974). See Putnam v. Morris, 833 F.2d 903, 905 (10th Cir. 1987)("[S]ome showing of good faith on the part of the party seeking the enlargement and some reasonable basis for noncompliance within the time specified is normally required.")(quoting Winters v. Teledyne Movible Offshore, Inc., 776 F.2d 1304, 1305 (5th Cir.1985)). "[I]t is well established that inadvertence, ignorance of the rules, and mistakes construing the rules do not

constitute excusable neglect for purposes of Rule 6(b)." Quigley v. Rosenthal, 427 F.3d 1232, 1238 (10th Cir. 2005).

## LAW REGARDING MODIFICATION OF SCHEDULING ORDERS

While "[t]he District Court has wide discretion in its regulation of pretrial matters," Si-Flo, Inc. v. SFHC, Inc., 917 F.2d 1507, 1514 (10th Cir. 1990), scheduling orders "may be modified only for good cause and with the judge's consent," Fed. R. Civ. P. 16(b)(4). See Street v. Curry Bd. of Cnty Comm'rs, 2008 WL 2397671 at *6 (D.N.M.)(Browning, J.). The Advisory Committee Notes to rule 16 observe:

> [T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension. Since the scheduling order is entered early in the litigation, this standard seems more appropriate than a 'manifest injustice' or 'substantial hardship' test. Otherwise, a fear that extensions will not be granted may encourage counsel to request the longest possible periods for completing pleading, joinder, and discovery.

Fed. R. Civ. P. 16(b)(4), Advisory Committee Notes, 1983 Amendment. In the United States Court of Appeals for the Tenth Circuit, the concepts of good cause, excusable neglect, and diligence are all related. As this Court has stated: "Properly construed, 'good cause' means that scheduling deadlines cannot be met despite a party's diligent efforts." Street v. Curry Bd. of Cnty Comm'rs, 2008 WL 2397671 at *6. "The Tenth Circuit . . . has recognized the interrelation between 'excusable neglect' and 'good cause.'" Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. 295, 301 (D. Kan. 1996)(citing Broitman v. Kirkland (In re Kirkland), 86 F.3d 172, 175 (10th Cir. 1996)). In Broitman v. Kirkland (In re Kirkland), the Tenth Circuit dealt with the definition of "good cause" in the context of rule 4(j). The Tenth Circuit noted:

> [W]ithout attempting a rigid or all-encompassing definition of "good cause," it would appear to require *at least as much* as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice, and some showing of "good faith on the part of the

>   party seeking the enlargement and some reasonable basis for noncompliance within
>   the time specified" is normally required.

86 F.3d at 175 (quoting Putnam v. Morris, 833 F.2d 903, 905 (10th Cir.1987))(emphasis in Putnam v. Morris and Broitman v. Kirkland (In re Kirkland))(internal quotation marks omitted). The Tenth Circuit explained that Putnam v. Morris "thus recognized that the two standards, although interrelated, are not identical and that 'good cause' requires a greater showing than 'excusable neglect.'" Broitman v. Kirkland (In re Kirkland), 86 F.3d at 175.

Other courts within the Tenth Circuit have held that "the 'good cause' standard primarily considers the diligence of the party . . . [.]  The party seeking an extension must show that despite due diligence it could not have reasonably met the scheduled deadlines.  Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief." Pulsecard, Inc. v. Discover Card Servs. Inc., 168 F.R.D. at 301 (internal quotation marks omitted)(omission in original).  In the United States District Court for the District of Utah, the Honorable Dale A. Kimball, United States District Judge, found "good cause" existed to amend the court's scheduling order when the court decided to permit the plaintiff's counsel to withdraw as counsel. See Kee v. Fifth Third Bank, 2008 WL 183384, *1 (D. Utah).  Judge Kane reasoned: "[I]n light of the court's decision to permit [counsel] to withdraw . . . the court has determined that good cause exists for amending the existing scheduling order." Id.

## ANALYSIS

The Esquibels have shown excusable neglect in failing to meet the disclosure deadline and good cause to extend the deadline.  Mr. Gaddy experienced several family events this year which necessitated him being away from the office for extended amounts of time.  In February, his brother lost his only child in a motorcycle collision in Dallas, Texas.  When the family gathered in Dallas,

it became apparent that his mother was not functioning well. Following several doctor's appointments, his mother was diagnosed with advanced stage dementia and Alzheimers disease.

During this period, Mr. Gaddy and his wife were preparing for their son's wedding in New York -- which took place on May 29, 2011. Unfortunately, soon after the wedding, a chest x-ray of Mr. Gaddy's father-in-law revealed a large tumor in his right chest. Mr. Gaddy helped arrange additional chest x-rays, a CAT scan, a PET scan, a biopsy, and surgical and oncology consultations for his father-in-law. On June 8, 2011, Mr. Gaddy reviewed work matters which required his attention and noticed that he missed the June 3, 2011 deadline. Mr. Gaddy represents that, before leaving for his son's wedding in May, he had concluded that the case was not sufficiently developed to meet the expert deadline, because the parties and the liability experts did not complete an inspection of the crossing until mid-May, and because only one deposition -- of one of the Esquibels-- had taken place. Mr. Gaddy represents that he had thus intended to approach all parties to extend the deadlines. He states that he dropped the ball before the wedding and that, after the wedding, it was the furthest thing from his mind.

The railroads complain that the Esquibels' other lawyers could have done the missed work. The Court is mindful that all firms -- but particularly plaintiffs' firms -- assign different responsibilities to different lawyers. It appears that it was Mr. Gaddy's responsibility to get the experts identified and their reports done. Although the Court believes that some of the Esquibels' work regarding expert disclosures could have been done earlier, rather than at the last moment, the reasons Mr. Gaddy provided for his failure to comply with the expert disclosures show excusable neglect in failing to meet the deadline and good cause to extend the deadline. See Fed. R. Civ. P. 6(b); Fed. R. Civ. P. 16. It appears that Mr. Gaddy intended to get an extension and failed to secure it; that intended strategy appears to have contributed to Mr. Gaddy missing the deadline. In any

case, if Mr. Gaddy had sought an extension of deadlines, the Court likely would have granted it, and the railroads might have not opposed it.

The railroads may be suggesting that Mr. Gaddy's missing of the deadline was "simple inadvertence" or "mistake," <u>Broitman v. Kirkland (In re Kirkland)</u>, 86 F.3d at 175, which the Tenth Circuit says usually cannot constitute excusable neglect, or carelessness, which the Tenth Circuit says cannot constitute good cause. There is no doubt that these words could be used to described Mr. Gaddy's problems, and it would be word play or sophistry to suggest that they would not. What the Court believes the Tenth Circuit was saying, however, is that the Court cannot, and faithfully follow Tenth Circuit precedent, excuse every lawyer mistake. There must be something more -- "good faith" and "some reasonable basis for noncompliance," <u>Broitman v. Kirkland (In re Kirkland)</u>, 86 F.3d at 175. Here, Mr. Gaddy's problems were life crises; there is nothing simple about them. He did not just make an inadvertent mistake; life overwhelmed him. There is no evidence he was careless. In fact, it appears that he knew about the deadline and intended to, or was in the process of, attempting to move the deadline when things began to get out of control for him. Indeed, he had retained his liability experts and they had visited the site. It is not like there was not work done, it was just not brought to proper fruition. The evidence suggests a lot of life got crammed into a short period of time. A lawyer should be able to show excusable neglect and good cause when he or she has unexpected turmoil in life. Moreover, a client should not suffer the consequences of having a lawyer who is going through a string of unfortunate circumstances. For these reasons, and for the reasons stated on the record at the hearing, the Court finds that the Esquibels have shown excusable neglect in failing to meet the disclosure deadline and good cause to extend the deadline.

NMDOT and San Miguel County do not oppose the Esquibels' request that the Court extend the deadlines. In Amtrak and BNSF Railway's opposition to the Esquibels' motion, which the City

of Las Vegas joined, Amtrak and BNSF Railway raised concerns of prejudice, arguing that the Court cannot grant the Esquibels' motion without prejudicing the trial setting. Amtrak and BNSF Railway also argued that they are faced with a situation where they will be forced to disclose their own experts without the benefit of having obtained the opinions they are expected to rebut. The Court does not believe that there is any need for the Defendants to identify their experts before the Esquibels identify their experts. The parties always contemplated the Esquibels identifying their experts first. It is not necessary to put the Defendants in a position where they identify their experts first. The Court will extend all deadlines in the case so that the Defendants do not lose the strategic position of obtaining the Esquibels' expert reports before they disclose their expert reports. Although the Court will extend deadlines in this case, the Court will keep the case on track. The Court will move the deadline for the Esquibels to identify and disclose expert reports from June 3, 2011 to September 15, 2011. The Defendants will then have until November 1, 2011 to identify and disclose their expert reports. The Court will move the deadline for discovery to November 17, 2011. Discovery motions must be filed by December 7, 2011 and pretrial motions must be filed by December 19, 2011. The Court will set a motion hearing for pending motions on January 25, 2012 at 9:00 a.m. The Court will set a pretrial conference for February 3, 2012 at 9:00 a.m. The Court will set a trial in this matter on its trailing docket on February 13, 2012 at 9:00 a.m. The pretrial order must come from the Esquibels to the Defendants by end of business on January 30, 2012. The pretrial order must come to the Court from the Defendants by end of business on February 2, 2012. These deadlines will keep this case on track and moving forward towards resolution, without substantial delay of the trial.[2] As NMDOT's counsel conceded, it was unlikely that the case was

---

[2] At the hearing, the parties asked the Court to rule on the number of depositions the Esquibels would be allowed to take. The Esquibels stated that they believed they were allowed to

going to be tried in December in any case, and thus a two-month delay -- in the middle of the holiday season -- is not extremely significant or prejudicial to any party.

**IT IS ORDERED** that the Plaintiffs' Motion to Extend Deadlines and Request for Expedited Briefing, filed June 9, 2011 (Doc. 90), is granted in part and denied in part. The Court need not order expedited briefing, because the parties have already completed briefing the Esquibels' motion. The Court extends the deadlines in this matter. The Esquibels must identify and disclose expert reports by September 15, 2011. The Defendants must identify and disclose their expert reports by November 1, 2011. The deadline for discovery is extended to November 17, 2011. Discovery motions must be filed by December 7, 2011, and pretrial motions must be filed by December 19, 2011. The Court will set a motion hearing for pending motions on January 25, 2012 at 9:00 a.m. The Court will set a pretrial conference for February 3, 2012 at 9:00 a.m. The Court will set a trial in this matter on its trailing docket on February 13, 2012 at 9:00 a.m. The pretrial order must come from the Esquibels to the Defendants by end of business on January 30, 2012. The pretrial order must come to the Court from the Defendants by end of business on February 2, 2012.

_____
UNITED STATES DISTRICT JUDGE

---

take twenty depositions. The Defendants took the position that the Esquibels were allowed only ten depositions. The Esquibels represented that the parties had reached an agreement, under which the Esquibels would be allowed to take fifteen depositions. The Court stated that, although the Defendants had the better argument, it would place a footnote in its Memorandum Order and Opinion ruling that the Esquibels could take fifteen depositions.

*Counsel:*

Philip C. Gaddy
Maria E. Touchet
Gaddy - Jaramillo Lawyers
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs Emilio J. Esquibel and Helen G. Esquibel*

Tony F. Ortiz
Christopher M. Grimmer
Scheuer, Yost & Patterson, P.C.
Santa Fe, New Mexico 87504

    *Attorneys for Defendant City of Las Vegas*

James P. Sullivan
Christina L. Brennan
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

-- and --

Joan M. Waters
Brennan & Sullivan, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant San Miguel County*

Jerry A. Walz
Alfred D. Creecy
Walz & Associates
Albuquerque, New Mexico

    *Attorneys for Defendant New Mexico Department of Transportation*

Tim L. Fields
Alex Cameron Walker
Greg L. Gambill
Earl E. DeBrine, Jr.
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendants National Railroad Passenger Company*
      *and BNSF Railway Company*