## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

VICTORIA STARK-ROMERO, Individually and as
Personal Representative of the Estate
of FRED P. STARK,

       Plaintiff,

and

EMILIO J. ESQUIBEL and HELEN G. ESQUIBEL,
Individually and as Co-Personal Representatives of the Estate of
MICHAEL S. ESQUIBEL, deceased,

       Plaintiff-Intervenors,

vs.                               No. CIV 10-0778 JB/RLP

THE NATIONAL RAILROAD PASSENGER
COMPANY (AMTRAK), BURLINGTON
NORTHERN SANTA FE RAILWAY
COMPANY (BNSF), CITY OF LAS VEGAS,
SAN MIGUEL COUNTY and NEW MEXICO
DEPARTMENT OF TRANSPORTATION, and
RIDE TO PRIDE AT THE BARN, L.L.C.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

       **THIS MATTER** comes before the Court on: (i) Defendant City of Las Vegas's Motion for

Summary Judgment, filed March 1, 2011 (Doc. 63); (ii) Defendant City of Las Vegas's Motion to

Strike Supplemental Rule 56(d) Affidavit of Marie [sic] Touchet, filed July 5, 2011 (Doc. 116); and

(iii) Defendant Board of County Commissioners of the County of San Miguel's Motion for

Summary Judgment, filed May 25, 2011 (Doc. 86). The Court held hearings on July 6, 2011 and

on July 14, 2011. The primary issues are: (i) whether the Court should strike the supplemental rule

affidavit Plaintiffs Emilio J. Esquibel's and Helen G. Esquibel's counsel, Maria Touchet, filed

pursuant to rule 56(d) of the Federal Rules of Civil Procedure; (ii) whether the Court should grant the City of Las Vegas' motion for summary judgment, because the City of Las Vegas did not construct Arriba Road, the road in San Miguel County, New Mexico on which the accident at issue in this matter occurred, and does not own, maintain, or operate Arriba Road or the railroad crossing in San Miguel County where the accident occurred, and because it did not have a duty to ensure safe ingress and engress to invitees over property not owned or controlled by it; (iii) whether the Court should grant San Miguel County's motion for summary judgment, because it did not owe the Esquibels or the decedent, Michael S. Esquibel, a duty, as it did not construct, own, or maintain Arriba Road; (iv) whether the Court should grant the Esquibels' request that it dismiss Defendant City of Las Vegas, New Mexico's motion for summary judgment as premature and allow more time for discovery; and (v) whether the Court should grant the Esquibels' request and dismiss Defendant San Miguel County's motion for summary judgment as premature and allow more time for discovery.  The Court will deny the City of Las Vegas' motion to strike and will deal with the substance of Ms. Touchet's original rule 56(d) affidavit and supplemental rule 56(d) affidavit regarding the City of Las Vegas in the legal analysis of its Memorandum Opinion and Order.  The Court will grant the City of Las Vegas' motion for summary judgment, because it did not have a duty to maintain the roadway where the collision occurred, and because it did not have a duty to ensure M. Esquibel's safe ingress and egress to and from its waste transfer facility.  The Court will deny the Esquibels' request that it dismiss the City of Las Vegas' motion as premature and allow discovery against the City of Las Vegas to continue, because the Ms. Touchet's rule 56(d) affidavits do not identify with specificity probable facts which are not available and which are relevant to the motion.  The Court will deny San Miguel County's request for summary judgment, because it does not find, as a matter of law, that San Miguel County did not owe a duty to the Esquibels or to M.

Esquibel.  Because the Court will deny San Miguel County's request for summary judgment, it need not address the Esquibels' request that it find the motion for summary judgment premature and allow discovery to continue.

## FACTUAL BACKGROUND

In 1988, the San Miguel Board of County Commissioners held a meeting in which closing Arriba Road was discussed.  See Minutes From September 10, 1988 Regular Meeting of the Board of Commissioners of San Miguel County at 1, filed June 10, 2011 (Doc. 91-2); Plaintiff's Response in Opposition to Defendant San Miguel County's Motion for Summary Judgment ¶ 4, at 7, filed June 10, 2011 (Doc. 91)("Response to San Miguel County's Memo.")(setting forth this fact).  See Reply to Plaintiff's [sic] Response in Opposition to Defendant San Miguel County's Motion for Summary Judgment at 10, filed July 12, 2011 (Doc. 125)("San Miguel County's Reply")(not controverting this fact).

The Esquibels are the parents of M. Esquibel.  See, e.g., Complaint in Intervention for Wrongful Death and Negligence ¶ 2, at 2, filed August 19, 2010 (Doc. 1-2)("Complaint"); Memorandum of Points and Authorities in Support of Defendant Board of County Commissioners of the County of San Miguel's Motion for Summary Judgment ¶ 1, at 2, filed May 25, 2011 (Doc. 87)("San Miguel County's Memo.")(setting forth this fact); Response to San Miguel County's Memo. ¶ 1, at 4 (not controverting this fact).  On January 15, 2009, M. Esquibel, was traveling east on a road leading to railroad crossing DOT NO. 013655C in San Miguel County.  See, e.g., Complaint ¶ 8, at 3; Defendant City of Las Vegas' Motion for Summary Judgment ¶ 1, at 3, filed March 1, 2011 (Doc. 63)("City of Las Vegas' Motion")(setting forth this fact); Plaintiffs' Response in Opposition to Defendant City of Las Vegas' Motion for Summary Judgment at 6, filed March 14, 2011 (Doc. 69)("Response to City of Las Vegas' Motion")(not controverting this fact); San Miguel

County's Memo. ¶ 2, at 2 (setting forth this fact); Response to San Miguel County's Memo. ¶ 2, at 4 (not controverting this fact).  M. Esquibel was on his way to the waste transfer station that the City of Las Vegas owned.  See, e.g., Complaint ¶¶ 11, 13-14, at 3; City of Las Vegas' Motion ¶ 2, at 3 (setting forth this fact); Response to City of Las Vegas' Motion at 6 (not controverting this fact).  At approximately 3:51 p.m. on January 15, 2009, a train owned by Defendant The National Railroad Passenger Company (Amtrak), traveling north on railroad tracks that Defendant Burlington Northern Santa Fe Railway Company (BNSF) owned, collided with the vehicle that M. Esquibel drove. See, e.g., Complaint ¶¶ 8-10, 15-16, 20-21, at 3, 4; City of Las Vegas' Motion ¶ 3, at 3 (setting forth this fact); Response to City of Las Vegas' Motion at 6 (not controverting this fact); San Miguel County's Memo. ¶ 3, at 2 (setting forth this fact); Response to San Miguel County's Memo. ¶ 3, at 4 (not controverting this fact).  This collision resulted in M. Esquibel's death.  See, e.g., Complaint ¶¶ 9, 20, at 3, 4; City of Las Vegas' Motion ¶ 4, at 3 (setting forth this fact); Response to City of Las Vegas' Motion at 6 (not controverting this fact); San Miguel County's Memo. ¶ 3, at 2 (setting forth this fact); Response to San Miguel County's Memo. ¶ 3, at 4 (not controverting this fact).  The collision occurred at the railroad crossing at Arriba Road, which leads directly to the City of Las Vegas' waste transfer station.[1]  See Complaint ¶ 9, at 3; Application at 12, Ex. F; San Miguel

---

[1] In their response, the Esquibels assert: "The railroad crossing leads directly to the City of Las Vegas solid waste transfer station."  Response to City of Las Vegas' Motion ¶ 1, at 7 (citing Application for Solid Waste Transfer Station, filed March 14, 2011 (Doc. 69-5, Ex. F)("Application").  In its reply, the City of Las Vegas argued that the materials rely upon are hearsay.  See Defendant City of Las Vegas's Reply in Further Support of Motion for Summary Judgment at 11-12, filed March 28, 2011 (Doc. 73)("City of Las Vegas' Reply").  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801.  The United States Court of Appeals for the Tenth Circuit has stated courts cannot consider hearsay in deciding a motion for summary judgment.  See Gross v. Burggraf Const. Co., 53 F.3d 1531, 1541 (10th Cir. 1995)("It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment.  Hearsay testimony cannot be considered because [a] third party's

description of [a witness'] supposed testimony is not suitable grist for the summary judgment mill." (internal quotations and citations omitted)).  The Application states:

> All collection vehicles use City, County or State maintained roads.  Also the vehicles use city maintained alleys for collection of solid waste.  The transport trucks will use City and State maintained roads to deliver the solid waste to a [New Mexico Environment Department] permitted landfill facility.  The majority of time the transport trucks will be on Interstate Highway 25.  <u>Attachment F</u> shows primary and alternate routes and contains a copy of a road suitability letter from the NMSHTD.

Application at 12.  The application includes, as exhibit F, a map of the transportation plan for the waste transfer station.  The map shows the railroad crossing leading to the waste transfer station.  This evidence is not offered to prove the truth of the matter asserted -- that "transport trucks will use City and State maintained roads to deliver the solid waste" to the facility, <u>see</u> Application at 12; instead, it is offered to show that the railroad crossing leads directly to the waste transfer station.  <u>See United States v. Emmons</u>, 24 F.3d 1210, 1216-17 (10th Cir. 1994)(addressing the argument that "the alleged map should have been excluded as inadmissible hearsay" and stating that, because the evidence was not offered to prove the truth of the matter asserted -- "that marijuana was indeed growing on Roger's property" -- "the map was plainly admissible for the non-hearsay purpose of demonstrating that Roger had knowledge of the location and quantity of the marijuana plants and of the efforts to treat the ground for their cultivation").  The evidence thus is not hearsay.  <u>See</u> Fed. R. Evid. 801.  Because the evidence is not hearsay, and because the City of Las Vegas has not directed the Court's attention to evidence controverting the asserted fact, the Court will deem the asserted fact admitted.  <u>See</u> D.N.M.LR-Civ. 56.1(b).

The Esquibels also assert: "There can be high volumes of traffic going to and coming from the solid waste transfer station."  Response to City of Las Vegas' Motion ¶ 2, at 8 (citing Electronic Mail Transmission From Henry R. Gonzales to Paul W. Gray (dated January 16, 2009), filed March 14, 2011 (Doc. 69-6)("Jan. 16, 2009 Electronic Mail Transmission")).  The City of Las Vegas asserts that the Jan. 16, 2009 Electronic Mail Transmission is hearsay.  <u>See</u> City of Las Vegas' Reply at 11-12.  The Jan. 16, 2009 Electronic Mail Transmission states: "You are correct, this is the second accident that has occurred at this crossing in the last four months; this crossing leads to the Dump where there can be high volumes of traffic at times."  Gonzales Electronic Mail Transmission at 1.  Because this evidence is offered to prove the truth of the matter asserted, it is hearsay, and the Court cannot consider it in its Memorandum Opinion and Order.  <u>See</u> <u>Argo v. Blue Cross & Blue Shield of Kan., Inc.</u>, 452 F.3d 1193, 1199 (10th Cir. 2006)("Thus, for example, at summary judgment courts should disregard inadmissible hearsay statements . . . as those statements could not be presented at trial in any form.").  The Court thus will not deem this asserted fact admitted.

The Esquibels assert: "The City's solid waste transfer station is the primary traffic generator for the public using the crossing."  Response to City of Las Vegas' Motion ¶ 3, at 8 (citing Electronic Mail Transmission from Paul W. Gray to lyn.hartley@bnsf.com (dated February 6, 2009), filed March 14, 2011 (Doc. 69-7)("Feb. 6, 2009 Electronic Mail Transmission").  The City of Las Vegas objects to the Feb. 6, 2009 Electronic Mail Transmission as hearsay.  <u>See</u> City of Las Vegas' Reply at 11-12.  The Feb. 6, 2009 Electronic Mail Transmission states:

County's Memo. ¶ 4, at 3 (setting forth this fact); Response to San Miguel County's Memo. ¶ 4, at 4-5 (not controverting this fact).

The portion of the road upon which M. Esquibel was traveling when the collision occurred was not located in the City of Las Vegas.  See, e.g., Complaint ¶¶ 8, 16, at 3; Affidavit of Carlos Ortiz ¶ 5, at 2 (executed March 1, 2011), filed March 1, 2011 (Doc. 63-1, Ex. A).  The portion of the road upon which M. Esquibel was traveling when the collision occurred was not constructed by the City of Las Vegas.  See Ortiz Aff. ¶ 5, at 2; Affidavit of Paul W. Gray ¶ 7, at 4 (executed July 14, 2010), filed March 1, 2011 (Doc. 63-1, Ex. B).  The portion of the road upon which M. Esquibel was traveling when the collision occurred was not owned, maintained, or operated by the City of Las Vegas.  See Complaint ¶ 12, at 3; Ortiz Aff. ¶¶ 5-6, at 2; Gray Aff. ¶¶ 6-7, at 2.  The portion of the road upon which M. Esquibel was traveling when the collision occurred is owned by Defendant New Mexico Department of Transportation ("NMDOT").  See Gray Aff. ¶ 7, at 2.  The City of Las Vegas has never had an agreement with the New Mexico State Highway Department or NMDOT[2] to participate in maintenance of the portion of the road upon which M. Esquibel was traveling when the collision occurred.  See Ortiz Aff. ¶ 6, at 2.  The City of Las Vegas has never received any

------

Part of the problem is that there does not seem to be a clear cut answer as to who is responsible for the cross road easement.  Our records indicate that Arriba Road belongs to San Miguel County but they have indicated that they vacated the road many years ago.  The City of Las Vegas has their Solid Waste Transfer Station "on the other side of the tracks" and is the primary traffic generator for folks using the crossing.

Feb. 6, 2009 Electronic Mail Transmission at 1.  Because this evidence is offered to prove the truth of the matter asserted, it is hearsay, and the Court will not deem the asserted fact admitted.  See Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d at 1199.

[2] Although it appears to the Court that NMDOT encompasses the New Mexico State Highway Department, and that they are a single entity, the parties treat the two as separate entities.  For purposes of consistency, the Court will treat the two as separate entities.

funding from the New Mexico State Highway Department or NMDOT to maintain the portion of the road upon which M. Esquibel was traveling when the collision occurred.[3]  See Ortiz Aff. ¶ 7, at 2.

In deciding where to place the waste transfer station, City of Las Vegas councilors acknowledged a detriment about the "Franken site," because the City of Las Vegas "would have an elevated water tank and the railroad crossing," and noted that at the "Industrial Park all utilities are

_____

[3] The Esquibels did not controvert the facts set forth in the City of Las Vegas' asserted facts in paragraphs six through ten.  Instead, the Esquibels stated: "Unknown at this time.  Plaintiff has not had the opportunity to conduct discovery on this issue."  Response at 7.  D.N.M.LR–Civ. 56.1(b) states:

> The Memorandum must set out a concise statement of all of the material facts as to which the movant contends no genuine issue exists. The facts must be numbered and must refer with particularity to those portions of the record upon which the movant relies.
>
> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist. Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed. All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted. The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion. Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies.
>
> The Reply must contain a concise statement of those facts set forth in the Response which the movant disputes or to which the movant asserts an objection. Each fact must be lettered, must refer with particularity to those portions of the record upon which the movant relies, and must state the letter of the non-movant's fact. All material facts set forth in the Response will be deemed undisputed unless specifically controverted.

D.N.M.LR-Civ. 56.1(b).  Because the Esquibels have not directed the Court's attention to evidence which specifically controverts the City of Las Vegas' asserted facts, the Court will deem these facts admitted.  The Court will address the Esquibels' argument that they have not had sufficient opportunity to conduct discovery in its legal analysis.

in place . . . and there is immediate access that would not cause liability."[4]  Minutes at 6.

In applying to the State for a permit for the waste transfer station, the City of Las Vegas had to certify that the routes used to gain access to the waste transfer station were suitable. See Application at 12.  The City of Las Vegas, in its Application, stated that it was attaching a road suitability letter from the New Mexico State Highway and Transportation Department, yet no such letter was attached.  See Application, Ex. F.  The map attached to the Application shows that the only access to and from the facility is over the railroad tracks.[5]  See Application, Ex. F.  The City

---

[4] The Esquibels assert: "In deciding where to place the solid waste transfer station, the City Councilors acknowledged that a negative about the proposed site and the one that exposed the City to potential 'liability' was that it required access over the railroad tracks."  Response to City of Las Vegas' Motion ¶ 4, at 8 (citing Minutes of the Regular Meeting of the City Council of the City of Las Vegas, New Mexico Held Wednesday, September 15, 1999 in the City Council Chamber at 6, filed March 14, 2011 (Doc. 69-4)("Minutes")).  The City of Las Vegas objects to the Minutes as hearsay.  See City of Las Vegas' Reply at 11-12.  The Minutes state:

> Mr. Garcia recommended Council consider one of the following two sites which include the Franken property site and the Industrial Park site . . . .  He said that the only detriment at the Franken site is that the City would have an elevated water tank and the rail road crossing.  At the Industrial Park all utilities are in place . . . and there is immediate access that would not cause liability.

Minutes at 6.  The evidence is not offered to prove the truth of the matters that Garcia asserted at the hearing; instead, it is offered to show knowledge or notice that the site could create liability issues.  The Court will consider the evidence and deem the asserted fact admitted for the limited purpose of notice.

The Esquibels assert: "Despite the negatives identified and potential liability related, the Franken Site was chosen as the site for the solid waste transfer station."  Response to City of Las Vegas' Motion ¶ 5, at 8 (citing Application).  The City of Las Vegas objects to the Application as hearsay.  See City of Las Vegas' Reply at 11-12.  The Application is an application for a waste transfer station on the Franken site.  The evidence is offered to prove the truth of the matter asserted, because it is offered to prove that the Franken site was chosen as the site for the waste transfer station.  Because the evidence is offered for the truth of the matter asserted, it is hearsay, and the Court will not deem the Esquibels' assertion admitted.

[5] The Esquibels assert:

> In applying to the State for a permit for the solid waste transfer station, the City had

---

-8-

of Las Vegas acknowledged that the facility would be bordered by the railroad tracks.[6]  <u>See</u>

_____

> to certify that the routes used to gain access to the waste transfer station were
> suitable.  The City stated that it was attaching a road suitability letter from the
> NMSHTD to the application, yet no such letter was attached.  The map that is
> attached as Exhibit F shows that the only access to and from the facility is over the
> railroad tracks.

Response ¶ 6, at 8 (citing Application).  The City of Las Vegas objects to the Application as hearsay.
<u>See</u> City of Las Vegas' Reply at 11-12.  The Application contains a section regarding "the routes
that will be used by waste vehicles and the suitability of roads and bridges involved," in which it
states that the transport trucks will use "City and State maintained roads to deliver solid waste" and
that, most of the time, the transport trucks will be on Interstate 25.  Application at 12.  The
Application also states that "<u>Attachment F</u> . . . contains a copy of a road suitability letter."
Application at 12.  The Esquibels do not offer the Application as evidence of the truth of the matter
asserted; instead they offer it to demonstrate that the City of Las Vegas had to certify the routes used
to gain access, that the City of Las Vegas did not attach a road suitability letter, and that the map
shows that the only access to and from the facility is over the railroad tracks.  The Court will thus
deem the Esquibels' asserted facts admitted.

   [6] The Esquibels assert: "In applying to the State for a permit for the solid waste transfer
station, the City was required to locate and operate the facility in a manner that does not create a
potential hazard to public health.  The City acknowledged that the facility would be bordered by the
railroad tracks."  Response to City of Las Vegas' Motion ¶ 7, at 8 (citing Application).  The City
of Las Vegas objects to the Application as hearsay.  <u>See</u> City of Las Vegas' Reply at 11-12.  The
Application states:

> <u>All solid waste facility owners and operators shall:</u> . . . <u>locate and operate the
> facility in a manner that does not cause a public nuisance or create a potential hazard
> to public health, welfare or the environment;</u>

> The facility will be located between a warehouse on the north, ranchland on
> the east and south and railroad tracks and highway 25 on the west.

Application at 18 (emphasis in original).  The evidence is not offered to prove that the facility was
bordered by railroad tracks; instead, it is offered to prove what the City of Las Vegas knew and
acknowledged that the facility was bordered by railroad tracks.  This evidence is thus not hearsay,
and the Court will thus deem the Esquibels' asserted fact that the City acknowledged the facility
would be bordered by railroad tracks admitted.  The evidence is, however, offered to prove that, in
applying for a permit for the solid-waste transfer station, the City of Las Vegas was required to
locate and operate the facility in a manner that does not create a potential hazard.  Because the
evidence is offered for the truth of the matter asserted, it is hearsay, and the Court will not deem the
Esquibels' assertion that, in applying to the State, the City of Las Vegas was required to locate and
operate the facility in a manner that did not create a potential hazard to public health, admitted.

-9-

Application at 18.[7]

_____

The Esquibels also assert: "The City of Las Vegas would not claim responsibility for the road even though the City's Solid Waste Station is accessed via this route. Following two fatalities at his crossing, personnel from the City of Las Vegas met with other entities to discuss the crossing." Response to City of Las Vegas' Motion ¶¶ 9-12, at 9 (citing Letter from Paul W. Gray to the Honorable Pete Campos (dated February 4, 2009), filed March 14, 2011 (Doc. 69-8)("Feb. 4, 2009 Letter")). The Feb. 4, 2009 Letter states:

> As I am sure you are aware, there have been two fatalities at this intersection in the past few months (September '08 and January '09). Personnel from the Department of Transportation, State Police, Public Regulation Commissioner Jerome Block and PRC Staff, City of Las Vegas and San Miguel County as well as interested private citizens met in Las Vegas on January 28, 2009 to discuss this issue.
>
> . . . .
>
> It was the Department's understanding that Arriba Road belongs to San Miguel County however they have denied that it is on their inventory. Similarly, the City of Las Vegas does not claim ownership of the road even though the City's Solid Waste Station is accessed via this route indicating that it is outside of municipal limits.
>
> The Department of Transportation has very limited jurisdiction at this location since neither the cross road nor rail road currently belong to us. Certainly all agencies involved have liability concerns which may be why there is reluctance to claim ownership or maintenance responsibility.

Gray Letter at 1. Because the evidence is offered for the truth of the matter asserted, it is hearsay, and the Court will not deem the Esquibels' assertions admitted.

[7] The Esquibels assert that:

At the time of the accident in which Fred Stark was killed, the intersection at Arriba Road had no audio or visual signalization or dynamic barricades that would serve to give the motorist notice of oncoming train traffic. The railroad runs parallel to State Road 250 (Airport Road). The only advance warning offered to motorists are the advisory signage on State Road 250 and the "cross buck" railroad crossing signage at the intersection itself. There were no stops [sic] signs or pavement markings at this location.

Response to San Miguel County's Memo. ¶ 1, at 6 (citing Letter from Paul W. Gray to the Honorable Pete Campos (dated February 4, 2009), filed June 10, 2011 (Doc. 91-3)("Feb. 4, 2009 Letter")); Response to Las Vegas' Motion ¶ 8, at 9 (citing Feb. 4, 2009 Letter). San Miguel County

asserts that the letter is unauthenticated and inadmissible hearsay.  <u>See</u> San Miguel County's Reply at 6.  The City of Las Vegas asserts that the Feb. 4, 2009 Letter is hearsay.  <u>See</u> City of Las Vegas' Reply at 11-12.

The United States Court of Appeals for the Tenth Circuit has stated: "We do not require an affidavit to authenticate every document submitted for consideration at summary judgment."  <u>Law Co., Inc. v. Mohawk Const. & Supply Co ., Inc</u>., 577 F.3d 1164, 1170 (10th Cir.2009). As the Tenth Circuit has stated:

> Because evidence must be admissible to be considered on summary judgment, the proper inquiry here is under Federal Rule of Evidence 901: "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

<u>Law Co., Inc. v. Mohawk Const. & Supply Co., Inc.</u>, 577 F.3d at 1170 (quoting Fed. R. Evid. 901(a)).  Rule 901 provides several illustrations of authentication or identification conforming to the rule's requirements, including: "Distinctive characteristics and the like. Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances," and "Public records or reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed . . . , or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept." Fed. R. Evid. 901(b)(4), (7).

The letter is on letterhead from the NMDOT.  The recipient's name and address typed at the top of the letter, and the recipient's name, aligns with the person to whom the letter is addressed. The subject line aligns with the subject matter of the letter.  The Court thus believes there is sufficient evidence to demonstrate that the letter is what the Esquibels are asserting it is.  <u>See</u> Fed. R. Evid. 901(b).  The letter states:

> As I am sure you are aware, there have been two fatalities at th[e] intersection [of Arriba Road and the Burlington Northern Santa Fe Railroad] in the past few months . . . .  Personnel from the Department of Transportation, State Police, Public Regulation Commissioner Jerome Block and PRC Staff, City of Las Vegas and San Miguel County as well as interested private citizens met in Las Vegas on January 28, 2009 to discuss this issue.
>
> At this time, the intersection does not have any audio or visual signalization or dynamic barricades that would serve to give motorist notice of oncoming train traffic.  The rail road runs parallel to State Road 250 (Airport Road).  The only advance warning offered to motorists are the advisory signage on State Road 250 and the "cross buck" railroad crossing signage at the intersection itself.  There are no stops [sic] signs or pavement markings at this location.

Feb. 4, 2009 Letter at 1.  Because the letter is offered to prove the truth of the matter asserted

therein, it is hearsay, and the Court will not deem the Esquibels' asserted fact admitted.

The Esquibels also assert: "Prior to the collision that killed Michael Esquibel, no entity took responsibility for inspecting or maintaining Arriba Road. . . .  All agencies involved have liability concerns, which may be why there is a reluctance to claim ownership or maintenance responsibility." Response to City of Las Vegas' Motion ¶¶ 9, 11, at 9 (citing Feb. 4, 2009 Letter); Response to San Miguel County's Memo. ¶¶ 2-3 (citing Feb. 4, 2009 Letter and Exhibits 1-7). Instead of setting forth a broad citation to all the exhibits supporting their summary judgment motion in support of an asserted fact, the Esquibels should direct the Court's attention to specific evidence in the record.  It is not the Court's job to scour the Esquibels' exhibits to determine which exhibits may support the Esquibels' asserted facts.  See Gonzales v. City of Albuquerque, No. CIV 09–0520 JB/RLP, 2011 WL 1114830, at *24 (D.N.M. Mar. 23, 2011)("[I]t is not the Court's responsibility to scour the record for evidence to defeat [a] Motion for Summary Judgment . . . ." (citing Hauff v. Petterson, No. 1:09-cv00639, 2010 WL 2978060, at *9 (D.N.M. July 22, 2010)(Kelly, J.)("Nor is it the court's function to 'scour the record in search of evidence to defeat a motion for summary judgment.'" (quoting Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996))). Exhibit 1 is a newspaper article from the Las Vegas Optic News, entitled No Agency Taking Responsibility.  See Lee Elner, No Agency Taking Responsibility, Las Vegas Optic News, Apr. 23, 2009, filed June 10, 2011 (Doc. 91-1).  It thus appears that the Esquibels are relying on this newspaper article in support of their asserted facts.  The newspaper states: "[M]ost officials believe [the railroad crossing is] someone else's job. . . .  Neither the city of Las Vegas, the County of San Miguel, the state Department of Transportation, Amtrak or Burlington Northern Santa Fe, which owns the tracks, are accepting responsibility for upgrading safety equipment at the site." Newspaper Article at 1-2. Because the Esquibels offer the newspaper article for the truth of the matter asserted therein, the newspaper article is hearsay.  San Miguel County and the City of Las Vegas argue that the Feb. 4, 2009 Letter is also hearsay.  San Miguel County further argues that the newspaper article is not admissible evidence, because it is not authenticated and is hearsay.   The Feb. 4, 2009 Letter states:

As I am sure you are aware, there have been two fatalities at this intersection in the past few months (September '08 and January '09).  Personnel from the Department of Transportation, State Police, Public Regulation Commissioner Jerome Block and PRC Staff, City of Las Vegas and San Miguel County as well as interested private citizens met in Las Vegas on January 28, 2009 to discuss this issue.

. . . .

It was the Department's understanding that Arriba Road belongs to San Miguel County however they have denied that it is on their inventory.  Similarly, the City of Las Vegas does not claim ownership of the road even though the City's Solid Waste Station is accessed via this route indicating that it is outside of municipal limits.

The Department of Transportation has very limited jurisdiction at this

location since neither the cross road nor rail road currently belong to us. Certainly
all agencies involved have liability concerns which may be why there is reluctance
to claim ownership or maintenance responsibility.

Feb. 4, 2009 Letter at 1. The letter is hearsay, because its contents are offered to prove the truth of
the matter asserted therein. The Court thus will not deem the Esquibels' assertions admitted.

The Esquibels assert: "Because no entity would take ownership or responsibility for the road,
following the deaths of Fred Stark and Michael Esquibel, the New Mexico state police '[i]n the
interest of public safety' ordered the NMDOT to post stop signs and paint clear stop lines at the rail
crossing." Response to the City of Las Vegas' Motion ¶ 13, at 9 (citing Letter from Captain Toby
Dolan to Paul W. Gray (dated February 12, 2009), filed March 14, 2011 (Doc. 69-9)("Feb. 12, 2009
Letter"); Response to San Miguel County's Memo. ¶ 18, at 9 (citing Dolan Letter). The City of Las
Vegas objects to the Feb. 12, 2009 Letter as hearsay. See City of Las Vegas' Reply at 11-12. San
Miguel County objects to the Feb. 12, 2009 Letter as unauthenticated and containing hearsay.
See San Miguel County's Reply at 18. The Feb. 12, 2009 Letter states:

> I am unsure who has the ultimate ownership or responsibility to erect traffic control
> at the rail crossing. In the interest of public safety, I instruct the NMDOT to post
> stop signs and pain clear stop lines at this rail crossing pursuant to state statue 66-7-
> 342. This is an interim solution or at least an attempt to prevent injuries and the
> further loss of lives until a more permanent solution comes to fruition.

Dolan Letter at 1. Because the evidence is offered to prove the truth of the matter asserted, it is
hearsay. The Court thus will not deem this asserted fact admitted.

The Esquibels assert: "Acting under authority granted by the NM State Police as a 'public
safety concern,' the NMDOT sought concurrence from the from the City on the placement of stop
signs and pavement markings." Response to City of Las Vegas' Motion ¶ 14, at 10 (citing Electronic
Mail Transmission From Paul W. Gray to calosortiz@ci.las-vegas.nm.us at 1 (dated February 12,
2009), filed March 14, 2011 (Doc. 69-10)("Feb. 12, 2009 Electronic Mail Transmission"). The City
of Las Vegas objects to the electronic mail transmission as hearsay. See City of Las Vegas' Reply
at 11-12. The Feb. 12, 2009 Electronic Mail Transmission states:

> Carlos, pursuant to our telephone conversation, I am requesting a letter from the City
> of Las Vegas. NMDOT desires to place stop signs and pavement markings at the
> Arriba Road at grade rail crossing as an interim solution to the recent crashes that
> have occurred there. We are doing this under authority granted by NM State Police
> as a public safety concern. Since this effort will have some impact you Solid Waste
> Department's operations, I am requesting a letter from the City that conveys your
> concurrence on the placement of the signs and pavement markings. We have
> coordinated this to be done Wednesday of next week and it would be helpful to have
> such a letter in hand prior to commencement of the work.

Feb. 12, 2009 Electronic Mail Transmission at 1. Because the evidence is offered for the truth of

The Esquibels allege that the portion of Arriba Road, as it approaches the railroad tracks, was owned by either San Miguel County or the State.  See, e.g., Complaint ¶¶ 12, 15, at 3; San Miguel County's Memo. ¶ 5, at 3 (setting forth this fact); Response to San Miguel County's Memo. ¶ 5, at 5 (not controverting this fact).  The Esquibels further allege that San Miguel County had a duty to maintain Arriba Road in a safe manner.  See, e.g., Complaint ¶ 52, at 9; San Miguel County's Memo. ¶ 6, at 3 (setting forth this fact); Response to San Miguel County's Memo. ¶ 6, at 5 (not controverting this fact).  The Esquibels also allege that San Miguel County failed to maintain Arriba Road in a safe manner, by failing to install and to place a stop sign on eastbound Arriba Road at a point where vehicles, and M. Esquibel specifically, would have a clear view of the tracks.  See, e.g.,

_____

the matter asserted, it is hearsay.  The Court thus will not deem the Esquibels' asserted fact admitted.

     The Esquibels assert: "The City of Las Vegas concurred with the NMDOT plan to place stop signs and pavement markings at the Arriba Road crossing.  The City offered help and support in implementing the safety plan at the crossing."  Response to City of Las Vegas' Motion ¶ 15, at 10 (citing Letter From Tony E. Marquez, Jr. to Paul W. Gray at 1 (dated February 12, 2009), filed March 14, 2011 (Doc. 69-11)("Marquez Feb. 12, 2009 Letter").  The City of Las Vegas objects to the letter as hearsay.  See City of Las Vegas' Reply at 11-12.  The Marquez Feb. 12, 2009 Letter states:

> Pursuant to your correspondence of February 12, 2009, the City of Las Vegas concurs with the NMDOT interim plan to place stop signs and pavement markings at the Arriba Road at grade rail crossing; per authority granted by the New Mexico State Police as a public safety concern.
>
> On behalf of the City of Las Vegas, we commend the NMDOT for addressing this critical safety issue, and encourage that other railroad crossings along the corridor be researched for the placement of corresponding safety measures; as so may be required.
>
> Should you require additional support in implementing this safety task, please advise this office at your convenience.

Feb. 12, 2009 Letter at 1.  Because the evidence is offered for the truth of the matter asserted, it is hearsay.  The Court thus will not deem the Esquibels' asserted fact admitted.

Complaint ¶ 53, at 9; San Miguel County's Memo. ¶ 7, at 3 (setting forth this fact); Response to San Miguel County's Memo. ¶ 7, at 5 (not controverting this fact). San Miguel County failed to remove or cause to be removed sight distance obstructions to vehicles approaching the railroad crossing on Arriba Road. See, e.g., Complaint ¶ 54, at 9; San Miguel County's Memo. ¶ 8, at 3 (setting forth this fact); Response to San Miguel County's Memo. ¶ 8, at 5 (not controverting this fact). San Miguel County failed to close Arriba Road, even though it approached an unreasonably and extra hazardous crossing. See, e.g., Complaint ¶ 55, at 9; San Miguel County's Memo. ¶ 9, at 3 (setting forth this fact); Response to San Miguel County's Memo. ¶ 9, at 5 (not controverting this fact). San Miguel County failed to install adequate active signals, warnings, and cross arms at the railroad crossing at Arriba Road and the railroad tracks that BNSF Railway owns. See, e.g., Complaint ¶ 56, at 10; San Miguel County's Memo. ¶ 10, at 3 (setting forth this fact); Response to San Miguel County's Memo. ¶ 10, at 5 (not controverting this fact). M. Esquibel's line of sight in the direction of the oncoming Amtrak train was blocked by vegetation emanating from the property immediately adjacent to the rail bed, such that he began to approach and cross the tracks without knowing that the Amtrak train was approaching the railroad crossing at a high rate of speed. See Complaint ¶ 17, at 4; San Miguel County's Memo. ¶ 11, at 3-4 (setting forth this fact); Response to San Miguel County's Memo. ¶ 11, at 5 (not controverting this fact). The Esquibels allege that M. Esquibel's death and their loss of consortium was a direct and proximate result of San Miguel County's failure to maintain the road. See Complaint ¶¶ 57-58, at 10; San Miguel County's Memo. ¶ 12, at 4 (setting forth this fact); Response to San Miguel County's Memo. ¶ 12, at 5 (not controverting this fact).

H. Esquibel does not know whether San Miguel County owned or operated Arriba Road at the time of the January 15, 2009 accident. See Deposition of Helen Esquibel at 154:5-20 (taken May 18, 2011), filed May 25, 2011 (Doc. 87-3); San Miguel County's Memo. ¶ 13, at 4 (setting

forth this fact); Response to San Miguel County's Memo. ¶ 13, at 6 (not controverting this fact).

H. Esquibel does not know whether San Miguel County had a duty to maintain Arriba Road; she

knows only that someone had to be responsible for maintaining the road.[8]  See H. Esquibel Depo.

at  155:1-7; San Miguel County's Memo. ¶ 14, at 4 (setting forth this fact); Response to San Miguel

County's Memo. ¶ 14, at 6 (not controverting this fact).[9]

       At the time of the accident involving M. Esquibel, there was no agreement between San

Miguel County and NMDOT, or any other entity, whereby San Miguel County had assumed the

responsibility to maintain Arriba Road.  See Affidavit  of Les Montoya ¶ 6, at 1 (sworn May 18,

2011), filed May 25, 2011 (Doc. 87-2).  At the time of the accident, San Miguel County was not in

receipt of monies from NMDOT, or from any other entity for the purpose of maintaining Arriba

Road.  See Montoya Aff. ¶ 7, at 2.[10]

_____

       [8] It is unknown what the City of Las Vegas' position on the assertions in this paragraph,
because the Esquibels did not make them in response to the City of Las Vegas' motion. On the other
hand, other than the facts that the Court notes are contentions, it does not appear that there is any
dispute about the statements.

       [9] The Esquibels do not dispute the facts that San Miguel County asserted in paragraphs 13
and 14; instead, they state only that the asserted facts are irrelevant to the present motions.  Because
the Esquibels have not directed the Court's attention to evidence controverting the asserted facts,
the Court will deem the asserted facts admitted.  See D.N.M.LR-Civ. 56.1(b).  The Court will
address the relevancy of the asserted facts in its legal analysis.

       [10] San Miguel County asserts:

       In fact, the Defendant Board did not own, construct, maintain or have any
       operational duties whatsoever toward Arriba Road, at the time of the accident
       involving Plaintiffs' decedent.  There was no agreement between the Defendant
       Board and the New Mexico Department of Transportation, or any other entity,
       whereby the Defendant Board had assumed the responsibility to maintain Arriba
       Road, at the time of the accident involving Plaintiffs' decedent.  At the time of the
       accident involving Plaintiffs' decedent, the Defendant Board was not in receipt of
       monies from the New Mexico Department of Transportation, or any other entity, for
       the purpose of maintaining Arriba Road.

-16-

On February 4, 2009, the NMDOT sent a letter to State Senator Pete Campos of District 8, which covers Guadalupe County, Mora County, San Miguel County, Santa Fe County, and Torrance County, explaining that NMDOT believed that Arriba Road was county owned.[11]  See Feb. 4, 2009

---

San Miguel County Memo. ¶ 15-16, at 4 (citations omitted).  The Esquibels dispute these asserted facts, stating only "*See* Plaintiff's Additional Material Facts, *supra*."  Response to San Miguel County's Memo. ¶¶ 15-17, at 6.  The Esquibels do not direct the Court's attention to evidence directly controverting San Miguel County's assertions that, at the time of the accident, there was no agreement between it and NMDOT or any other entity, whereby it assumed the responsibility to maintain Arriba Road at the time of the accident, and that, at the time of the accident, San Miguel County was not in receipt of money from NMDOT or from any other entity for the purpose of maintaining Arriba Road.  The Court will thus deem these assertions admitted.  See D.N.M.LR-Civ. 56.1(b).  The Esquibels direct the Court's attention, however, to the fact that San Miguel County can produce no evidence as to whom the road was abandoned or that it was abandoned in favor of any entity.  NMSA 1978, § 67-2-6 states:

> Property or property rights acquired by purchase or condemnation by the state or any commission, department, bureau, agency or political subdivision of the state for public road, street or highway purposes shall not revert until such property or property rights are vacated or abandoned by formal written declaration of vacation or abandonment which has been duly declared by the state or any commission, department, institution, bureau, agency or political subdivision of the state in whom the property or property right has vested. The right to abandon and vacate shall exist regardless of whether the public road, street or highway was created by the legislature or otherwise.

NMSA 1978, § 67-2-6 (emphasis added).  The Esquibels also directed the Court's attention to evidence that no employee or agent of San Miguel has been responsible for inspecting or maintaining Arriba Road since 1988.  See Defendant San Miguel County's Supplemental Answers to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, Answer to Interrogatory No. 4, at 4, filed June 10, 2011 (Doc. 91-6).  The Esquibels have thus directed the Court's attention to evidence disputing the asserted fact that San Miguel County did not own, construct, maintain, or have any operational duties whatsoever towards Arriba Road.  The Court will thus not deem San Miguel County's asserted fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[11] The Esquibels assert: "On February 4, 2009, the NMDOT sent a letter to Senator Campos explaining that NMDOT believes that Arriba Road is county owned."  Response to San Miguel County's Memo. ¶ 6, at 7 (citing Feb. 4, 2009 Letter).  San Miguel County objects to the letter as unauthenticated and hearsay.  The letter is on letterhead from the Department of Transportation.  The recipient's name and address typed at the top of the letter, and the recipient's name aligns with the person to whom the letter is addressed.  The subject line aligns with the subject matter of the letter.  The Court thus believes there is sufficient evidence to demonstrate that the letter is what the

Letter at 1.[12]  A February 5, 2009 NMDOT electronic mail transmission explains that Paul Montoya

informed NMDOT that Arriba Road was county owned.  See Electronic Mail Transmission From

John R. Whatley to Paul W. Gray (dated February 5, 2003), filed June 10, 2011 (Doc. 91-4).[13]

_____

Esquibels are asserting it is.  See Fed. R. Evid. 901(b).  The letter states: "It was the Department's understanding that Arriba Road belongs to San Miguel County however they have denied that it is on their inventory."  Feb. 4, 2009 Letter at 1.  The letter is not hearsay, as it offered to show a belief -- it is not offered as evidence that San Miguel County owns Arriba Road.  The Court will thus deem the asserted fact admitted for the limited purpose of showing what NMDOT believed.

[12] The Esquibels assert: "Arriba Road was never closed as evidenced by the fact that Michael Esquibel was killed on this road twenty-one years later."  Response to San Miguel County's Memo. ¶ 5, at 7.  San Miguel County disputes this asserted fact, stating that the Esquibels cite "no evidence, admissible or otherwise, for this statement[;] [t]herefore, it should not be considered."  San Miguel County's Reply at 10.  Because the Esquibels did not refer with particularity to the portions of the record upon which they rely, the Court will not deem the Esquibels' asserted fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[13] The Esquibels assert: "A February 5, 2009 NMDOT email explains that Paul Montoya informed NMDOT that Arriba Road was county owned."  Response to San Miguel County's Memo. ¶ 7, at 7 (citing Electronic Mail Transmission From John R. Whatley to Paul W. Gray (dated February 5, 2003), filed June 10, 2011 (Doc. 91-4).  San Miguel County disputes this asserted fact, stating that the electronic mail transmission is unauthenticated and unsworn.  The electronic mail transmission gives the full names of John R. Whatley, NMDOT, and Paul W. Gray, NMDOT, as sender and recipient.  These names are also in the body of the electronic mail transmission.  The subject line is "Arriba Rd Crossing," which aligns with the subject matter of the electronic mail transmission, in which Whatley tells Gray that "Montoya is the one that told Henry that Arriba Rd. was county."  Feb. 5, 2009 Electronic Mail Transmission at 1.  This evidence is thus sufficient to authenticate the electronic mail transmission.  See United States v. Siddiqui, 235 F.3d 1318, 1322-23 (11th Cir.2000)(considering the following to determine whether an electronic mail transmission was properly authenticated: (i) that the address of the electronic mail transmission was consistent with electronic mail transmissions the defendant previously sent; (ii) that the context of the electronic mail transmission "shows the author of the email to have been someone who would have known the very details of the defendant's conduct;" and (iii) that the electronic mail transmissions referred to the author using the defendant's "nickname"), cert. denied, 533 U.S. 940 (2001); United States v. Safavian, 435 F. Supp. 2d 36, 40-41 (D.D.C. 2006)(finding that the electronic mail messages were properly authenticated where, among other things, "most of the email addresses themselves contain the name of the person connected to the address;" the emails "contain the name of the sender or recipient in the bodies of the email, in the signature blocks at the end of the email, in the 'To:' and 'From:' headings, and by the signature of the sender;" and the contents of the emails "authenticate them as being from the purported sender and to the purported recipient, containing as they do discussions of various[,] identifiable matters").  Because the Court finds that there is sufficient

-18-

In its answers to interrogatories, San Miguel County states: "San Miguel . . . abandoned Arriba Road in 1988.  No employee or agent of San Miguel, therefore has been responsible for inspecting or maintaining Arriba Road since 1988."[14]   Defendant San Miguel County's Supplemental Answers to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, Answer to Interrogatory No. 4, at 4, filed June 10, 2011 (Doc. 91-6).  San Miguel County abandoned Arriba Road in 1988.  See Defendant San Miguel County's Supplemental Answers to Interrogatories, Answer to Interrogatory No. 4, at 4; Response to San Miguel County's Memo. ¶ 10, at 8 (setting forth this fact); San Miguel County's Reply (not controverting this fact).[15]

San Miguel County can produce no evidence of what was done to ensure that the public was

---

evidence that the electronic mail transmissions are what the Esquibels contend that they are, and because San Miguel County does not direct the Court's attention to evidence disputing the Esquibels' asserted fact, the Court will deem the Esquibels' asserted fact admitted.  See D.N.M.LR-Civ. 56.1(b).

[14] The Esquibels assert: "Up until 1988 San Miguel County was the entity that was inspecting and maintaining this road.  Up until 1988 San Miguel County assumed responsibility for inspecting and maintaining this road."  Response to San Miguel County's Memo. ¶¶ 8-9, at 7 (citing Defendant San Miguel County's Supplemental Answers to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, Answer to Interrogatory No. 4, at 4, filed June 10, 2011 (Doc. 91-6)).  San Miguel County states its answers "do not state that prior to 1988, . . . Defendant Board 'was the entity that was inspecting and maintaining this road.'"  San Miguel County's Reply at 12.  San Miguel, in its answers to interrogatories, stated: "'San Miguel . . . abandoned Arriba Road in 1988.  No employee or agent of San Miguel, therefore has been responsible for inspecting or maintaining Arriba Road since 1988."  Defendant San Miguel County's Supplemental Answers to Interrogatories, Answer to Interrogatory No. 4, at 4.  Because the evidence to which the Esquibels' directed the Court's attention does not fully support their asserted fact, the Court will limit the Esquibels' asserted fact to one supported by the evidence on which they rely.

[15] While the City of Las Vegas did not address this assertion or evidence in its motion for summary judgment, because the assertions were not made or raised in response to its motion, there is no reason to believe the City of Las Vegas disputes the assertions.  The City of Las Vegas did not dispute the assertions at the hearing on San Miguel County's motion, in which the City of Las Vegas activity participated.

-19-

safe during its abandonment.[16]  See Electronic Mail Transmission From Les Montoya to Paul W.

Gray (February 12, 2009), filed June 10, 2011 (Doc. 91-5); Defendant San Miguel County's

Supplemental Answers to Interrogatories, Answer to Interrogatory No. 4, at 4.  San Miguel County

can produce no evidence to whom this road was abandoned, and can produce no evidence to show

if the road was abandoned in favor of any person or entity.  See  Defendant San Miguel County's

Supplemental Answers to Interrogatories, Answer to Interrogatory No. 4, at 4; Response to San

Miguel County's Memo. ¶ 12, at 8 (setting forth this fact); San Miguel County's Reply at 14 (not

controverting this fact).[17]

---

[16] The Esquibels assert: "The County can produce no evidence of this 'abandonment' and what was done to ensure that public [sic] was safe during its during its 'abandonment.'" Response to San Miguel County Memo. ¶ 11, at 8 (citing See Electronic Mail Transmission From Les Montoya to Paul W. Gray (February 12, 2009), filed June 10, 2011 (Doc. 91-5); Defendant San Miguel County's Supplemental Answers to Interrogatories, Answer to Interrogatory No. 4, at 4). San Miguel County argues that the electronic mail transmission is an unauthenticated, unsworn document and that its answers to interrogatories refute the assertion that San Miguel County can produce no evidence of the abandonment.  Because the answers to interrogatories state that San Miguel County abandoned Arriba Road in 1988, there is evidence of the abandonment.  San Miguel County has thus directed the Court's attention to evidence controverting the Esquibels' assertion that San Miguel County can produce no evidence of its abandonment.  See D.N.M.LR-Civ. 56.1(b).  The electronic mail transmission contains the names of the sender and recipient in the body of the electronic mail transmission, and the subject line of the electronic mail transmission is congruent with the substance of the electronic mail transmission.  See United States v. Safavian, 435 F. Supp. 2d at 40-41.  The Court thus finds that there is sufficient evidence that the electronic mail transmissions are what the Esquibels contend that they are.  The electronic mail transmission states that San Miguel County would not object to NMDOT placing stop signs and markings near the railroad crossing.  This is thus evidence that there were no steps to ensure the public's safety, and San Miguel County has not directed the Court's attention to evidence regarding what was done to ensure the public was safe during its abandonment.  The Court will thus deem this portion of the Esquibels' assertion admitted.  See D.N.M.LR-Civ. 56.1(b).

[17] The Esquibels assert:

The County ensured that Arriba Road would remain unmaintained and unsafe by assigning "[n]o employee or agent of San Miguel . . . responsible for inspecting or maintaining Rio Arriba Road since 1988."  The County ensured that the crossing would remain unmaintained and unsafe by assigning "[n]o employee or agent of San

No employee or agent of San Miguel . . . has been responsible for inspecting or maintaining Arriba Road since 1988. . . .  San Miguel conducted no traffic counts, speed surveys or hazard evaluations for Arriba road between 1988 and the present. San Miguel has no record demonstrating it conducted any traffic counts, speed surveys or hazard evaluations between 186 and 1988.

Defendant San Miguel County's Supplemental Answers to Interrogatories, Answer to Interrogatory

No. 4, 7, at 4, 6.[18]

---

Miguel . . . responsible for inspecting and/or maintaining traffic control devices and signage on Arriba Road as it approaches the crossing in question."

Response to San Miguel County's Memo. ¶¶ 13-14, at 8 (citing Defendant San Miguel County's Supplemental Answers to Interrogatories, Answer to Interrogatory No. 4, at 4).  San Miguel County states: "It is an undisputed material fact that no employee or agent of Defendant Board has been responsible for inspecting or maintaining Arriba Road since 1988[;] [h]owever, there is absolutely no admissible evidence to support [the assertion] that '[t]he County ensured that Arriba Road would remain unmaintained and unsafe."  San Miguel County's Reply at 15.  San Miguel County further states that there is no admissible evidence that it ensured the crossing would remain unmaintained and unsafe by failing to assign someone to those tasks.  San Miguel County's answers to interrogatories state: "San Miguel . . . abandoned Arriba Road in 1988.  No employee or agent of San Miguel, therefore has been responsible for inspecting or maintaining Arriba Road since 1988."  Defendant San Miguel County's Supplemental Answers to Interrogatories, Answer to Interrogatory No. 4, at 4.  Because the evidence to which the Esquibels' cite does not go far enough to support their assertions that San Miguel County ensured Arriba Road and the crossing would remain unmaintained and unsafe by assigning none of its employees to inspect or maintain the road since 1988, the Court will not deem the Esquibels' assertion admitted.

[18] The Esquibels assert: "No County employee inspected or maintained Arriba Road since 1988.  No County employee inspected or maintained the roadway or traffic control devices on Arriba Road since 1988.  No traffic counts, speed surveys, and or hazard evaluations occurred on Arriba Road since 1988."  Response to San Miguel County's Memo. ¶¶ 15-17, at 8-9 (citing Defendant San Miguel County's Supplemental Answers to Interrogatories, Answer to Interrogatory No. 4, 7, at 4, 6).  San Miguel County states that the Esquibels misrepresent its statements in its answers to interrogatories.  In its answers to interrogatories, San Miguel County states:

San Miguel . . . states it abandoned Arriba Road in 1988.  No employee or agent of San Miguel, therefore, has been responsible for maintaining Arriba Road since 1988.

. . . .

As such, San Miguel conducted no traffic counts, speed surveys or hazard

In February 2009, after M. Esquibel's death, the County wrote the NMDOT and informed

them that they "would not object to the state following up to place stop signs and markings at the

Arriba Road."[19]  Electronic Mail Transmission From Les Montoya to Paul W. Gray at 1 (dated

February 12, 2009), filed June 10, 2011 (Doc. 91-5); Response to San Miguel County's Memo. ¶ 19,

at 9 (setting forth this fact); San Miguel County's Reply (not controverting this fact).

## PROCEDURAL BACKGROUND

On February 12, 2009, Plaintiff Victoria Stark-Romero filed a Complaint for Wrongful

Death and Negligence against BNSF Railway and Defendants National Railroad Passenger

Company d/b/a Amtrak, BNSF, City of Las Vegas, San Miguel County, the New Mexico

Department of Transportation, and Ride to Pride at the Barn, LLC, in the Fourth Judicial District

Court in San Miguel County, New Mexico.  See Stark-Romero v. Nat'l R.R. Passenger Co., No. CIV

09-0295 MV/RLP, Complaint for Wrongful Death and Negligence, filed March 26, 2009 (Doc. 1-1).

On March 26, 2009, the Defendants in that action removed Stark-Romero v. National Railroad

Passenger Co. to the United States District Court for the District of New Mexico.  See Stark-Romero

v. Nat'l R.R. Passenger Co., No. CIV 09-0295 MV/RLP, Notice of Removal, filed March 26, 2009

(Doc. 1)("First Notice of Removal").  Stark-Romero filed a Motion to Remand on April 20, 2009,

---

evaluations for Arriba road between 1988 and the present.  San Miguel has no record
demonstrating it conducted any traffic counts, speed surveys or hazard evaluations
between 1986 and 1988.

Defendant San Miguel County's Supplemental Answers to Interrogatories, Answer to Interrogatory
No. 4, 7, at 4, 6.  The evidence does not fully support the Esquibels' assertions; the Court will thus
limit the Esquibels' asserted facts to the evidence in the record.

[19] San Miguel County states that it "does not dispute" this asserted fact, but argues that the
fact is immaterial.  Because San Miguel County does not dispute the fact, the Court will deem the
asserted fact admitted.  It will deal with the fact's materiality in its legal analysis.

alleging that the First Notice of Removal was procedurally defective, because it did not establish that all Defendants served at the time of removal consented to the removal, given that San Miguel County did not sign the notice of removal or file an independent consent to removal.  See Stark-Romero v. Nat'l R.R. Passenger Co., No. 09-cv-0295-MV-RLP, Motion to Remand and Memorandum in Support Thereof at 4-5, filed April 20, 2009 (Doc. 14)("Stark-Romero's Motion to Remand").  On March 31, 2010, the Honorable Martha Vázquez, then-Chief Judge,[20] issued a Memorandum Opinion and Order, granting Stark-Romero's Motion to Remand.  See Stark-Romero v. Nat'l R.R. Passenger Co., No. CIV 09-0295 MV/RLP, Memorandum Opinion and Order Granting Motion to Remand, filed March 31, 2010 (Doc. 96)("Mar. 31, 2010 MOO").

On July 19, 2010, E. Esquibel and H. Esquibel filed their Complaint in Intervention for Wrongful Death and Negligence in the Fourth Judicial District, County of San Miguel, in which they intervened in the action Stark-Romero filed.  See Complaint in Intervention for Wrongful Death and Negligence in the Fourth Judicial District, filed August 19, 2010 (Doc. 1-2).  On August 19, 2010, BNSF Railway and Amtrak removed the action.  See Doc. 1.

Stark-Romero and the Esquibels filed the Plaintiffs' Motion to Remand and Memorandum in Support Thereof, filed September 9, 2010 (Doc. 19), and the Motion Requesting that this Matter be Returned to the Previously Assigned Judge, filed October 10, 2010 (Doc. 32), which requested the Court to transfer the matter to Judge Vázquez.  On January 12, 2011, the Court filed a Memorandum Opinion and Order, denying the request to transfer the case to Judge Vázquez, remanding Stark-Romero's claims, but denying the Esquibels' request that the Court remand their claims.  See Doc. 53.

_____

[20] The Honorable Bruce Black, Chief United States District Judge for the District of New Mexico, became Chief Judge on September 1, 2010.

On March 1, 2011, the City of Las Vegas filed Defendant City of Las Vegas' Motion for Summary Judgment.  See Doc. 63.  The City of Las Vegas argues that it is entitled to judgment on the Esquibels' Complaint against it, because it did not construct, and does not own, maintain, or operate, the road or the railroad crossing where the accident occurred, and because business owners and proprietors do not, as a matter of law, have a duty to ensure safe ingress and egress to their invitees over property not owned or controlled by the owner or proprietor.  The City of Las Vegas argues that it is immune from liability pursuant to the New Mexico Tort Claims Act, ("NMTCA"), NMSA 1978, §§ 41-4-2 through 41-4-30.

On March 14, 2011, the Esquibels filed the Plaintiffs' Response in Opposition to Defendant City of Las Vegas' Motion for Summary Judgment.  See Doc. 69.  The Esquibels argue that the City of Las Vegas had a duty to provide its business invitees with a safe means of ingress and egress. The Esquibels also argue that the City of Las Vegas exercised control over maintenance of the road leading up to the crossing.  The Esquibels further assert that they have presented more than sufficient evidence with which to overcome a motion for summary judgment; however, they state that, should the Court seek additional evidence, the Court should dismiss the City of Las Vegas' motion as premature.  They argue that the facts necessary to refute the City of Las Vegas' claims are in the City of Las Vegas' sole possession.  The Esquibels thus ask the Court to deny the City of Las Vegas' motion or, in the alternative, to continue the motion until the parties have had a reasonable opportunity to conduct discovery.

On March 14, 2011, the Esquibels filed the Rule 56F Affidavit of Maria E. Touchet (executed March 14, 2011)(Doc. 70).  In her affidavit, Ms. Touchet states that facts necessary to refute the City of Las Vegas' motion are in its sole possession, and that the Esquibels have sent written discovery requests and have requested depositions of the City of Las Vegas' employees, but,

as of that date, the City of Las Vegas had not responded to the written discovery and had not allowed any of the requested depositions. She states that the Esquibels intend to use discovery tools to reveal information necessary to fully oppose the City of Las Vegas' motion, such as when the waste transfer station was first considered, what consideration was given to ingress and egress to the facility from the time it was first considered, and whether the City of Las Vegas developed the waste transfer facility in conjunction with another entity.

On March 28, 2011, the City of Las Vegas filed Defendant City of Las Vegas's Reply in Further Support of Motion for Summary Judgment. See Doc. 73. The City of Las Vegas argues that it has established that it does not own Rio Arriba Road. The City of Las Vegas also argues that it is immune from liability under NMTCA. The City of Las Vegas asserts that the Esquibels' allegedly disputed facts are not material. It states that the Court should deny the Esquibels' request that it allow them to continue discovery.

On May 25, 2011, San Miguel County filed Defendant Board of County Commissioners of the County of San Miguel's Motion for Summary Judgment. See Doc. 86. The same day, San Miguel County filed its Memorandum of Points and Authorities in Support of Defendant Board of County Commissioners of the County of San Miguel's Motion for Summary Judgment. See Doc. 87. San Miguel County argues that the undisputed material facts are that it neither owned, constructed, or maintained the road on which M. Esquibel was traveling as he approached the railroad crossing where the collision occurred. It argues that it thus owed no duty to M. Esquibel to maintain the road and that, because it owed no duty, the Esquibels' claim that it was negligent fails.

On June 10, 2011, the Esquibels filed the Plaintiff's Response in Opposition to Defendant San Miguel County's Motion for Summary Judgment. See Doc. 91. The Esquibels argue that San

Case 6:10-cv-00778-JB-KBM   Document 140   Filed 08/08/11   Page 26 of 66

Miguel County had a duty to construct, maintain, or regulate Arriba Road in such a manner as to protect the traveling public from foreseeable harm.  They also argue that they have presented more than sufficient evidence with which to overcome a motion for summary judgment, but state that, should the Court seek additional evidence, the Esquibels ask the Court to dismiss San Miguel County's motion as premature under rule 56(d).

Also on June 10, 2011, the Esquibels filed the Rule 56(d) Affidavit of Maria E. Touchet. See Doc. 92. Ms. Touchet states that the stage of discovery in this case renders a determination of whether facts are undisputed premature, because the Esquibels have not had the opportunity to discover information essential to their opposition.  She states that the Esquibels have presented sufficient evidence with which to overcome a motion for summary judgment, but states that, should the Court seek additional evidence, the Esquibels ask the Court to dismiss San Miguel County's motion as premature.  She states that San Miguel County has prevented the Esquibels from conducting necessary and essential discovery, and thus they will have been denied to opportunity in which to fully respond to San Miguel County's motion.

On July 5, 2011, the Esquibels filed the Supplemental Rule 56(D) Affidavit of Maria E. Touchet (sworn July 5, 2011).  See Doc. 111 ("Supplemental Affidavit").  In her affidavit, Ms. Touchet reiterates the information contained in her earlier affidavit regarding the City of Las Vegas. She also adds the statement: "Additionally, Plaintiffs are entitled to inspect the entire 'Arriba Road Railroad Crossing File' identified in the 'xc' line of the February 12, 2009 letter from Mayor Marquez produced in this case as NMDOT 00021-22, attached hereto as Exhibit A."  Supplemental Affidavit ¶ 11, at 4.  Ms. Touchet also states that the "Plaintiffs have requested production of this file, but as of today's date, the file has not yet been produced."  Supplemental Affidavit ¶ 12, at 4.

On July 5, 2011, the City of Las Vegas filed the Defendant City of Las Vegas's Motion to

Strike Supplemental Rule 56(D) Affidavit of Maria Touchet.  See Doc. 116.  The City of Las Vegas argues that there is nothing in the Federal Rules of Civil Procedure that would permit, without prior consent of the Court, the filing of "supplemental" affidavits under rule 56(d) after the briefing on the underlying motion for summary judgment has been completed.  The City of Las Vegas argues that the Court should strike the affidavit, because it was neither filed on time nor approved by the Court.  The City of Las Vegas argues that the Esquibels now have the file in question and state that its existence provides no support for delaying a decision on its motion for summary judgment.

On July 12, 2011, San Miguel County filed its Reply to Plaintiff's Response in Opposition to Defendant San Miguel County's Motion for Summary Judgment.  See Doc. 125.  San Miguel County argues that it has carried its burden of establishing a prima-facie case that there is no genuine issue of material fact and that it is entitled to the entry of summary judgment in its favor, as a matter of law.  It argues that the Esquibels have not demonstrated that there is a genuine issue of material fact.  It also argues that the additional discovery the Esquibels seek will not create a genuine issue of material fact.

At the hearing on July 6, 2011, the Esquibels stated that the purpose of the supplemental affidavit was to point out that there was another file, which they had requested.  They stated that they believe that the Federal Rules of Civil Procedure allow the Court to consider evidence up until the time of a hearing on a summary judgment motion and thus argue that the supplemental affidavit was not untimely.  They state, however, that, for all intents and purposes, the supplemental affidavit is moot, because the City of Las Vegas has produced the file.  The Esquibels stated that they did not wish to file a written response to the motion and that they did not oppose the Court ruling on the motion based on oral arguments.

At the hearing on July 14, 2011, the Court told the Esquibels:

THE COURT: . . . It seems to me that your -- the motion against the City got a lot worse -- excuse me -- your defense against the City or your position with the City [of Las Vegas] got a lot worse now with the County coming in and saying what they did. I mean at best for the City you know they've been telling us all along we never had anything to do with this road and now we've got maybe the County having a little something to do with the road, the State saying we've had it all along, they've abandoned and all that sort of stuff, but I don't see the City's fingerprints on this at all. I hate to be rearguing the motion we had last week, but I do have now a lot more information and I've thought about it a little bit longer. What is it -- What is it that, other than wanting to do discovery, I'm not seeing any evidence against the City. Your thoughts?

MS. TOUCHET: Well, Your Honor, I was going . . . I think you had directed a question to me and we Mr. Ortiz answered it but I will answer it, as well. And we have never alleged an ownership interest in the road by the City. That's not.

. . . .

MS. TOUCHET: For the purposes of their motion, in our Complaint we didn't allege that they had an ownership interest. It is questionable --

THE COURT: Your argument is this other waiver of sovereign immunity that they own a piece of pro[perty] and there's -- there's a hand guard on that that is either coming from or in the property that it's the road going to the piece of property? That's your only theory against the City correct.

MS. TOUCHET: Correct correct and that hasn't changed since we argued it to you last week. That's correct.

THE COURT: Okay.

MS. TOUCHET: I think that they are different. I mean, the claim against [San Miguel] County is a roadway maintenance claim. The claim against the City [of Las Vegas] not to reargue that was the building and the roadway. But it has not been alleged and we wouldn't say that there is any indication that there was any ownership by the City.

Transcript of Hearing at 42:3-43:17 (taken July 14, 2011)(Court, Touchet)("Tr.").[21]

The Court asked NMDOT: "So when the City and the County come in and say, the State [of

---

[21] The Court's citations to the transcript are to the Court Reporter's original, unedited version. Any final version may have slightly different line or page numbers.

New Mexico] says it's their property, they own it, whatever liability they have it, you don't disagree

with that?  Is that correct . . . ."  Tr. at 27:22-25 (Court).  NMDOT responded that the Court's

statement was correct.  <u>See</u> Tr. at 28:1 (Creecy).  The Court asked San Miguel County: "Do you

think if I allowed discovery against the County, are you basically telling me there is no institutional

memory there, so I'm not going to find out, and neither is Ms. [Touchet] going to find out a lot more

about this issue?"  Tr. at 21:21-24 (Court)  San Miguel County responded: "In terms of ownership

of the road, to my knowledge, there may not be a great deal more to learn."  Tr. at 21:25-22:1

(Waters).  The Court asked San Miguel County about Arriba Road.

> THE COURT:  Tell me the procedure for a county to take a road -- let me ask this first of all.  Do you agree that before 1988 the r[o]ad was yours, that the county owned operated maintained the road before that date?

> MS. WATERS:  Your Honor, actually, unfortunately, we do not have a clear understanding of that.  And at this time I could certainly make further inquiry on that point, but to date I have not been able to make a clear determination as to what, if anything, was happening regarding ownership and maintenance of the road prior to 1988. . . .

> THE COURT:  The reason I ask and press you on this point, it seems to me difficult for the county to say you abandoned the road if you didn't ever have the road.

> MS. WATERS:  I agree, Your Honor.

> THE COURT:  It seems to me if you're going to come in and say we abandoned that road you also have to concede th[at] you had the road before.  You were the person that was responsible for it.  What do you think about that sort of as an assumption?

> MS. WATERS:  Your Honor, I agree completely.

> . . . .

> THE COURT:  Let me back you up a second before we go to that point.  Let me ask you, can for purposes of this  motion, your motion, can I assume that -- can I assume that the County had -- whether it's a true point or not from a factual standpoint, can I assume for purposes of this motion the County had the road, maintained the road before 1988?

MS. WATERS:  For the sake of argument for purposes of this motion, yes, Your Honor.

Tr. at 5:23-6:17 (Court, Waters).

### LEGAL STANDARD FOR MOTIONS FOR SUMMARY JUDGMENT

Rule 56(c) states that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c)(2).  The movant bears the initial burden of "show[ing] that there is an absence of evidence to support the nonmoving party's case."  Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)(internal quotation marks omitted).  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record], together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.")(internal quotation marks omitted).  Once the movant meets this burden, rule 56(e) requires the non-moving party to designate specific facts showing that there is a genuine issue for trial.  See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.")(internal quotation marks omitted).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof."  Applied Genetics Int'l, Inc. v. First Affiliated Secs., Inc., 912 F.2d 1238, 1241 (10th Cir.

1990).  Rule 56 provides that "an opposing party may not rely merely on allegations or denials in

its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set

out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  It is not enough for

the party opposing a properly supported motion for summary judgment to "rest on mere allegations

or denials of his [or her] pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See

Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States,

622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment

motion is made, the opposing party may not rest on the allegations contained in his complaint, but

must respond with specific facts showing the existence of a genuine factual issue to be tried.'"

(citation omitted)).  Nor can a party "avoid summary judgment by repeating conclusory opinions,

allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No.

07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed. R. Civ. P. 56(e) and Argo v.

Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)).  "In responding to

a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on

suspicion and may not escape summary judgment in the mere hope that something will turn up at

trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853

F.2d 789, 794 (10th Cir. 1988)).

        To survive summary judgment, genuine factual issues must exist that "can be resolved only

by a finder of fact because they may reasonably be resolved in favor of either party."  Anderson v.

Liberty Lobby, Inc., 477 U.S. at 250.  A mere "scintilla" of evidence will not avoid summary

judgment.  Vitkus v. Beatrice Co., 11 F.3d at 1539.  Rather, there must be sufficient evidence on

which the fact-finder could reasonably find for the nonmoving party.  See Anderson v. Liberty

Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improv. Co. v. Munson, 81 U.S. 442,

448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539.  "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (internal citations omitted).  Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles.  First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249.  Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party.  See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999).  Third, the court cannot decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

## RELEVANT LAW REGARDING THE NMTCA

The NMTCA provides governmental entities with immunity from tort liability unless the NMTCA specifically waives that immunity.  See NMSA 1978, § 41-4-4 ("A governmental entity and any public employee while acting within the scope of duty are granted immunity from liability for any tort except as waived by the New Mexico Religious Freedom Restoration Act and by Sections 41-4-5 through 41-4-12 NMSA 1978."); Weinstein v. City of Santa Fe, 121 N.M. 646, 649, 916 P.2d 1313, 1316 (1996); Abalos v. Bernalillo County District Attorney's Office, 105 N.M. 554, 557, 734 P.2d 794, 797 (Ct. App.), cert. quashed, 106 N.M. 35, 738 P.2d 907 (1987).  The NMTCA waives immunity "for damages resulting from bodily injury, wrongful death or property damage

caused by the negligence of public employees while acting within the scope of their duties during the construction, and in subsequent maintenance of any . . . roadway."  NMSA 1978, § 41-4-11A. The NMTCA also waives immunity for "damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings."  NMSA 1978, § 41-4-6.  "Liability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty."  NMSA 1978, § 41-4-2A.  See Eckhardt v. Charter Hosp. of Albuquerque, Inc., 124 N.M. 549, 559, 953 P.2d 722, 732 (Ct. App. 1997)("Plaintiff's negligence claims must be premised on a duty that Charter owed to Plaintiff, and it is for the court to determine as a matter of law whether such a duty exists." (internal citation omitted)); Johnson v. Sch. Bd. of Albuquerque Pub. Sch. Sys., 114 N.M. 750, 845 P.2d 844 (Ct. App. 1993)("Duty or responsibility is not provided in the Tort Claim Act; it must be found outside the Act either at common law or by statute.").  "Where there is no duty, there can be no negligence."  Sw. Pub. Serv. Co. v. Artesia Alfalfa Growers' Ass'n, 67 N.M. 108, 117, 353 P.2d 62, 68 (1960)(citation omitted).  See Herrera v. Quality Pontiac, 134 N.M. 43, 47-48, 73 P.3d 181, 185-86 (2003)("Generally, a negligence claim requires the existence of a duty from a defendant  to a plaintiff, breach of that duty, which is typically based upon a standard of reasonable care, and the breach being a proximate cause and cause in fact of the plaintiff's damages."); Bierner v. City of Truth or Consequences, 136 N.M. 197, 201, 96 P.3d 322, 326 (Ct. App. 2004)("Consequently, the waiver of immunity in Section 41-4-4(A) of the TCA does not apply to the City because it had no duty upon which negligence could be premised.").

## ANALYSIS

The Court will deny the City of Las Vegas' motion to strike and will deal with the substance of Ms. Touchet's original rule 56(d) affidavit and supplemental rule 56(d) affidavit regarding the City of Las Vegas in the legal analysis of its Memorandum Opinion and Order.  The Court will grant the City of Las Vegas' motion for summary judgment, because it did not have a duty to maintain the roadway where the collision occurred, and because it did not have a duty to ensure M. Esquibel's safe ingress and egress to and from its waste transfer facility.  The Court will deny the Esquibels' request that it dismiss the City of Las Vegas' motion as premature and allow discovery against the City of Las Vegas to continue, because the Ms. Touchet's rule 56(d) affidavits do not identify with specificity probable facts which are not available and which are relevant to the motion.  The Court will deny San Miguel County's request for summary judgment, because it does not find, as a matter of law, that San Miguel County did not owe a duty to the Esquibels or to M. Esquibel. Because the Court will deny San Miguel County's request for summary judgment, it need not address the Esquibels' request that it find the motion for summary judgment premature and allow discovery to continue.

## I.   THE COURT WILL DENY THE CITY OF LAS VEGAS' MOTION TO STRIKE.

The Court will deny the City of Las Vegas' motion to strike the supplemental affidavit.  The City of Las Vegas argues that Ms. Touchet's supplemental rule 56(d) affidavit was neither filed on time nor approved by the Court.  The only difference between Ms. Touchet's original affidavit and supplemental affidavit was the addition of two paragraphs which pertain to an Arriba Road railroad crossing file, which the City of Las Vegas has now located and produced to the Esquibels.  Ms. Touchet stated at the hearing on July 6, 2011, that her supplemental affidavit is now moot.  "Motions to strike . . . are generally a disfavored and drastic remedy."  Begay v. Pub. Serv. Co. of N.M., 710

F. Supp. 2d 1161, 1185 (D.N.M. 2010)(Browning, J.)(quoting Sierra Club v. Tri-State Generation & Transmission Ass'n, Inc., 173 F.R.D. 275, 285 (D.Colo. 1997)).  The Court will deny the City of Las Vegas' motion to strike the supplemental affidavit, because, although the supplemental affidavit was not timely filed, Ms. Touchet has represented that the additional material in the supplemental affidavit is now moot.  The Court will consider the material in the supplemental affidavit and the material in the original affidavit in determining whether it should dismiss the City of Las Vegas' motion as premature and allow more discovery.  Cf. Conagra Trade Group, Inc. v. Fuel Exploration, LLC, 636 F. Supp. 2d 1166 (D. Colo. 2009)("The Court denies ConAgra's request to "strike" the affidavit because, although the affidavit contains some impermissible, self-serving statements, the Court has excluded offending material in making its ruling." (citation omitted)).

## II.    THE COURT WILL GRANT THE CITY OF LAS VEGAS' MOTION FOR SUMMARY JUDGMENT.

The City of Las Vegas argues that, under the NMTCA, it is immune from liability for any tort, except as waived in the NMTCA.  It argues that the negligent maintenance waiver in NMSA 1978, § 41-4-11A does not apply to it, because it is undisputed that the portion of the road upon which M. Esquibel was traveling was not in the City of Las Vegas, because the City of Las Vegas did not construct, does not own, maintain or operate that portion of the road, and because the City of Las Vegas does not own or operate the railroad tracks that cross the road where the collision occurred.  The City of Las Vegas also argues that it did not have a duty to ensure M. Esquibel's safe ingress and egress to and from the waste transfer facility.  It argues that, because the Esquibels have not alleged that the alleged unsafe condition of the road and crossing arose on or from the waste transfer facility, the NMTCA's waiver of immunity for the City of Las Vegas' operation and maintenance of the facility is inapplicable.

The Esquibels argue that the City of Las Vegas had a duty to provide its business invitees with a safe means of ingress and egress.  The Esquibels argue that the physical boundaries of the land do not limit a landowner's duty to avoid creating or permitting an unsafe condition or activity on its premises.  The Esquibels argue that M. Esquibel was clearly a foreseeable direct victim and that the City of Las Vegas owed a duty to him.  They argue that there are questions of fact whether the City of Las Vegas breached that duty, because it was aware of the safety risk to the public and potential liability exposure related to locating its facility next to the railroad tracks, and because the Esquibels do not have information about what the City of Las Vegas did to investigate and to mitigate the risk to the traveling public.  The Esquibels also argue that there are questions of fact whether the City of Las Vegas exercised control over the maintenance of the road leading up to the crossing and of the crossing.

> **A.  THE CITY OF LAS VEGAS DID NOT HAVE A DUTY TO MAINTAIN THE ROADWAY WHERE THE COLLISION OCCURRED, THUS THE WAIVER OF IMMUNITY IN NMSA 1978, § 41-4-11A DOES NOT APPLY.**

The NMTCA waives immunity "for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties during the construction, and in subsequent maintenance of any . . . roadway."  NMSA 1978, § 41-4-11A.  "Liability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty."  NMSA 1978, § 41-4-2A.  "Where there is no duty, there can be no negligence."  Sw. Pub. Serv. Co. v. Artesia Alfalfa Growers' Ass'n, 67 N.M. at 117, 353 P.2d at 68 (citation omitted).

In Bierner v. City of Truth or Consequences, the Court of Appeals of New Mexico addressed "whether the trial court erred in granting summary judgment in favor of Defendant City of Truth or

Consequences." 136 N.M. at 198, 96 P.3d at 323.  A Domino's Pizza delivery truck was parked in

a restaurant's lot on a road in Truth or Consequences, New Mexico.  See 136 N.M. at 198, 96 P.3d

at 323.

> The unattended truck rolled down the lot's steep incline, crossed the road, entered the
> property of Cortez Gas Company (gas company), and struck a propane gas storage
> tank on the property. The tank exploded; the resulting fire damaged residential
> property in the area. Plaintiffs, who lived in the surrounding area, filed their first
> amended complaint against the gas company, Domino's Pizza, the State Highway
> and Transportation Department (Highway Department), and the City.

136 N.M. at 198, 96 P.3d at 323.  The City of Truth of Consequences moved for summary judgment,

arguing that it "neither constructed, owned, nor maintained the road; that the City had no agreement

with the Highway Department to participate in maintenance of the road; that installation of the

barrier was not a maintenance function; and that immunity was not waived under the TCA."  136

N.M. at 198, 96 P.3d at 323.  The district court dismissed all claims against the City of Truth of

Consequences.  See 136 N.M. at 198, 96 P.3d at 323.  The Court of Appeals of New Mexico stated

"[w]hether the City had either a statutory or a common law duty to maintain the road is dispositive

on the issue of immunity."  136 N.M. at 200, 96 P.3d at 325.

> The City's position was that it had no duty to maintain the road; therefore, it
> was the City's burden to show that no material fact existed regarding this issue.  The
> City met its burden with the following evidence: (1) an affidavit from the
> superintendent of the City's Street Department that the road is part of the state
> highway system and that the City did not construct the road, did not own the road,
> did not maintain the road, had no agreement with the Highway Department to
> assume responsibility for maintaining the road, and received no funding from the
> Highway Department to maintain the road and (2) the Highway Department's answer
> to interrogatories, acknowledging that the Highway Department constructed and
> maintained the road.

> The City's having established its prima facie case, the burden shifted to
> Plaintiffs to show a material issue of fact existed.  In their initial response opposing
> summary judgment, Plaintiffs reiterated the allegation made in their amended
> complaint: that the City maintained the road. Plaintiffs, however, failed to provide
> any evidence to support the claim.  Instead, in their supplemental response, Plaintiffs

appeared to step away from their allegation that the City actually maintained the road; their sole argument was that the City had a duty to maintain it. This duty to maintain, they asserted, stemmed from the City's common law duty to protect the public from the alleged dangerous condition the City knew about or from the alleged dangerous condition the City created. Plaintiffs contended that the duty to protect the public from a known dangerous condition created, in turn, a duty for the City to contact the Highway Department engineer about the condition. Citing <u>Fireman's Fund Insurance Co. v. Tucker</u>, 95 N.M. 56, 58, 618 P.2d 894, 896 (Ct.App.1980), Plaintiffs further suggested that given the broad construction of the term "maintenance," "there is simply nothing precluding the City from having a duty to maintain [the road]."

The evidence that accompanied Plaintiffs' supplemental response pertained only to the City's notice of the alleged dangerous condition. To prove notice, they submitted (1) depositions by two police officers who had investigated two incidents, one in 1997 and one in 2000, of vehicles rolling across the road into the gas company's property; (2) a deposition by the City's fire chief, who had temporarily halted development of the gas company's storage facility, due to his concern that the facility could affect an arroyo, making it difficult to evacuate elderly persons from a nearby trailer park; (3) a deposition by the owner of the gas company, a former city commissioner, who had heard of five to ten incidents of vehicles rolling down the incline; and (4) a deposition by another former commissioner, who admitted he knew of the dangerous condition. The City challenges some of this evidence and denies that it raises an issue of duty in any event.

Plaintiffs did not submit evidence showing that the City created the condition; instead, they merely concluded, without discussion or support, that the evidence of notice implied the creation of the danger. We note that the trial court found that the City does not issue permits for the licensing or placement of propane gas facilities; Plaintiffs did not contest this finding.

136 N.M. at 200-01, 96 P.3d at 325-26 (internal citations omitted).  The Court of Appeals of New Mexico disagreed with the plaintiffs that the facts they raised were sufficient to withstand summary judgment.  <u>See</u> 136 N.M. at 201, 96 P.3d at 326.

The City provided evidence that it did not construct, own, or maintain the road. Plaintiffs, instead of rebutting that evidence, raised facts based on their argument that the City owed a general duty to protect the public from a known dangerous condition. Yet, they do not cite to any case law in which a duty to maintain another government entity's road stems from a duty to protect the public from a known dangerous condition. On the contrary, in the cases relied upon by Plaintiffs, the government entities being sued all owned the roads in question.

-38-

Plaintiffs provide no facts to support their assertion that the City has jurisdiction to install traffic control devices or otherwise make improvements on the road. Plaintiffs seem to argue that the general duty to protect the public creates the duty to maintain a road. New Mexico law is otherwise. It predicates the responsibility to maintain on jurisdiction, and it is that responsibility that gives rise to the duty to protect the public.

Plaintiffs cite to Moore v. State, 95 N.M. 300, 301, 621 P.2d 517, 518 (Ct.App.1980), and Largo v. Atchison, Topeka and Santa Fe Railway Co., 2002-NMCA-021, ¶¶ 13, 15-16, 131 N.M. 621, 41 P.3d 347, and insist that the City could have shared responsibility with the Highway Department for maintaining the road. Whether or not the City could assist the Highway Department is not the point. In Moore, there was no question that the City of Albuquerque and the Highway Department jointly maintained the highway where the accident occurred; both entities had entered into a memorandum agreement regarding construction on that particular highway. Moore, 95 N.M. at 301, 621 P.2d at 518. Clearly, governmental entities can share maintenance responsibilities by agreement. The undisputed evidence in this case, however, is that the City did not share the responsibility. Moore does not hold that a city is required to share this responsibility. In Largo, we held that the legislature had not abrogated the defendant railroad's common law duty to place warnings at dangerous railroad crossings, despite a state statute giving authority to government entities to install warning devices. Largo, 2002-NMCA-021, ¶ 15, 131 N.M. 621, 41 P.3d 347. While Largo involved the duty of parties to warn, the defendant was not a governmental entity, and the waiver of government immunity that we discuss later was not at issue. In this case, there is no question that the Highway Department had the sole responsibility to maintain Third Street in the vicinity where the accident occurred. Consequently, the waiver of immunity in Section 41-4-4(A) of the TCA does not apply to the City because it had no duty upon which negligence could be premised.

From this undisputed evidence, we conclude and hold that the City did not have a duty to maintain the road, as contemplated under the waiver of immunity in the statute. The negligent maintenance waiver, therefore, is inapplicable. See Noriega v. Stahmann Farms, Inc., 113 N.M. 441, 444, 827 P.2d 156, 159 (Ct.App.1992) (noting that the plaintiff's evidence did not support a claim that the government entity owned the road and that there was therefore no basis for the negligent maintenance waiver of immunity); Johnson, 114 N.M. at 755, 845 P.2d at 849 (holding that because the government entity had no responsibility for maintaining the crosswalk, the street maintenance waiver was inapplicable). Accordingly, we reject Plaintiffs' argument that material facts exist as to whether immunity was waived for the City's actions.

Plaintiffs allege various theories, some not in the context of the actual maintenance of the road, pursuant to which the City should have done one thing or another that Plaintiffs claim would have prevented the accident. Plaintiffs claim that

-39-

(1) the City's notice of the alleged dangerous condition gave rise to a duty to notify the Highway Department to remedy the situation, (2) the City was negligent in approving the propane facility, (3) the City could have erected barriers or curbs in the parking lot to prevent vehicles from leaving it or signs in the parking lot to warn motorists to engage their parking brakes, (4) the City could have erected barriers or curbs on either side of the street to prevent vehicles from leaving the parking lot and entering the propane business, and (5) the City could have altered the ingress into and egress from the parking lot so that vehicles would not leave the parking lot and enter the propane business. To the extent that items (4) and (5) involve maintenance of the road, we hold that the City had no duty for the reasons expressed above. As for items (1) through (3), they do not even involve maintenance of the road in the context of this case, and there is therefore no applicable waiver of immunity for them. Similarly, items (4) and (5) appear to involve design, and Section 41-4-11(B) grants immunity for design issues. Importantly, too, the accident for which Plaintiffs are suing was not an accident that happened in the road. In effect, Plaintiffs are arguing that the presence of a condition on one side of the road, which might spill over to the other side of the road, creates a duty on the part of a state entity to alter the road and areas off the road so that the road becomes a barrier to those conditions. We do not believe that the waiver of immunity for negligence in the maintenance of roads was intended to reach as far as Plaintiffs want it to reach in this case.

None of Plaintiffs' contentions affects our determination that there is no duty under the undisputed facts. For all of these reasons, we also reject Plaintiffs' argument that material facts exist as to whether immunity was waived.

136 N.M. at 201-02, 96 P.3d at 326-27 (internal citations omitted).

The City of Las Vegas did not have a duty to maintain Arriba Road. The portion of the road upon which M. Esquibel was traveling when the collision occurred was not located in the City of Las Vegas. See, e.g., Complaint ¶¶ 8, 16, at 3; Ortiz Aff. ¶ 5, at 2. The portion of the road upon which M. Esquibel was traveling when the collision occurred was not constructed by the City of Las Vegas. See Ortiz Aff. ¶ 5, at 2; Gray Aff. ¶ 7, at 4. The portion of the road upon which M. Esquibel was traveling when the collision occurred was not owned, maintained, or operated by the City of Las Vegas. See Complaint ¶ 12, at 3; Ortiz Aff. ¶¶ 5-6, at 2; Gray Aff. ¶¶ 6-7, at 2. The portion of the road upon which M. Esquibel was traveling when the collision occurred is owned by NMDOT. See Gray Aff. ¶ 7, at 2. Unlike San Miguel County, which in its answers to interrogatories stated: "San

Miguel . . . abandoned Arriba Road in 1988.  No employee or agent of San Miguel, therefore has been responsible for inspecting or maintaining Arriba Road since 1988," Answers to Plaintiff's First Set of Interrogatories and Requests for Production of Documents, Answer to Interrogatory No. 4, at 4, there is no evidence that the City of Las Vegas ever maintained or inspected Arriba Road.  The City of Las Vegas has never had an agreement with the New Mexico State Highway Department or the NMDOT to participate in maintenance of the portion of the road upon which M. Esquibel was traveling when the collision occurred.  See Ortiz Aff. ¶ 6, at 2.[22]  The City of Las Vegas has never received any funding from the New Mexico State Highway Department or the NMDOT to maintain the portion of the road upon which M. Esquibel was traveling when the collision occurred. See Ortiz Aff. ¶ 7, at 2.  As in Bierner v. City of Truth or Consequences, where the Court of Appeals of New Mexico held that the City of Truth or Consequences did not have a duty to maintain the road, as contemplated under the waiver of immunity in NMSA 1978, § 41-4-11, when the City of Truth or Consequences provided evidence that it did not construct, own, or maintain the road and the plaintiffs did not rebut that evidence, the undisputed facts establish that the City of Las Vegas did not construct, own, or maintain the portion of Arriba Road on which the collision occurred. "From this undisputed evidence, [the Court] conclude[s] . . . that the City [of Las Vegas] did not have a duty to maintain the road, as contemplated under the waiver of immunity in the statute." Bierner v. City of Truth or Consequences, 136 N.M. at 202, 96 P.3d at 327.  Because whether the City of Las Vegas had a "duty to maintain the road is dispositive on the issue of immunity," Bierner

_____

[22] The only argument the Esquibels assert in their reply brief is that there are questions of fact whether the City of Las Vegas exercised control over the maintenance of Arriba Road.  In support of their argument, the Esquibels cite to two facts they asserted in their Response. The Court did not deem admitted the facts on which the Esquibels rely, because the evidence on which the Esquibels relied was hearsay.  These asserted facts thus do not create a genuine issue of material fact precluding summary judgment.

v. City of Truth or Consequences, 136 N.M. at 200, 96 P.3d at 325, the Court finds that the negligent

maintenance waiver of immunity set forth in NMSA 1978, § 41-4-11A does not apply.

Furthermore, at the hearing on July 14, 2011, the Esquibels informed the Court that their

only argument concerning the City of Las Vegas revolves around NMSA 1978, § 41-4-6.

> THE COURT: . . . It seems to me that your -- the motion against the City got a lot
> worse -- excuse me -- your defense against the City or your position with the City [of
> Las Vegas] got a lot worse now with the County coming in and saying what they did.
> I mean at best for the City you know they've been telling us all along we never had
> anything to do with this road and now we've got maybe the County having a little
> something to do with the road, the State saying we've had it all along, they've
> abandoned and all that sort of stuff, but I don't see the City's fingerprints on this at
> all.  I hate to be rearguing the motion we had last week, but I do have now a lot more
> information and I've thought about it a little bit longer.  What is it -- What is it that,
> other than wanting to do discovery, I'm not seeing any evidence against the City.
> Your thoughts?
>
> MS. TOUCHET:  Well, Your Honor, I was going . . .  I think you had directed a
> question to me and we Mr. Ortiz answered it but I will answer it, as well.  And we
> have never alleged an ownership interest in the road by the City.  That's not.
>
> . . . .
>
> MS. TOUCHET:  For the purposes of their motion, in our Complaint we didn't allege
> that they had an ownership interest.  It is questionable --
>
> THE COURT:  Your argument is this other waiver of sovereign immunity that they
> own a piece of profit and there's -- there's a hand guard on that that is either coming
> from or in the property that it's the road going to the piece of property?  That's your
> only theory against the City correct.
>
> MS. TOUCHET:  Correct correct and that hasn't changed since we argued it to you
> last week.  That's correct.
>
> THE COURT:  Okay.
>
> MS. TOUCHET:  I think that they are different.  I mean, the claim against the
> County is a roadway maintenance claim.  The claim against the City not to reargue
> that was the building and the roadway.  But it has not been alleged and we wouldn't
> say that there is any indication that there was any ownership by the City.

Tr. at 42:3-43:17 (Court, Touchet).  The Esquibels thus appear to have conceded that the negligent

maintenance waiver of immunity set forth in NMSA 1978, § 41-4-11A does not apply.

**B.    THE CITY OF LAS VEGAS' IMMUNITY IS NOT WAIVED UNDER NMSA 1978, § 41-4-6, BECAUSE M. ESQUIBEL'S INJURIES DID NOT ARISE FROM AN UNSAFE, DANGEROUS, OR DEFECTIVE CONDITION ON PROPERTY THAT IT OWNED.**

The NMTCA waives immunity for "damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building, public park, machinery, equipment or furnishings." NMSA 1978, § 41-4-6. "Section 41-4-6 . . . contemplate[s] waiver of immunity where due to the alleged negligence of public employees an injury arises from an unsafe, dangerous, or defective condition <u>on</u> property owned and operated by the government." <u>Castillo v. Santa Fe County</u>, 107 N.M. 204, 205, 755 P.2d 45, 49 (1988)(emphasis added).

The Esquibels rely on <u>Mitchell v. C & H Transportation Co., Inc.</u>, 90 N.M. 471, 565 P.2d 342 (1977), and <u>Bober v. New Mexico State Fair</u>, 111 N.M. 644, 808 P.2d 614 (1991), in support of their argument that the City of Las Vegas owed M. Esquibel a duty to ensure his safe ingress and egress from the waste transfer facility. In <u>Mitchell v. C & H Transportation Co., Inc.</u>, Supreme Court of New Mexico stated that it approved of the reasoning of a case in which the Supreme Court of Illinois "held that the rule that an occupant or owner of premises owes to an invitee a duty to use ordinary care to have the premises in a reasonably safe condition includes the duty to provide an invitee with reasonably safe means of ingress and egress, both within the confines of the premises owned or controlled by the inviter, and, 'within limitations dictated by the facts of the case, beyond the precise boundaries of such premises.'" 90 N.M. at 475, 565 P.2d at 346.

In <u>Bober v. New Mexico State Fair</u>, the Supreme Court of New Mexico considered "whether a landowner's duty to avoid creating or permitting an unsafe condition or activity on the premises

is limited by the physical boundaries of the land." 111 N.M. at 646, 808 P.2d at 616. The Supreme

Court stated that, in <u>Mitchell v. C & H Transportation Co.</u> and in <u>Calkins v. Cox Estates</u>, 110 N.M.

59, 792 P.2d 36 (1990), it ruled "that the landowner's duty is not so limited" and that "the

owner . . . may be held liable for injuries sustained by someone beyond the boundaries of the land

if those injuries proximately result from the owner's breach of duty to exercise ordinary care to avoid

creating an unreasonable risk of harm to that person." 111 N.M. at 646, 808 P.2d at 616. The

Supreme Court stated:

> It is thus apparent that the duty of a landowner to exercise ordinary care to avoid creating, or permitting, an unreasonable risk of harm to others is not determined by the nature of the owner's property interest (<u>e.g.</u>, outright ownership, a leasehold, or another possessory interest); by the existence of a collateral duty to maintain the premises in a safe condition (under, <u>e.g.</u>, a lease or other contract, a regulation, or a statute, such as the landlord-tenant law in <u>Calkins</u>); by the identity of the person injured (<u>e.g.</u>, an invitee or licensee or other entrant on the land or, as in this case, a "mere" passerby); or by the happenstance that the accident and resulting injury occur inside or outside the property boundary. As we said in <u>Calkins</u>: "In determining whether [the alleged tortfeasor] acted reasonably or breached his duty, it may be relevant to the jury that the injury occurred off the premises. However, the location of the accident is not relevant to the question of duty." 110 N.M. at 66, 792 P.2d at 43.

111 N.M. at 648-49, 808 P.2d at 618-19 (footnote omitted).

Subsequent opinions from the Supreme Court of New Mexico and Court of Appeals of New

Mexico have discussed these cases. In <u>Cobos v. Dona Ana County Housing Authority</u>, 126 N.M.

418, 970 P.2d 1143 (1998), the Supreme Court of New Mexico discussed <u>Bober v. New Mexico

State Fair</u>. <u>See</u> 126 N.M. at 423, 970 P.2d at 1147. The Supreme Court stated:

> We conclude that the Legislature did not intend to limit the building waiver to property in which the public entity has a real property interest or a landowner's duty.
>
> Rather, it is clear from our cases that an ownership interest in a building is but one of several ways of proving that a duty to operate or maintain exists.

. . . .

      Likewise, in <u>Bober v. New Mexico State Fair</u>, the State Fair's ownership and control of a concert hall imposed duties to prevent unsafe conditions <u>on</u> the property that led to injuries on property adjacent to the public property.

126 N.M. at 423, 970 P.2d at 1147 (emphasis added).

      In <u>Stetz v. Skaggs Drug Centers, Inc.</u>, 114 N.M. 465, 840 P.2d 612 (Ct. App. 1992), the

Court of Appeals of New Mexico found that Skaggs Drug Centers, Inc. ("Skaggs") had no duty to

the plaintiff, stating that "[e]xtending a duty beyond the owner or possessor's premises for hazards

not on the premises or arising on or from the premises makes the existence of duty entirely

unpredictable."  114 N.M. at 468-69, 840 P.2d at 615-16.  The Court of Appeals of New Mexico

discussed <u>Bober v. New Mexico State Fair</u> and <u>Mitchell v. C & H Transportation Co.</u>. <u>See</u> 114 N.M.

at 467-68, 840 P.2d at 614-15.

      Our task is to determine how <u>Bober</u> applies in this case. The foundation of premises liability is that owners, occupiers, or possessors of premises have responsibility only for hazards arising on or from their premises. <u>See</u> SCRA 1986, 13-1309 (Repl.1991)(duty to keep owner's or occupant's premises safe); SCRA 1986, 13-1319 (Repl.1991) (consequences of dangerous condition on defendant's premises). Thus, in the context of a shopping mall, it is black-letter law that it is the mall owner, and not the various shopkeepers, who has legal responsibility for conditions in the common areas of a shopping center. 62 Am.Jur.2d <u>Premises Liability</u> § 445 (1990) (citing, inter alia, <u>Torres v. Piggly Wiggly Shop Rite Foods, Inc.</u>, 93 N.M. 408, 410, 600 P.2d 1198, 1200 (Ct.App.1979)).

      Nothing the supreme court said in <u>Bober</u> is to the contrary. That case merely applied the traditional rule that one who owns or controls property has a duty to refrain from creating or permitting conditions on such property that will foreseeably lead to an unreasonable risk of harm to others beyond the property's borders. <u>Bober</u> involved a hazardous condition on a landowner's premises spilling over onto the property of another. <u>See also</u> <u>Monett v. Dona Ana County Sheriff's Posse</u>, 114 N.M. 452, 840 P.2d 599 (Ct.App. 1992) (fair was potentially liable for hazard on its premises that spilled over onto posse's property (mixture of golf carts and crowds of pedestrians), but was not potentially liable for dangerous condition created by posse on its own property (configuration of gate and ticket area)).

. . . .

Nor does <u>Mitchell v. C & H Transportation Co.</u>, 90 N.M. 471, 565 P.2d 342 (1977), support plaintiff's right to recover against Skaggs. While that case stated a duty to provide safe ingress and egress, the duty there was inextricably intertwined with certain highway regulations that extended the landowner's or lessor's responsibility onto the highway right of way when there was a driveway involved. We acknowledge here, as we did in <u>Monett</u>, that language in <u>Mitchell</u> seeming to require that the duty to provide safe ingress and egress extends "'within limitations dictated by the facts of the case, beyond the precise boundaries of [the owner's] premises.'" <u>Mitchell</u>, 90 N.M. at 475, 565 P.2d at 346 (quoting <u>McDonald v. Frontier Lanes, Inc.</u>, 1 Ill.App.3d 345, 272 N.E.2d 369, 372 (1971)). In <u>Monett</u>, we said that the showing of sole control over the posse area by the posse was a limitation dictated by the facts of that case. To a like effect, in this case, the lease provision, giving Skaggs a limited right to make repairs under certain well-defined circumstances, would be a similar limitation.

Because there is a trend toward recognizing that property owners have a duty to business invitees to remedy even open and obvious dangers, <u>see</u>, <u>e.g.</u>, <u>Klopp</u>, 113 N.M. at 157, 824 P.2d at 297, it is especially important that appellate courts provide firm guidelines as to when such a duty arises. The <u>Mitchell</u> language provides no such guidelines. If the language imposes on Skaggs a duty to repair a defect in the sidewalk near its entrance, does that duty extend farther down the sidewalk? Into the mall parking lot? Into the public street? Was it shared with other tenants of the mall? Who is responsible if Skaggs negligently repairs the defects existing on property owned by its neighbor?

The rationale of stare decisis requires that judicial opinions serve the broader societal interest in the predictable application of legal rules. <u>Thomas v. Washington Gas Light Co.</u>, 448 U.S. 261, 277 . . . (1980). Extending a duty beyond the owner or possessor's premises for hazards not on the premises or arising on or from the premises makes the existence of duty entirely unpredictable. For these reasons, Skaggs had no duty to plaintiff in this case.

114 N.M. at 467-69, 840 P.2d at 614-16.

Although the Esquibels rely on <u>Mitchell v. C & H Transportation Co., Inc.</u>, and <u>Bober v. New Mexico State Fair</u>, these cases do not stand for the proposition that the City of Las Vegas owed M. Esquibel a duty. The Supreme Court of New Mexico has stated that <u>Bober v. New Mexico State Fair</u> stands for the proposition that, if a property owner permits a dangerous condition to exist on his or her premises, and that dangerous condition causes an injury off the premises, the property owner can be held liable for the injury. See <u>Cobos v. Dona Ana Cnty. Housing Auth.</u>, 126 N.M. at

423, 970 P.2d at 1147 ("Likewise, in <u>Bober v. New Mexico State Fair</u>, the State Fair's ownership and control of a concert hall imposed duties to prevent unsafe conditions <u>on</u> the property that led to injuries on property adjacent to the public property.")(emphasis added).  Furthermore, the Court of Appeals of New Mexico has subsequently discussed <u>Mitchell v. C & H Transportation Co., Inc.</u>, a case from 1977, and stated that the "rationale of stare decisis requires that judicial opinions serve the broader societal interest in the predictable application of legal rules. Extending a duty beyond the owner or possessor's premises for hazards not on the premises or arising on or from the premises makes the existence of duty entirely unpredictable."  <u>Stetz v. Skaggs Drug Ctrs., Inc.</u>, 114 N.M. at 469, 840 P.2d at 616.  The Court agrees with the Court of Appeals of New Mexico in <u>Stetz v. Skaggs Drug Ctrs., Inc.</u>  While the Supreme Court of New Mexico's language in <u>Mitchell v. C & H Transportation Co., Inc.</u> could be read to impose a duty on all landowners for any possible ingress and egress of the property, the Court does not believe that the Supreme Court of New Mexico would go that far, because almost all roads are connected, and the duty would almost have no limits.  The New Mexico law is already liberal in protecting people who are traveling to a property owner's land, but there is no indication that the duty is without limits.  The Court does not believe the Supreme Court of New Mexico would find New Mexico law imposes no limits on duty.  The Court believes that <u>Stetz v. Skaggs Drug Ctrs., Inc.</u> represents what the Supreme Court of New Mexico would do, given the Supreme Court's interpretation of <u>Bober v. New Mexico State Fair</u> in <u>Cobos v. Dona Ana County Housing Authority</u>.[23]

---

[23] "When federal courts are called upon to interpret state law, they must look to rulings of the highest state court, and if no such rulings exist, must endeavor to predict how the high court would rule."  <u>Lovell v. State Farm Mut. Auto. Ins. Co.</u>, 466 F.3d 893, 899 (10th Cir. 2006)(citations omitted)..  In such circumstances, the federal court "must . . . follow any intermediate state court decision unless other authority convinces [it] that the state supreme court would decide otherwise."  <u>Daitom, Inc. v. Pennwalt Corp.</u>, 741 F.2d 1569, 1574 (10th Cir. 1984)(citations omitted).

Case 6:10-cv-00778-JB-KBM   Document 140   Filed 08/08/11   Page 48 of 66

Furthermore, <u>Stetz v. Skaggs Drug Centers, Inc.</u> is in line with the <u>Restatement (Second) of Torts</u>.[24]  The <u>Restatement (Second) of Torts</u> states: "[N]either a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land."  <u>Restatement (Second) of Torts</u> § 363.  The comment to this section states: "The rule stated in Subsection (1) applies although the possessor, vendor, or lessor recognizes or should recognize that the natural condition involves a risk of physical harm to persons outside the land."  <u>Restatement (Second) of Torts</u> § 363 cmt. a.  Nowhere does the <u>Restatement (Second) of Torts</u> state that a possessor, vendor, or lessor of land owes a duty to those harmed outside the land for a condition <u>not on</u> the land.  Moreover, the New Mexico Uniform Jury Instructions regarding an owner or occupier's duty to a visitor states: "An [owner] [occupant] owes a visitor the duty to use ordinary care to keep the premises safe for use by the visitor [, whether or not a dangerous condition is obvious]."  NMRA 13-1309 UJI.  This instruction also suggests that the owner or occupant owes a duty only to keep <u>the premises</u> safe; it does not state that an owner or occupant owes a duty to keep areas outside the premises safe.

Finally, cases from other jurisdictions employ a test similar to the Court of Appeals employs in <u>Stetz v. Skaggs Drug Centers, Inc.</u>  <u>See Jump v. Bank of Versailles</u>, 586 N.E.2d 873, (Ind. App. 1992)("[S]ometimes a business owner may owe a duty to a member of the general public injured off of its business premises when the owner has maintained a hazardous condition or conducted some activity on the premises beyond the mere fact of operating the business, which causes an

---

[24] The New Mexico courts often look to the law as stated in the <u>Restatement (Second) of Torts</u>.  <u>See</u> <u>Montanez v. Cass</u>, 89 N.M. 32, 38, 546 P.2d 1189, 1195 (Ct. App. 1975)("It has long been the policy of our courts to follow in the footsteps of the Restatement of Torts, 2d.").  In <u>Schmitz v. Smentowski</u>, 109 N.M. 386, 785 P.2d 726 (1990), the Supreme Court of New Mexico stated: "We have also been very willing to adopt the view of the Restatement of Torts to assist our development of new tort areas."  109 N.M. at 393, 785 P.2d at 736.

-48-

off-premises injury . . . ."); <u>Galperina v. Mandelbaum</u>, 27 A.D.3d 520 (N.Y. App. Div. 2006)("Generally, an owner of property owes no duty of care to others to warn them of, or protect them from, a defective or dangerous condition on neighboring premises[.] The defendant had no duty to warn the plaintiff of the alleged defective condition on his neighbor's property.")(internal citation omitted); <u>Robinson v. Johnson</u>, No. LE-2305-3, 1999 WL 58607, at * (Va. Cir. Ct. Jan. 19, 1999)(stating that "[t]he accident occurred off the premises on a public street in Richmond," and that "[a]lthough a tavern owner would owe a common law duty to its customers to use reasonable care for their safety while on the premises, that duty does not extend to protection against the negligent acts of a third party which occur away from the owner's property").

The Court thus believes that, in New Mexico, property owners have "a duty to refrain from creating or permitting conditions <u>on</u> such property that will foreseeably lead to an unreasonable risk of harm to others beyond the property's borders." <u>Stetz v. Skaggs Drug Ctrs., Inc.</u>, 114 N.M. at 468, 840 P.2d at 615 (emphasis added). <u>See</u> <u>Cobos v. Dona Ana Cnty. Housing Auth.</u>, 126 N.M. at 423, 970 P.2d at 1147 ("[I]n <u>Bober v. New Mexico State Fair</u>, the State Fair's ownership and control of a concert hall imposed duties to prevent unsafe conditions <u>on</u> the property that led to injuries on property adjacent to the public property.")(emphasis added); <u>Williams v. Cent. Consol. Sch. Dist.</u>, 124 N.M. 488, 952 P.2d 978 (Ct. App. 1997)("Under modern principles of tort law, the owner or occupier of the premises has a duty to visitors of reasonable care to prevent or correct dangerous conditions <u>on</u> the premises." (citing <u>Bober v. New Mexico State Fair</u>, 111 N.M. at 647-51, 808 P.2d at 617-21)(emphasis added)). In <u>Johnson v. School Board of Albuquerque Public School System</u>, the Court of Appeals of New Mexico stated:

> [T]he Court [in <u>Bober v. New Mexico State Fair</u>], while broadly interpreting the term "premises liability," as it applies to Section 41–4–6, to include injuries occurring both on and off certain premises, continued to limit liability to those "'injur[ies]

-49-

aris[ing] from an unsafe, dangerous, or defective condition <u>on</u> property owned and operated by the government.'"

114 N.M. at 754, 845 P.2d at 848 (emphasis added)(citation omitted)). Under this interpretation of New Mexico law, the City of Las Vegas did not have a duty to prevent an unsafe or dangerous condition that might exist upon property outside the waste transfer facility. <u>See</u> <u>Stetz v. Skaggs Drug Ctrs., Inc.</u>, 114 N.M. at 468-69, 840 P.2d at 615-16 ("Extending a duty beyond the owner or possessor's premises for hazards not on the premises or arising on or from the premises makes the existence of duty entirely unpredictable. For these reasons, Skaggs had no duty to plaintiff in this case.").

In <u>Johnson v. School Board of Albuquerque Public School System</u>, the plaintiff appealed the district court's entry of summary judgment in favor of the Defendant School Board of Albuquerque Public School System ("APS"). 114 N.M. at 751, 845 P.2d at 845. The plaintiff sought damages for injuries her daughter -- Dawn Johnson -- suffered when she was allegedly struck by a vehicle as she was leaving Manzano High School, in Albuquerque, New Mexico. <u>See</u> 114 N.M. at 751, 845 P.2d at 845. "The parties focus[ed] their arguments on appeal on the following issue: whether the immunity granted under the Tort Claims Act, NMSA 1978, Sections 41–4–1 through –29 (Repl.Pamp.1989), has been waived under Section 41–4–11 of that Act pertaining to maintenance of streets," but the Court of Appeals of New Mexico stated that "the dispositive issue in deciding the waiver question [wa]s whether APS had a responsibility at all to maintain a crosswalk and accompanying signs and signals in front of the school." 114 N.M. at 751, 845 P.2d at 845.

> Dawn and some twenty other students were kept after school for detention. School lets out at Manzano at 2:30 p.m. The City of Albuquerque (the City) had installed school zone signals on Lomas Boulevard at the east and west end of the campus. These signals consist of signs and flashing lights, and the lights are set to flash between 2:30 and 2:50 p.m. on school days. The signals warn traffic to slow to 15 m.p.h. within the school zone. APS claims, and Plaintiff does not contest, that the

> City installed, operates, and maintains these flashing signals as well as other signs at a crosswalk which, we understand, transverses Lomas Boulevard within the school zone. Lomas runs east and west in front of Manzano High School.
>
> Dawn was dismissed at 3:30 p.m., but remained with a friend until 3:55 p.m. According to APS's brief, Dawn "skipped or hopped or spun backwards off the sidewalk and into the street on Lomas" and was struck by a vehicle. Plaintiff does not disagree. This occurred at or near the crosswalk. The signals at both ends of the school zone had stopped flashing before the accident occurred.
>
> Plaintiff contends APS was negligent in two particulars: (1) not scheduling the flashing signals to operate for as long as students remained under the school's control; and (2) not maintaining, or warning of the absence of, the "school crossing" signs at the crosswalk over Lomas Boulevard.

114 N.M. at 751, 845 P.2d at 846.  The Court of Appeals of New Mexico stated that it could not conclude that immunity was waived in the case before it, because APS had no responsibility for street maintenance.  See 114 N.M. at 753, 845 P.2d at 847.  The plaintiffs relied on Schleft v. Board of Education, 109 N.M. 271, 784 P.2d 1014 (Ct. App.), cert. denied, 109 N.M. 232, 784 P.2d 419 (1989), to argue "that APS's responsibility extend[ed] beyond the school grounds."  114 N.M. at 753, 845 P.2d at 847.

> In that case, this Court said: "We believe it was not the legislature's intent that waiver of immunity stop at the schoolhouse door." Id. 109 N.M. at 273, 784 P.2d at 1016. The plaintiff in Schleft relied on waiver of immunity under Section 41–4–6, which concerns the operation or maintenance of any building. In that case, a boy received an electrical shock when he climbed on a transformer owned and operated by a third party but located on the school grounds. We held that the "building exception" under Section 41–4–6 "applies to maintenance of the school grounds as well as to the school building itself." Id. We believe Schleft is distinguishable.
>
> In Schleft, the accident occurred on the school grounds. We stressed that the transformer, the alleged dangerous condition, existed "on an easement that in turn [was] located on the landowner's property, not outside of it." Id. at 275, 784 P.2d at 1018 (emphasis in the original). We relied on the location of the transformer in determining that it was irrelevant to the Section 41–4–6 waiver inquiry that the defendant Board of Education (the Board) claimed that, because the transformer was located on a third-party-owned easement, the Board had no control over, or right to maintain, the transformer. Id. at 273–75, 784 P.2d at 1016–18 (these facts found

irrelevant to waiver issue based on later discussion of the Board's duty to the plaintiff). Here, the school crossing, the flashing signals, and the signs, the alleged dangerous conditions, clearly were outside the school grounds.

This distinction between Schleft and the case before us is supported by Bober v. New Mexico State Fair, 111 N.M. 644, 808 P.2d 614 (1991), in which our Supreme Court interpreted Section 41–4–6.  Bober, which concerned an auto accident that occurred as a stream of traffic exited the New Mexico State Fairground after a concert, dealt with whether the State Fair could be held liable for "a dangerous condition on their premises that had consequences off the premises." Monett v. Dona Ana County Sheriff's Posse, 114 N.M. 452, 459, 840 P.2d 599, 606 (Ct.App.1992) (applying Bob er ); see Bober,111 N.M. at 646–47, 808 P.2d at 616–17 ("The principal issue on appeal is [whether] * * * since the accident took place outside the Fairground, and since Bober was a mere passerby * * * the State Fair owed her no duty and was therefore entitled to judgment as a matter of law."). The Supreme Court interpreted Section 41–4–6, the building exception, and found that the State Fair's immunity under the Tort Claims Act had been waived. Id. at 652–53, 808 P.2d at 622–23.  In so doing, the Court, while broadly interpreting the term "premises liability," as it applies to Section 41–4–6, to include injuries occurring both on and off certain premises, continued to limit liability to those " 'injur[ies] aris[ing] from an unsafe, dangerous, or defective condition on property owned and operated by the government.' " Id. at 653, 808 P.2d at 623 (quoting Castillo v. County of Santa Fe, 107 N.M. 204, 205, 755 P.2d 48, 49 (1988) (emphasis added)).

114 N.M. at 753-54, 845 P.2d at 847-48.   The Court of Appeals found that "APS had no responsibility for maintaining the crosswalk and accompanying signs and signals in front of the school."  114 N.M. at 755, 845 P.2d at 849.

The undisputed facts demonstrate that there was not an unsafe, dangerous, or defective condition on the waste transfer facility that caused M. Esquibel's injuries.  On January 15, 2009, M. Esquibel, was traveling east on a road leading to railroad crossing DOT NO. 013655C in San Miguel County.  See, e.g., Complaint ¶ 8, at 3; City of Las Vegas' Motion ¶ 1, at 3 (setting forth this fact); Response to City of Las Vegas' Motion at 6 (not controverting this fact); San Miguel County's Memo. ¶ 2, at 2 (setting forth this fact); Response to San Miguel County's Memo. ¶ 2, at  4 (not controverting this fact).  M. Esquibel was on his way to the waste transfer station that the City of

Las Vegas owned.  See, e.g., Complaint ¶¶ 11, 13-14, at 3; City of Las Vegas' Motion ¶ 2, at 3 (setting forth this fact); Response to City of Las Vegas' Motion at 6 (not controverting this fact). At approximately 3:51 p.m. on January 15, 2009, a train owned by Amtrak, traveling north on railroad tracks that BNSF Railway Company owned, collided with the vehicle that M. Esquibel drove.  See, e.g., Complaint ¶¶ 8-10, 15-16, 20-21, at 3, 4; City of Las Vegas' Motion ¶ 3, at 3 (setting forth this fact); Response to City of Las Vegas' Motion at 6 (not controverting this fact); San Miguel County's Memo. ¶ 3, at 2 (setting forth this fact); Response to San Miguel County's Memo. ¶ 3, at 4 (not controverting this fact).  This collision resulted in M. Esquibel's death.  See, e.g., Complaint ¶¶ 9, 20, at 3, 4; City of Las Vegas' Motion ¶ 4, at 3 (setting forth this fact); Response to City of Las Vegas' Motion at 6 (not controverting this fact); San Miguel County's Memo. ¶ 3, at 2 (setting forth this fact); Response to San Miguel County's Memo. ¶ 3, at 4 (not controverting this fact).  The collision occurred at the railroad crossing at Arriba Road, which leads directly to the City of Las Vegas' waste transfer station.  See Complaint ¶ 9, at 3; Application at 12, Ex. F;  San Miguel County's Memo. ¶ 4, at 3 (setting forth this fact); Response to San Miguel County's Memo. ¶ 4, at 4-5 (not controverting this fact).  The undisputed facts establish that M. Esquibel was on Arriba Road, on his way to the waste transfer station that the City of Las Vegas owned, when the collision occurred, but there is no evidence and the undisputed facts do not establish that a condition on the property that the City of Las Vegas owns -- the facility -- caused M. Esquibel's injuries. Instead, a condition which is not part of the property that the City of Las Vegas owns -- the railroad crossing -- is the condition that caused the M. Esquibel's injuries.  As in Johnson v. School Board of Albuquerque Public School System, where the Court of Appeals of New Mexico found that APS had no responsibility for maintaining the crosswalk, and accompanying signs and signals in front of the school, and distinguished Schleft v. Board of Education, where it had waived immunity under

NMSA 1978, § 41-4-6, because, unlike <u>Schleft v. Board of Education</u>, the "alleged dangerous conditions [were] clearly . . . outside the school grounds," 114 N.M. at 754, 845 P.2d at 848, the alleged dangerous condition of the railroad crossing is outside of the facility's grounds.  Because the railroad crossing, which is the condition that caused M. Esquibel's injuries, is outside the facility's grounds,  the waiver of immunity in NMSA 1978, § 41-4-6 does not apply.  <u>See</u> <u>Stetz v. Skaggs Drug Ctrs., Inc.</u>, 114 N.M. at 468-69, 840 P.2d at 615-16 ("Extending a duty beyond the owner or possessor's premises for hazards not on the premises or arising on or from the premises makes the existence of duty entirely unpredictable. For these reasons, Skaggs had no duty to plaintiff in this case.").

The Court will grant the City of Las Vegas' motion for summary judgment.  The Court has concluded that the undisputed evidence demonstrates that the City of Las Vegas did not have a duty to maintain the road, as contemplated under the waiver of immunity in NMSA 1978, § 41-4-11A, <u>see</u> <u>Bierner v. City of Truth or Consequences</u>, 136 N.M. at 202, 96 P.3d at 327, and the Esquibels appear to concede that this waiver of immunity does not apply.  The Court finds that the City of Las Vegas' immunity is not waived under NMSA 1978, § 41-4-6, because M. Esquibel's injuries did not arise from an unsafe, dangerous, or defective condition on property that it owned.  <u>See</u> <u>Stetz v. Skaggs Drug Ctrs., Inc.</u>, 114 N.M. at 468-69, 840 P.2d at 615-16.  The Court will thus grant the City of Las Vegas' motion for summary judgment.

### III.   THE COURT WILL DENY THE ESQUIBELS' REQUEST THAT IT DISMISS THE CITY OF LAS VEGAS' MOTION AS PREMATURE AND ALLOW THE <u>CONTINUANCE OF DISCOVERY</u>.

The Esquibels argue that they have presented more than sufficient evidence with which to overcome the City of Las Vegas' motion for summary judgment.  They state, however, that should the Court seek additional evidence, it should dismiss the City of Las Vegas' motion as premature.

They assert that, at the date of filing, none of the depositions that they have requested have taken place.  They also assert that the facts necessary to refute the City of Las Vegas' claims are in its sole possession.  In her rule 56(d) affidavits, Ms. Touchet asserts that the facts necessary to refute the City of Las Vegas' claims are in its sole possession.  Ms. Touchet states that the Esquibels intend to use discovery tools to reveal information necessary to fully oppose the motion, including information regarding: (i) when the waste transfer station was first considered, and all activity, meetings, analysis, discussions, or other documents generated during its consideration, development, approval, and implementation; (ii) what consideration was given to ingress and egress to the facility, especially to the railroad crossing; (iii) a description of all activity generated during its consideration, approval, and implementation, which address ingress and egress to the facility; (iv) discovery regarding the city's evaluation of various proposed locations; (v) whether there was a joint-use agreement for the facility; (vi) any documents mentioning the permitting, planning, and development of the facility; (vi) meeting minutes regarding the review and analysis of the various proposed sites; (vii) who the City of Las Vegas believes owns the road and crossing; (viii) who was responsible for inspection and maintenance of the road and crossing; (ix) whether the City of Las Vegas did any inspections or maintenance of the road; (x) whether the City of Las Vegas received any funding, or had an agreement with the New Mexico State Highway Department or NMDOT, to maintain the road; and (xi) which entity constructed Arriba Road.

The City of Las Vegas argues that the Esquibels' argument that they need discovery of this information ignores that, regardless of what information is obtained, the City of Las Vegas remains entitled to summary judgment.  It argues that the decisions the City of Las Vegas' representatives made or did not make concerning the location of and public access to the waste transfer facility do not involve the operation or maintenance of the facility.  The City of Las Vegas also argues that the

Esquibels have had an opportunity to obtain information, because the City of Las Vegas has answered the discovery requests propounded upon it in the state-court proceeding in Stark-Romero v. Nat'l R.R. Passenger Co. concerning  Arriba Road, which confirm, under oath, that the City of Las Vegas does not own or control the road, does not maintain the road, and does not receive any funding or have any payment sources for such maintenance.  The City of Las Vegas further states the affidavit of Carlos Ortiz, which is attached to its motion, establishes that it does not have an agreement with any other governmental agency concerning the maintenance of Arriba Road.

Rule 56(d) of the Federal Rules of Civil Procedure states:

**(d) When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

**(1)** defer considering the motion or deny it;

**(2)** allow time to obtain affidavits or declarations or to take discovery; or

**(3)** issue any other appropriate order.

Fed. R. Civ. P. 56(d).[25]  The Tenth Circuit reviews a district court's denial of a rule 56(d) motion for abuse of discretion.  See Committee for First Amendment v. Campbell, 962 F.2d 1517, 1522 (10th Cir. 1992).  "A prerequisite to granting relief . . . is an affidavit furnished by the nonmovant." Committee for First Amendment v. Campbell, 962 F.2d at 1522 (citing Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 832 (10th Cir. 1986)).  "Unless dilatory or lacking in merit," a party's 56(d) application "should be liberally treated."  Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1553-54 (10th Cir. 1993)(internal quotation marks and citations omitted).  "The general principle of Rule 56(f) is that summary judgment should be refused where the nonmoving

---

[25] "Subdivision (d) carries forward without substantial change the provisions of former subdivision (f)."  Fed. R. Civ. P. 56 advisory committee notes (2010 amendments).

party has not had the opportunity to discover information that is essential to his opposition." <u>Price v. W. Res., Inc.</u>, 232 F.3d 779, 783 (10th Cir. 2000)(internal quotation marks omitted).  "Rule 56(f) does not require, however, that summary judgment not be entered until discovery is complete." <u>Trujillo v. Bd. of Educ. of the Albuquerque Pub. Schs.</u>, Nos. CIV 02-1146 JB/LFG, CIV 03-1185 JB/LFG, 2007 WL 2461629, at *3 (D.N.M. June 5, 2007)(Browning, J.)(citing <u>Price v. W. Res., Inc.</u>, 232 F.3d 779, 784 (10th Cir. 2000)).

To invoke the shelter that rule 56(d) provides, a party must (i) file an affidavit, <u>see</u> <u>Pasternak v. Lear Petroleum Exploration Inc.</u>, 790 F.2d at 832-33; (ii) identify the probable facts not available, their relevance, and what steps have been taken to obtain those facts, <u>see</u> <u>Comm. for the First Amendment v. Campbell</u>, 962 F.2d at 1522; (iii) explain why facts precluding summary judgment cannot be presented, <u>id.</u>; and (iv) state with specificity how the desired time would enable the nonmoving party to meet its burden in opposing summary judgment, <u>see</u> <u>id.</u>  "Rule 56([d]) may not be invoked based solely upon the assertion that discovery is incomplete or that the specific facts necessary to oppose summary judgment are unavailable."  <u>Schaefer v. Antill, No.</u>, CV 06-0460 JB/ACT, 2007 WL 709046 at *9 (D.N.M. Jan. 31, 2007)(Browning, J.)(citations omitted).  "Rule 56([d]) is not a license for a fishing expedition . . . ."  <u>Lewis v. Ft. Collins</u>, 903 F.2d 752, 759 (10th Cir. 1990).

Ms. Touchet's affidavits do not identify with specificity probable facts which are not available and which are relevant to the City of Las Vegas' motion.  NMSA 1978, § 41-4-6 waives immunity for damages "caused by the negligence of public employees while acting within the scope of their duties in the operation or maintenance of any building . . . ."  NMSA 1978, § 41-4-6.  "The purpose of Section 41-4-6 is to ensure the general public's safety by requiring public employees to exercise reasonable care in maintaining and operating the physical premises owned and operated by

the government." Archibeque v. Moya, 116 N.M. 616, 619, 866 P.2d 344, 347 (1993).  In

Archibeque v. Moya, the Supreme Court of New Mexico held that NMSA 1978, § 41-4-6 "does not

waive immunity when public employees negligently perform . . . administrative functions.  To read

Section 41-4-6 as waiving immunity for negligent performance of administrative functions would

be contrary to the plain language and intended purpose of the statute."  116 N.M. at 619, 866 P.2d

at 347 (citing State v. Riddall, 112 N.M. 78, 80, 811 P.2d 576, 578 (Ct. App.)(stating that when

interpreting a statute, an appellate court is required to consider the plain meaning of the words used

and the intended purpose of the statute), cert. denied, 112 N.M. 21, 810 P.2d 1241 (1991)).  As in

Archibeque v. Moya, where the Supreme Court held that NMSA 1978, § 41-4-6 does not waive

immunity for negligent performance of administrative functions, NMSA 1978, § 41-4-6 does not

waive immunity for the administrative function of deciding the location of a facility.  Determining

the location of a facility does not fall within the plain language meaning of operation or maintenance

of a building.  Information regarding the decisions that the City of Las Vegas' representatives made

or did not make concerning the location of and public access to the waste transfer facility are thus

not relevant to the operation or maintenance of the facility.  Furthermore, the undisputed facts

establish that: (i) the portion of the road upon which M. Esquibel was traveling when the collision

occurred was not located in the City of Las Vegas; (ii) the portion of the road upon which M.

Esquibel was traveling when the collision occurred was not constructed by the City of Las Vegas;

(iii) the portion of the road upon which M. Esquibel was traveling when the collision occurred was

not owned, maintained, or operated by the City of Las Vegas; (iv) the portion of the road upon

which M. Esquibel was traveling when the collision occurred is owned by NMDOT; (v) the City of

Las Vegas has never had an agreement with the New Mexico State Highway Department or the

NMDOT to participate in maintenance of the portion of the road upon which M. Esquibel was

traveling when the collision occurred; and (vi) the City of Las Vegas has never received any funding

from the New Mexico State Highway Department or the NMDOT to maintain the portion of the road

upon which M. Esquibel was traveling when the collision occurred. The Esquibels "effectively ask[

] the Court to authorize a fishing expedition in the hope that useful evidence might turn up. That

approach is not what rule 56([d]) allows." Wheeler Peak, LLC v. L.C.I.2., Inc., No. CIV 07-1117

JB/WDS, 2009 WL 1562812, at *14 (D.N.M. 2009)(Browning, J.).  In these circumstances, the

Esquibels have not carried their burden of identifying with specificity the additional discovery it

would need to undertake to defeat summary judgment.  It may be that discovery uncovers something

down the road that will necessitate the parties to come back to the Court for reconsideration, but the

Court believes that the rule 56(d) affidavits do not sufficiently set forth the specific discovery

needed to cause the Court not to address the motion for summary judgment at this time.  The

affidavits do not indicate the evidence the Esquibels believe they will find, which will create

disputed issues of fact, if they conduct the discovery they are seeking.  See Comm. for the First

Amendment v. Campbell, 962 F.2d at 1522 (stating that the party seeking further discovery must

identify the probable facts not available, their relevance, and what steps have been taken to obtain

those facts).  The Court will thus deny the Esquibels' request that it deny the City of Las Vegas'

motion as premature and allow them to conduct more discovery.

IV.     **THE COURT WILL DENY SAN MIGUEL COUNTY'S REQUEST FOR SUMMARY JUDGMENT.**

San Miguel County argues that the NMTCA provides that governmental entities are immune

from suit for damages for any tort, except as that immunity is waived in the NMTCA.  It argues that

the NMTCA provides that the immunity of governmental entities is waived for the negligence of

their public employees, acting within the scope of their duties, during the construction and

-59-

subsequent maintenance of any roadway.  San Miguel County argues that it did not construct, own, or maintain the road at the time of the accident involving M. Esquibel, and that NMDOT owned the road at that time.  It thus argues that it owed no duty to the Esquibels or to M. Esquibel to maintain the road in a safe condition, and that, because there was no duty, there could be no negligence.

The Esquibels argue that a governmental entity has a duty to exercise ordinary care to protect the general public from foreseeable harm on the highways.  They argue that, although San Miguel County has stated that it abandoned Arriba Road, up until 1988 it had assumed responsibility for inspecting and maintaining the road, it did not formally abandon the road in writing, and it was not duly declared by any entity to which the property rights had been vested.  See Response at 11-12. The Esquibels argues that the road was not closed, and that San Miguel County did nothing to maintain and inspect the road.  The Esquibels also argue, moreover, Arriba Road provides access to the City of Las Vegas' waste treatment facility and that the Esquibels believe that the facility was developed in conjunction with San Miguel County.  They thus argue that San Miguel County may have had a duty under a joint-use agreement to provide safe ingress and egress from the facility. The Esquibels assert that San Miguel County had a responsibility to the traveling public to use ordinary care in maintaining its highways and roadways, and that there are questions of fact whether it breached that duty.

The NMTCA waives immunity "for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties during the construction, and in subsequent maintenance of any . . . roadway."  NMSA 1978, § 41-4-11A.  "Liability for acts or omissions under the Tort Claims Act shall be based upon the traditional tort concepts of duty and the reasonably prudent person's standard of care in the performance of that duty."  NMSA 1978, § 41-4-2A.  "Where there is no duty, there can be no

negligence." <u>Sw. Pub. Serv. Co. v. Artesia Alfalfa Growers' Ass'n</u>, 67 N.M. at 117, 353 P.2d at 68 (citation omitted).

At the hearing on July 14, 2011, San Miguel County stated that, for purposes of this motion, the Court could assume that it had Arriba Road and maintained Arriba Road before 1988. <u>See</u> Tr. at 5:23-6:17 (Court, Waters). San Miguel County has stated under oath that, in 1988, it abandoned Arriba Road. <u>See</u> Defendant San Miguel County's Supplemental Answers to Interrogatories, Answer to Interrogatory No. 4, at 4; Response to San Miguel County's Memo. ¶ 10, at 8 (setting forth this fact); San Miguel County's Reply (not controverting this fact). The New Mexico statute regarding abandonment, vacation, and reverter of public roads, streets and highways states:

> Property or property rights acquired by purchase or condemnation by the state or any commission, department, bureau, agency or political subdivision of the state for public road, street or highway purposes shall not revert until such property or property rights are vacated or abandoned by formal written declaration of vacation or abandonment which has been duly declared by the state or any commission, department, institution, bureau, agency or political subdivision of the state <u>in whom the property or property right has vested</u>. The right to abandon and vacate shall exist regardless of whether the public road, street or highway was created by the legislature or otherwise.

NMSA 1978, § 67-2-6 (emphasis added). San Miguel County can produce no evidence as to whom this road was abandoned and can produce no evidence to show if the road was abandoned in favor of any person or entity. <u>See</u> Defendant San Miguel County's Supplemental Answers to Interrogatories, Answer to Interrogatory No. 4, at 4; Response to San Miguel County's Memo. ¶ 12, at 8 (setting forth this fact); San Miguel County's Reply at 14 (not controverting this fact). There is thus no evidence "in whom the property . . . right [in Arriba Road] . . . vested." NMSA 1978, § 67-2-6. The evidence in the record therefore indicates that San Miguel County did not properly abandon the road in accordance with NMSA 1978, § 67-2-6. At the hearing on July 14, 2011, San Miguel County conceded that its steps towards abandonment did not comply with the New Mexico

statute.

> THE COURT:  The plaintiffs are saying . . . you didn't abandon it properly.  What do you think about that?
>
> MS. WATERS:  Well, Your Honor, I would agree that the documentation that the County has produced z, saying this is evidence that we abandoned the road, which are meeting minutes which at most discuss the possibility of closing the road, I would agree, on the face of the statute and what is required under the statute that that would not suffice.  So I would agree with that point, Your Honor.

Tr. at 8:25-9:9 (Court, Waters).

San Miguel County argues that, although its abandonment of the Arriba Road did not comply with NMSA 1978, § 67-2-6, it has carried its burden of establishing that there is no genuine issue of material fact and that it is entitled to summary judgment as a matter of law.  It argues that it is entitled to summary judgment as a matter of law, because it has established that, at the time of the accident, it had no ownership interest nor operational duties concerning the road, as NMDOT has since come forth and stated that it owned the road.  Although the NMDOT "is now stepping forward and saying, [it] owned [the road] since 1981, it should have been on our list of roads to maintain, it apparently wasn't for a period of time, but there is absolutely no doubt as to who owned the road." Tr. at 48:12-16 (Waters).

The ownership of the road remains unclear.  On February 4, 2009, after M. Esquibel's accident, the NMDOT sent a letter to Senator Campos explaining that NMDOT believed that Arriba Road was county owned.  See Feb. 4, 2009 Letter at 1.  A February 5, 2009 NMDOT electronic mail transmission explains that Paul Montoya[26] informed NMDOT that Arriba Road was county owned. See Feb. 5, 2003 Electronic Mail Transmission.  At the hearing, San Miguel County stated:

> MS. WATERS:  As I have looked more into this and queried more people . . . , I

---

[26] The parties did not identify who Paul Montoya is, or what his position is.

would admit that one could say perhaps it's embarrassing that a public entity does not even know for sure whether it owns a road or not, but as I have looked and pursued this thought more, that the County at one time owned and abandoned the road, I have sort of reluctantly come to the conclusion that maybe the reason we do not find any formal abandonment papers is because of what we now know, which is that according to the New Mexico Department of Transportation the County never owned the road in the first place.  And I think that would be the best explanation I'm aware of at this time for why there are no documents that we have been able to find that comply with the language of the statute, which would require a firm statement that we here by abandon this road.

THE COURT:  Well, refresh my memory of the evidence. . . . I had understood that the State was saying that they owned the road, but . . . is there a document that says you never owned the road or does it say -- does the state come [forward] and say as of 2010 we own the r[oad]?  What exactly does the evidence in the record show.

MS. WATERS:  Your Honor, the evidence . . . which I'm aware would be the affidavit of Paul [G]ray. . . . .

THE COURT:  And that's it?  There's really no documents?  It's just his statement; is that correct?

MS. WATERS:  Your Honor, on this point I would defer to Mr. Creecy.  I will say at this point, I am not familiar with the documents, if any, upon which Mr. Gray relies.  His affidavit states that he has reviewed the documentation that he believed was pertinent to make that determination, but that documentation was not, in fact, attached to the affidavit.

Tr. at 8:25-10:15 (Court, Waters).

Furthermore, although San Miguel contends that, because it "had no ownership interest nor operation duties concerning the road at the time of the accident," it is entitled to summary judgment, the plain language of the statute does not contain an "at the time of the accident" caveat, and San Miguel County has not directed the Court's attention to precedent interpreting the statute to mean at the time of the accident.  NMSA 1978, § 41-4-11 states only that immunity is waived "for damages . . . caused by the negligence of public employees while acting within the scope of their duties during the construction, and in subsequent maintenance of any . . . roadway."  New Mexico courts will not "read into a statute or ordinance language which is not there, particularly if it makes

-63-

sense as written." <u>Regents of Univ. of N.M. v. N.M. Fed'n of Teachers</u>, 125 N.M. 401, 411, 962 P.2d 1236, 1246 (1998)(quoting <u>Burroughs v. Bd. of Cnty. Com'rs of Bernalillo Cnty.</u>, 88 N.M. 303, 306, 540 P.2d 233, 236 (1975))(internal quotation marks omitted).  Because the statute does not contain the "at the time of the accident" language, the Court will not read this language into the statute absent controlling authority suggesting it should do so.

The Court will not find, as a matter of law, that San Miguel County did not owe a duty to the Esquibels or M. Esquibel to keep Arriba Road in a safe condition.  For purposes of this motion, the Court will assume that San Miguel County had Arriba Road and maintained Arriba Road before 1988.  Furthermore, San Miguel County did not comply with the New Mexico statute in abandoning Arriba Road.  Although NMDOT now asserts that it owns the road, it does not appear that, on the record before the Court, the ownership of Arriba Road is clear and undisputed.  Moreover, the statute does not contain language limiting liability to the public entity owning or maintaining the road at the time of the accident.  The Court will therefore deny San Miguel County's request for summary judgment. Because the Court is denying San Miguel County's request for summary judgment, the Court need not address the Esquibels' request that it dismiss San Miguel County's motion, as they have not yet conducted sufficient discovery.

**IT IS ORDERED** that:(i) Defendant City of Las Vegas's Motion to Strike Supplemental Rule 56(d) Affidavit of Marie Touchet, filed July 5, 2011 (Doc. 116), is denied; (ii) Defendant City of Las Vegas's Motion for Summary Judgment, filed March 1, 2011 (Doc. 63), is granted; (iii) the Plaintiffs' request under rule 56(d) of the Federal Rules of Civil Procedure that the Court dismiss the City of Las Vegas' motion as premature is denied; and (iv) the Defendant Board of County Commissioners of the County of San Miguel's Motion for Summary Judgment, filed May 25, 2011 (Doc. 86), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Dave E. Romero, Jr.
Romero Law Firm, P.A.
Las Vegas, New Mexico

-- and --

James F. Scherr
Scherr & Legate, PLLC
El Paso, Texas

-- and --

Philip C. Gaddy
David Jaramillo
Maria E. Touchet
Gaddy ♦ Jaramillo
Albuquerque, New Mexico

      *Attorneys for the Plaintiffs*


Earl E. DeBrine, Jr.
Tim L. Fields
Alex Cameron Walker
Greg L. Gambill
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

      *Attorneys for Defendant National Railroad Passenger Company and*
        *Burlington Northern Santa Fe Railway Company (BNSF)*

Tony F. Ortiz
Christopher M. Grimmer
Scheuer, Yost & Patterson, P.C.
Santa Fe, New Mexico

   *Attorneys for Defendant City of Las Vegas*

Christina L. Brennan
James P. Sullivan
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

-- and --

Joan M. Waters
Albuquerque, New Mexico

   *Attorneys for Defendant San Miguel County*

Jerry A. Walz
Alfred D. Creecy
Walz & Associates
Albuquerque, New Mexico

   *Attorneys for Defendant New Mexico Department of Transportation*