IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VICTORIA STARK-ROMERO, Individually and as
Personal Representative of the Estate
of FRED P. STARK,

      Plaintiff,

and

EMILIO J. ESQUIBEL and HELEN G. ESQUIBEL,
Individually and as Co-Personal Representatives of the Estate of
MICHAEL S. ESQUIBEL, deceased,

      Plaintiffs-Intervenors,

vs.                                                                                                                     No. CIV 10-0778 JB/RLP

THE NATIONAL RAILROAD PASSENGER
COMPANY (AMTRAK), BURLINGTON
NORTHERN SANTA FE RAILWAY
COMPANY (BNSF), CITY OF LAS VEGAS,
SAN MIGUEL COUNTY and NEW MEXICO
DEPARTMENT OF TRANSPORTATION, and
RIDE TO PRIDE AT THE BARN, L.L.C.,

      Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Plaintiffs-Intervenors' Motion to Compel the National Railroad Passenger Company a/k/a Amtrak and BNSF Railway Company to Fully Respond to Discovery, filed June 23, 2011 (Doc. 98). The Court held a hearing on July 14, 2011. The primary issue is whether the Court should compel Defendants The National Railroad Passenger Company (Amtrak) and Burlington Northern Santa Fe Railway Company (BNSF) to fully and completely respond to the admissions, interrogatories, and requests for production that Plaintiffs-Intervenors Emilio J. Esquibel and Helen G. Esquibel served upon them. The Court will grant in

part and deny in part the Esquibels' motion.  The Court will not order Amtrak and BNSF Railway to produce the documents listed as Nos. 12, 13, 16, 18, 19, 23, 46, 59, and 61 in their privilege log. Amtrak must produce the medical and personnel records for the crew members who operated the train involved in the accident at issue, and the medical records of Phil Nerkowski, an Amtrak employee.  BNSF Railway must produce the Car Geometry Video.  Amtrak and BNSF Railway have agreed to produce the documents they withheld under 23 U.S.C. § 409.  Insofar as the opinions of the Esquibels' experts are premised on evidence that is inadmissible under 23 U.S.C. § 409, however, the Court will exclude the opinions.

## PROCEDURAL BACKGROUND

On February 12, 2009, Plaintiff Victoria Stark-Romero filed a Complaint for Wrongful Death and Negligence against Amtrak, BNSF Railway, the City of Las Vegas, San Miguel County, the New Mexico Department of Transportation, and Ride to Pride at the Barn, LLC, in the Fourth Judicial District Court in San Miguel County, New Mexico.  See Stark-Romero v. Nat'l R.R. Passenger Co., No. CIV 09-0295 MV/RLP, Complaint for Wrongful Death and Negligence, filed March 26, 2009 (Doc. 1-1).  On March 26, 2009, the Defendants in that action removed Stark-Romero v. National Railroad Passenger Co. to the United States District Court for the District of New Mexico.  See Stark-Romero v. Nat'l R.R. Passenger Co., No. CIV 09-0295 MV/RLP, Notice of Removal, filed March 26, 2009 (Doc. 1)("First Notice of Removal").  Stark-Romero filed a Motion to Remand on April 20, 2009, alleging that the First Notice of Removal was procedurally defective, because it did not establish that all Defendants served at the time of removal consented to the removal, given that San Miguel County did not sign the notice of removal or file an independent consent to removal.  See Stark-Romero v. Nat'l R.R. Passenger Co., No. 09-cv-0295-MV-RLP, Motion to Remand and Memorandum in Support Thereof at 4-5, filed April 20, 2009

(Doc. 14)("Stark-Romero's Motion to Remand"). On March 31, 2010, the Honorable Martha Vázquez, then-Chief Judge,[1] issued a Memorandum Opinion and Order, granting Stark-Romero's Motion to Remand. See Stark-Romero v. Nat'l R.R. Passenger Co., No. CIV 09-0295 MV/RLP, Memorandum Opinion and Order Granting Motion to Remand, filed March 31, 2010 (Doc. 96)("Mar. 31, 2010 MOO").

On July 19, 2010, E. Esquibel and H. Esquibel filed their Complaint in Intervention for Wrongful Death and Negligence in the Fourth Judicial District, County of San Miguel, in which they intervened in the action Stark-Romero filed. See Complaint in Intervention for Wrongful Death and Negligence in the Fourth Judicial District, filed August 19, 2010 (Doc. 1-2). On August 19, 2010, BNSF Railway and Amtrak removed the action. See Doc. 1.

Stark-Romero and the Esquibels filed the Plaintiffs' Motion to Remand and Memorandum in Support Thereof, filed September 9, 2010 (Doc. 19), and the Motion Requesting that this Matter be Returned to the Previously Assigned Judge, filed October 10, 2010 (Doc. 32), which requested the Court to transfer the matter to Judge Vázquez. On January 12, 2011, the Court filed a Memorandum Opinion and Order, remanding Stark-Romero's claims, but denying the Esquibels' request that the Court remand their claims. See Doc. 53. The Court also denied the Esquibels' request to transfer the case to Judge Vázquez.

On June 23, 2011, the Esquibels filed their Motion to Compel the National Railroad Passenger Company a/k/a Amtrak and BNSF Railway Company to Fully Respond to Discovery. See Doc. 98. In their motion, the Esquibels argue that the Court should overrule Amtrak and BNSF Railway Co.'s objections, and compel them to provide full and complete answers and responses to

---

[1] The Honorable Bruce Black, Chief United States District Judge for the District of New Mexico, became Chief Judge on September 1, 2010.

the Esquibels' discovery. They argue that Amtrak and BNSF Railway have failed to establish the elements of the privilege they assert under 23 U.S.C. § 409 and 49 U.S.C. § 20903. They also argue that Amtrak and BNSF Railway have failed to establish the work-product protection they assert. The Esquibels further argue that Amtrak should produce the personnel files for Amtrak employees Andrew Bullerwell, Nerkowski, Walter Pomrenke, M. Abeman, and Michael Waldron. The Esquibels also contend that Amtrak should produce the Car Geometry Video[2] for the Southwest Division of BNSF Railway for five miles in either direction of railroad crossing USDOT013655C from January 1, 2007 to December 31, 2009, including trains heading north and south.

On July 11, 2011, Amtrak and BNSF Railway filed their Response in Opposition to Plaintiffs' Motion to Compel Defendants Amtrak and BNSF to Fully Respond to Discovery. See Doc. 123. Amtrak and BNSF Railway argue that the parties' remaining disputes may be boiled down into two subjects -- those items prepared in anticipation of litigation and thus immune from disclosure in litigation under the work-produce doctrine, and those created for the purpose of complying with railroad accident/incident reporting and thus immune from disclose in litigation under federal law. They argue that, after the incident which is the subject of this lawsuit, their counsel at Modrall Sperling Law Firm requested that an investigation be conducted in anticipation of litigation, Amtrak and BNSF Railway prepared the materials and things at counsel's direction. They argue that, because the elements of the work-product doctrine have been satisfied, the materials and things identified in their privilege log that the parties agree are in dispute are protected from disclosure under the work-product doctrine. They argue that the Esquibels have had free access to the facts surrounding the accident and that there is nothing to suggest that the Defendants'

---

[2] This video shows what the train crew observes as they go down the track.

claim files contain information that the Esquibels have been unable to obtain from other sources. They also argue that items in their privilege log are protected from disclosure under 49 U.S.C. § 20903 and 23 U.S.C. § 409. They assert that Amtrak has already agreed to produce the personnel files for the crew who were operating the train shortly before and at the time of the incident. They also argue that BNSF Railway and the Esquibels have already agreed that the Car Geometry Video will be produced.

At the hearing, the parties agreed that they were "not going to deal with [objections to the] relevancy" of discovery, or tie their arguments to specific requests for production or interrogatories, and that they would instead argue why "the materials in the privilege log need to be produced." Transcript of Hearing at 60:1-24 (taken July 14, 2011)(Court, Gambill, Bieganowski)("Tr.").[3] The parties represented that items 12, 13, 16, 18, 19, 23, 31 through 42, 44 through 46, 48 through 51, 55, 59 through 67, and 75 through 100 were still in dispute. The Court stated:

> THE COURT: Okay. Now what I understood Mr. Gam[bill] was arguing is that the issues here break into two issues. One, it breaks into the issue of materials that they're saying is work product for this case, and then also materials that they had to submit to the Government for purposes of claim investigation. Do you agree those are the two issues on these documents?
>
> [MR. BIEGANOWSKI:] [S]ome of those, Your Honor. Also a lot of the[ ] [materials] [are] road highway safety studies and documents from the Department of Transportation of the State [of] New Mexico that they asserted were privileged were had a statutory privilege, Your Honor. Specifically 409 and 20903. But yes.
>
> THE COURT: All right. Tell me. Let's take these issues by issue or if you want to take them [document] by documents how would be the best way to argue this? Do you want to go issue by issue? Do you want to go first on the materials that were submitted to the Government as far as a claims file?
>
> [MR. BIEGANOWSKI:] I'd rather go issue by issue, Your Honor, if you don't mind.

---

[3] The Court's citations of the transcript are to the Court Reporter's original, unedited version. Any final version may contain different line or page numbers.

Tr. at 61:12-52:4 (Court, Bieganowski).

At the hearing, Amtrak and BNSF Railway stated that they were willing to supplement their discovery response to produce any responsive documents that were withheld under 23 U.S.C. § 409 subject to the Esquibels' agreement that the production of documents does not constitute any waiver of privilege to challenge that the documents are protected by this statutory privilege.

> We are well aware, . . . as the Court pointed out, as well, that there's some admissibility problems that plaintiffs are facing with these types of documents and documents subject to the privilege under 49 U.S.C. 20903 related a accident incident reporting.  So we don't really see why plaintiffs want these so bad, because if they share them with their experts for example then their experts could be excluded haven't but [nevertheless] . . . .  [w]e've agreed to produce them on agreement with plaintiffs' counsel that by producing them the plaintiffs would not be waiving any claim of privilege statutory or otherwise that's associated with them.

Tr. at 94:9-20 (Gambill).  They agreed to "produce all the 409 documents and then argue about their admissibility down the road."  Tr. at 95:18-23 (Court, Bieganowski, Gambill).  The Esquibels stated that they were agreeable to Amtrak and BNSF Railway producing the discovery under the agreement they offered.  See Tr. at 96:18-20 (Court, Bieganowski).  The Court told the Esquibels: "I guess they're warning you . . . if you show it to your expert they're going to argue that that will preclude" the expert testimony.  Tr. at 96:3-5 (Court).  The Esquibels responded: "If we give it to our experts and down the road they[ ] exclude our experts . . . then I'm without experts."  Tr. at 96:8-10 (Bieganowski).  The Court stated that the parties could send it letters regarding whether the Court should exclude the Esquibels' experts if the Esquibels show the experts the reports Amtrak and BNSF Railway produce, and that it could issue an advisory or in limine ruling whether the experts would be disqualified.  See Tr. at 97:6-17 (Court).  The Court told Amtrak and BNSF Railway that it should send the first letter, that the Esquibels could then respond, and that Amtrak and BNSF Railway could then file another letter if they wished.  The Court told Amtrak and BNSF Railway

that they had until August 5, 2011 to file the letter.

On August 5, 2011, Amtrak and BNSF Railway filed a letter to the Court. See Letter from Greg L. Gambill to the Court (dated August 5, 2011), filed August 5, 2011 (Doc. 138). In the letter, Amtrak and BNSF Railway argue that the caselaw in this district and across the country is clear: the opinion of any expert is inadmissible at a trial of this matter if the expert uses documents that 23 U.S.C. § 409 shields.

At this time, the Esquibels have not filed a letter responding to Amtrak and BNSF Railway's letter to the Court.

## ANALYSIS

The Court will grant in part and deny in part the Esquibels' motion. The Court will not order Amtrak and BNSF Railway to produce the documents listed as Nos. 12, 13, 16, 18, 19, 23, 46, 59, and 61 in their privilege log. Amtrak must produce the medical and personnel records for the crew members who operated the train involved in the accident at issue, and Nerkowski's medical records. BNSF Railway must produce the Car Geometry Video. Amtrak and BNSF Railway have agreed to produce the documents they withheld under 23 U.S.C. § 409. Insofar as the opinions of the Esquibels' experts are premised on evidence that is inadmissible under 23 U.S.C. § 409, however, the Court will exclude the opinions.

**I.    AMTRAK AND BNSF RAILWAY DO NOT HAVE TO PRODUCE THE DOCUMENTS LISTED AS NOS. 12, 13, 16, 18, 19, 23, 46, 59 AND 61 IN AMTRAK AND BNSF RAILWAY CO.'S PRIVILEGE LOG.**

At the hearing, counsel for Amtrak and BNSF Railway Co., Greg Gambill, represented that the items listed as Nos. 12, 13, 16, 18, 19, 23, 46, 59, and 61 were prepared after the incident that is the subject of this lawsuit at the direction of counsel at Modrall Sperling, who are Amtrak's and BNSF Railway's outside counsel for purposes of this litigation. See Tr. at 74:21-75:3 (Court,

Gambill). Given this representation, the Esquibels agreed to eliminate these items as matters they seek. See Tr. at 75:4-6 (Court, Bieganowski). The Court must rely upon the representations of counsel, and if trial counsel instructed that these items to be prepared, they appear to fall squarely within the heartland of work product. See Fed. R. Civ. P. (26)(b)(3)(A)("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."). For these reasons, and the reasons stated on the record at the hearing, the Court will deny the Esquibels' request that it compel production these items.

## II. THE COURT WILL ORDER AMTRAK TO PRODUCE THE MEDICAL RECORDS AND PERSONNEL FILES FOR THE OPERATING CREW, AND NERKOWSKI'S MEDICAL RECORDS.

The Esquibels argue that the Court should order production of the train crew's personnel and medical files. Amtrak asserts that it has always been willing to produce the personnel files of the operating crew -- the crew who was actually operating the train at issue in this matter. At the hearing, the Esquibels stated that, from what they can tell, three Amtrak employees, including Nerkowski, were in the lead locomotive at the time of the incident. They state that they do not know whether Nerkowski was at the controls. The dispute between the parties thus relates only to whether the Court should order Amtrak to produce Nerkowski's medical records.

It is too early in this litigation to dismiss the theory that the Esquibels have set forth from the case -- that Nerkowski could have been at the controls or could have had responsibility for operating the train at the time of the accident. If Nerkowski had the ability and/or responsibility to throw a switch or brake if there was going to be an accident, Nerkowski will come into play and his medical records will be relevant. Because it is possible that Nerkowski's medical records will be relevant, the Court will order production of his medical records. The Court will thus grant in part

and deny in part the Esquibels' request for the personnel and medical records of the train crew. Amtrak has agreed to produce the personnel files and medical records of the two crew members who were operating the train, subject to the confidentiality order that was entered in the Stark-Romero case. The Court will order Amtrak to produce Nerkowski's medical records. The Court will deny the Esquibels' request as to other Amtrak employees on the train. If, at a later time, however, there is evidence that other Amtrak employees on the train had responsibility for operating the train, the Esquibels may ask the Court to revisit its order.

### III. THE COURT ORDERS BNSF RAILWAY TO PRODUCE THE CAR GEOMETRY VIDEO.

The Esquibels argue that the Court should order Amtrak to produce the Car Geometry Video for the Southwest Division of BNSF Railway for five miles in either direction of railroad crossing USDOT013655C from January 1, 2007 to December 31, 2011. The Esquibels argue that the video would help them see vegetation on the side of the road, or any changes in the crossing regarding any and all safety matters. The Esquibels' counsel, Victor Bieganowski, stated BNSF Railway "did give [the video] to me in the [S]tark case, but again, I just want to make sure that when I did it in the Esquibel case it reflects that it's given to me in relation to the [Esquibel] case." Tr. at 86:20-23 (Bieganowski). The Court stated:

> I[t] sounds to me like we can just re[solve] this with a letter. Mr. Ga[mb]ill you can just send him over and say we're producing -- I assume that the video is Bates stamped in some way. Just say we're producing this Bates number -- this document Bates stamped []f[o]r the [S]tark case we're reproducing in this case.

Tr. at 86:24-87:4 (Court). Amtrak and BNSF Railway's counsel stated that he did not have a problem with this resolution, and stated "my plan was to simply produce and index along with the video clips with the appropriate Bates numbers so that there's no confusion down the road about what is what." Tr. at 87:5-7 (Gambill). Mr. Bieganowski agreed to this resolution. The Court thus

orders BNSF Railway to produce the Car Geometry Video in accord with the agreement at the hearing.

**IV.  THE COURT ORDERS AMTRAK AND BNSF RAILWAY TO PRODUCE DOCUMENTS THEY WITHHELD UNDER 23 U.S.C. § 409, AND FINDS THAT, INSOFAR AS THE OPINIONS OF THE ESQUIBELS' EXPERTS ARE PREMISED ON EVIDENCE THAT IS INADMISSIBLE UNDER 23 U.S.C. § 409, THE COURT WILL EXCLUDE THE OPINIONS.**

The Esquibels argue that Amtrak and BNSF Railway broadly assert a privilege under 23 U.S.C. § 406 and 49 U.S.C. § 20903 over multiple documents. They argue that the Court should compel Amtrak and BNSF Railway to respond to the interrogatories and requests for production, because they have failed to satisfy the elements of the privilege they assert under 23 U.S.C. § 409 and 49 U.S.C. § 20903.

Amtrak and BNSF Railway argue that, under 49 U.S.C. § 20903, which states: "No part of an accident or incident report filed by a railroad carrier under section 20901 of this title or made by the Secretary of Transportation under section 20902 of this title may be used in a civil action for damages resulting from a matter mentioned in the report," 49 U.S.C. § 20903, the reports that the Esquibels seek are not discoverable, because they are not admissible. Amtrak and BNSF Railway further state that they do not understand what the Esquibels hope to gain by compelling disclosure of the reports, because, even if the reports are discoverable, their proposed experts' opinions would be excluded if they shared the reports with the experts.

At the hearing, Amtrak and BNSF Railway stated that they were willing to supplement to produce any responsive documents that were withheld under 23 U.S.C. § 409 subject to the Esquibels' agreement that the production of documents does not constitute any waiver of privilege to challenge that the documents are protected by this statutory privilege.

We are well aware, . . . as the Court pointed out, as well, that there's some

>admissibility problems that plaintiffs are facing with these types of documents and documents subject to the privilege under 49 U.S.C. 20903 related a accident incident reporting. So we don't really see why plaintiffs want these so bad, because if they share them with their experts for example then their experts could be excluded haven't but [nevertheless] . . . . [w]e've agreed to produce them on agreement with plaintiffs' counsel that by producing them the plaintiffs would not be waiving any claim of privilege statutory or otherwise that's associated with them.

Tr. at 94:9-20 (Gambill). They agreed to "produce all the 409 documents and then argue about their admissibility down the road." Tr. at 95:18-23 (Court, Bieganowski, Gambill). The Esquibels stated that they were agreeable to Amtrak and BNSF Railway producing the discovery under the agreement they offered. See Tr. at 96:18-20 (Court, Bieganowski). The Court told the Esquibels: "I guess they're warning you if they if you show it to your expert they're going to argue that that will preclude" the expert testimony. Tr. at 96:3-5 (Court). The Esquibels responded: "If we give it to our experts and down the road they're exclude our experts . . . then I'm without experts." Tr. at 96:8-10 (Bieganowski). The Court stated that the parties could send it letters, and that it would issue am advisory or in limine ruling whether the experts would be disqualified. See Tr. at 97:6-17 (Court).

"Beginning with the Highway Safety Act of 1966, Congress has endeavored to improve the safety of our Nation's highways by encouraging closer federal and state cooperation with respect to road improvement projects." Pierce Cnty., Wash. v. Guillen, 537 U.S. 129, 133 (2003). "To that end, Congress has adopted several programs to assist the States in identifying highways in need of improvements and in funding those improvements." Pierce Cnty., Wash. v. Guillen, 537 U.S. at 133 (citing 23 U.S.C. §§ 130, 144, 152). "To be eligible for funds under the [Hazard Elimination] Program[, see 23 U.S.C. § 152], a state or local government must undertake a thorough evaluation of its public roads." Pierce Cnty., Wash. v. Guillen, 537 U.S. at 724. "Not long after the adoption of the Program, the Secretary of Transportation reported to Congress that the States objected to the

absence of any confidentiality with respect to their compliance measures . . . ." Pierce Cnty., Wash. v. Guillen, 537 U.S. at 724. "In 1983, concerned that the States' reluctance to be forthcoming and thorough in their data collection efforts undermined the Program's effectiveness, the United States Department of Transportation (DOT) recommended the adoption of legislation prohibiting the disclosure of information compiled in connection with the Program." Pierce Cnty., Wash. v. Guillen, 537 U.S. at 724 (citation omitted). Congress adopted 23 U.S.C. § 409 in 1987 to address the States' and DOT's concerns. See Pierce Cnty., Wash. v. Guillen, 537 U.S. at 724. At the time of adoption, 23 U.S.C. § 409 read:

> "Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled for the purpose of identifying[,] evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 152 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be admitted into evidence in Federal or State court or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data." Surface Transportation and Uniform Relocation Assistance Act of 1987, § 132, 101 Stat. 170.

Pierce Cnty., Wash. v. Guillen, 537 U.S. at 724-25. Lower courts disputed the scope of 23 U.S.C. § 409; some state courts concluded 23 U.S.C. § 409 "addressed only the admissibility of relevant documents at trial and did not apply to pretrial discovery," while other state courts reasoned that it "protected only materials actually generated by a governmental agency . . . and documents collected by that agency to prepare its . . . funding application remained both admissible and discoverable." Pierce Cnty., Wash. v. Guillen, 537 U.S. at 725. Congress responded to these disputes and amended 23 U.S.C. § 409 in two ways. See Pierce Cnty., Wash. v. Guillen, 537 U.S. at 725. "In 1991, Congress expressly made the statute applicable to pretrial discovery, and in 1995, Congress added the phrase 'or collected' after the word 'compiled[.']" Pierce Cnty., Wash. v. Guillen, 537 U.S. at

725 (citing Intermodal Surface Transportation Efficiency Act of 1991, § 1035(a), 105 Stat. 1978; National Highway System Designation Act of 1995, § 323, 109 Stat. 591). Section 409 to Title 23 of the United States Code now reads:

> Notwithstanding any other provision of law, reports, surveys, schedules, lists, or data compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of potential accident sites, hazardous roadway conditions, or railway-highway crossings, pursuant to sections 130, 144, and 148 of this title or for the purpose of developing any highway safety construction improvement project which may be implemented utilizing Federal-aid highway funds shall not be subject to discovery or admitted into evidence in a Federal or State court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports, surveys, schedules, lists, or data.

23 U.S.C. § 409.

Courts have found that a plaintiff may not circumvent 23 U.S.C. § 409 by asking a witness to testify to matters the witness learned from documents protected in the statute. See Bowman v. Norfok S. Ry. Co., 66 F.3d 315, at *6 (4th Cir. 1995)(Table)(stating that "[a]lthough witnesses should not be allowed to circumvent § 409 by testifying regarding the contents of an inadmissible report," that was not the situation before the court; instead, in the matter before the court was that the witness "simply used portions of the document to refresh his recollection about matters otherwise available to any lay witness who had observed the scene"); Harrison v. Burlington N. R. Co., 965 F.2d 155, 160 (7th Cir. 1992)("We agree with the trial judge that allowing the witnesses to testify as to the content of the letter and report would have circumvented the purposes of [23 U.S.C. § 409]. Thus, the district court properly excluded the testimony of the Illinois Commerce Commission witnesses."); Vigil v. Burlington N. & Santa Fe Ry. Co., 521 F. Supp. 2d 1185, 1209 (D.N.M. 2007)("The statute precludes an expert from rendering an opinion in court based on materials compiled for the purpose of complying with the federal program of enhancing safety at

crossings." (citation omitted)).  As the United States Court of Appeals for the Eight Circuit stated in Robertson v. Union Pac. R. Co., 954 F.2d 1433 (8th Cir. 1992):

> We also conclude that the district court did not abuse its discretion by instructing appellants' expert witness, pursuant to 23 U.S.C. § 409, to disregard information compiled or utilized by the AHD in formulating his opinion. Although Fed.R.Evid. 703 generally provides that an expert may rely on evidence that is not admissible, 23 U.S.C. § 409 governs this situation, stating that "[n]otwithstanding any other provision of law," this kind of evidence is inadmissible in court and shall not be "considered for other purposes in any action for damages . . . ."

954 F.2d at 1435.

On the other hand, several courts have stated that knowledge the witness gained independently of the material protected under 23 U.S.C. § 409 is not protected.  See Robertson v. Union Pac. R. Co., 954 F.3d at 1435 ("We also conclude that the district court did not abuse its discretion by instructing appellants' expert witness, pursuant to 23 U.S.C. § 409, to disregard information compiled or utilized by the AHD in formulating his opinion."); Powers v. CSX Transp., Inc., 177 F. Supp. 2d 1276, 1280 (S.D. Ala. 2001)("On the other hand, knowledge gained by the witness independently of material protected by Section 409 is not protected."); Rodenbeck v. Norfolk W. Ry. Co., 982 F. Supp. 620, 625 (N.D. Ind. 1997)("However, the Court's ruling is not intended to preclude testimony . . . as to the general efficacy of placing STOP signs at Notestine Road, or the effect they would have had if they had been installed. Such evidence, . . . however, must come from sources apart from the Etzler-DeLaCroix correspondence.").

Moreover, 49 U.S.C. § 20903 states: "No part of an accident or incident report filed by a railroad carrier under Section 20901 of this title or made by the Secretary of Transportation under Section 20902 of this title may be used in a civil action for damages resulting from a matter mentioned in the report." 49 U.S.C. § 20903.  Section 20902 grants the Secretary of Transportation authority to investigate accidents resulting in serious injury to an individual or to railroad property,

occurring on the railroad line of a railroad carrier. See 49 U.S.C. § 20902(a).

The Esquibels may give the materials that Amtrak and BNSF Railway withheld under 23 U.S.C. § 409 to their experts; however, the Court will exclude the experts' opinions insofar as they are based upon evidence that is inadmissible under 23 U.S.C. § 409. See Robertson v. Union P. R. Co., 954 F.2d at 1435 ("We also conclude that the district court did not abuse its discretion by instructing appellants' expert witness, pursuant to 23 U.S.C. § 409, to disregard information compiled or utilized by the AHD in formulating his opinion."). The Court will not, however, exclude the experts' opinion which are based on material they gained independently of the material protected under 23 U.S.C. § 409. See Robertson v. Union Pac. R. Co., 954 F.3d at 1435; Powers v. CSX Transp., Inc., 177 F. Supp. 2d at 1280 ("On the other hand, knowledge gained by the witness independently of material protected by Section 409 is not protected."). Thus, merely looking at the produced materials is not fatal; what will get the expert excluded is if the expert relies on the material for his or her opinion. See 23 U.S.C. § 409 ("Notwithstanding any other provision of law, reports . . . compiled or collected for the purpose of identifying, evaluating, or planning the safety enhancement of . . . railway-highway crossings . . . shall not be subject to discovery or admitted into evidence in a Federal . . . court proceeding or considered for other purposes in any action for damages arising from any occurrence at a location mentioned or addressed in such reports . . . ."); Robertson v. Union Pac. R. Co., 954 F.2d at 1435 ("Although Fed.R.Evid. 703 generally provides that an expert may rely on evidence that is not admissible, 23 U.S.C. § 409 governs this situation, stating that '[n]otwithstanding any other provision of law,' this kind of evidence is inadmissible in court and shall not be 'considered for other purposes in any action for damages . . . .'"). The Court believes that this construction is consistent with § 409's plain language. If the expert does not rely on the § 409 material, and if the Court does not admit the material, then § 409 evidence will not be

admitted in a federal court proceeding, and the fact finders will not consider it. It is only if the expert relies on the report, and the Court admits the opinion, and the Court considers the opinion in its determination, that § 409 is violated. It is too high of a price to the judicial process' role as a truth seeking mechanism, and too draconian for a party offering an expert under the tight deadlines in federal court, for the Court to exclude an expert and possibly leave a party without an expert for looking at, even accidentally, § 409 material. Hence, if the expert says, under oath, that he or she relied on the § 409 material in any way, or that he or she used it to come to an expert opinion, the expert's opinion relying on or using that material will be excluded.

**IT IS ORDERED** that the Motion to Compel the National Railroad Passenger Company a/k/a Amtrak and BNSF Railway Company to Fully Respond to Discovery, filed June 23, 2011 (Doc. 98), is granted in part and denied in part. The Court will not order Amtrak and BNSF Railway to produce the documents listed as Nos. 12, 13, 16, 18, 19, 23, 46, 59, and 61 in their privilege log. Amtrak must produce the medical and personnel records for the crew members who operated the train involved in the accident at issue, and Nerkowski's medical records. BNSF Railway must produce the Car Geometry Video. Amtrak and BNSF Railway have agreed to produce the documents they withheld under 23 U.S.C. § 409. Insofar as the opinions of the Esquibels' experts are premised on evidence that is inadmissible under 23 U.S.C. § 409, or the expert uses the § 409 material to reach an opinion, however, the Court will exclude the opinions.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Philip C. Gaddy
Maria E. Touchet
The Gaddy Jaramillo Law Firm
Albuquerque, New Mexico

    *Attorneys for Plaintiffs Emilio J. Esquibel and Helen G. Esquibel*

Tony F. Ortiz
Christopher M. Grimmer
Scheuer, Yost & Patterson, P.C.
Santa Fe, New Mexico

    *Attorneys for Defendant City of Las Vegas*

James P. Sullivan
Christina L. Brennan
Brennan & Sullivan, P.A.
Santa Fe, New Mexico

-- and --

Joan M. Waters
Brennan & Sullivan, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendant San Miguel County*

Jerry A. Walz
Alfred D. Creecy
Walz & Associates
Albuquerque, New Mexico

    *Attorneys for Defendant New Mexico Department of Transportation*

Tim L. Fields
Alex Cameron Walker
Greg L. Gambill
Earl E. DeBrine, Jr.
Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Albuquerque, New Mexico

    *Attorneys for Defendants National Railroad Passenger Company
     and BNSF Railway Company*